# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| CENTRAL GROCERS, INC., *et al.*, | ) | Case No. 17-13886 (PSH) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors.[1] | ) |  |
|  | ) |  |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO MOTION FOR ENTRY OF ORDER (A) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Central Grocers, Inc. and its debtor affiliates, including Strack and Van Til Super Market, Inc., as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this omnibus reply to the responses and objections (collectively, the "**Objections**") to the Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Authorizing Designation of Additional Stalking Horse Bidders, (D) Scheduling Auction for and Hearings to Approve Sale of Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearings, (F) Approving Assumption and Assignment Procedures, and (G) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving Assumption and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), Raceway Central Wheaton LLC (2161), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [ECF No. 204] (the "**Motion**").[2]  The Debtors respectfully represent as follows:

**Preliminary Statement**

1.     The proposed sale of the Stalking Horse Package should be approved and any remaining Objections overruled.  The sale of the Stalking Horse Package to Jewel Food Stores, Inc. (the "**Stalking Horse Bidder**") has the support of the Debtors' prepetition and postpetition secured lenders, the official committee of unsecured creditors appointed in these chapter 11 cases (the "**Creditors' Committee**") (subject to a few technical issues that the Debtors expect soon will be resolved), and numerous other parties in interest.  Indeed, the reaction of interested parties to the Stalking Horse Agreement speaks volumes as to its merits and the value that it will generate for the Debtors' estates.  Of the approximately 28,000 parties that were served with notice of the Motion, only nineteen (19) responses to the sale have been received.  These responses consist of nine (9) Cure Objections[3] that the Debtors already are in process of reconciling and will be adjourned; four (4) limited Objections or reservations of rights;[4] a limited Objection of the Creditors' Committee[5] requesting certain modifications to the Stalking Horse Agreement that the Debtors expect to be resolved; Objections of three (3) pension funds (the "**Funds**")[6] that mistakenly allege that the proposed Sale Transaction cannot be free and clear of successor liability claims against the Stalking Horse Bidder; and two (2) Objections of parties (the "**Vendor Objections**")[7] purporting to hold claims against the Debtors pursuant to

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.
[3] *See* ECF Nos. 117, 131, 133, 134, 138, 147, 149, 152, and Case No. 17-10993 Docket No. 384.
[4] *See* ECF Nos. 144, 165, 173 and Case No. 17-10993 Docket No. 245.
[5] *See* ECF No. 169.
[6] *See* ECF Nos. 142, 144, and 145.
[7] *See* ECF Nos. 166 and 167.

section 503(b)(9) of the Bankruptcy Code that argue that the proposed Sale Transaction should not be approved unless the objecting parties' junior priority claims are paid in full.

2.     Importantly, no party has challenged (nor could it reasonably do so) the Debtors' business judgment in entering into the Stalking Horse Agreement or that the proposed Sale Transaction is in the best interest of the Debtors' estates and their economic stakeholders. The Sale Transaction is the culmination of a lengthy marketing and bidding process that has been conducted in accordance with the Bidding Procedures Order.  Interested parties have had more than adequate notice and opportunity to submit higher or otherwise better offers than the Stalking Horse Bid.  Moreover, the Stalking Horse Agreement is the product of extensive, hard-fought, good-faith negotiations.  The terms of the Stalking Horse Agreement, including the proposed Revised Sale Order (as hereinafter defined), represent an integrated and carefully crafted transaction designed to maximize the achievement and the realization of substantial value and, equally important, the preservation of employment for in excess of 2,000 of the Debtors' employees.

3.     The Funds' Objections focus on one narrow, but extremely critical issue: whether the sale of the Debtors' assets pursuant to section 363(f) of the Bankruptcy Code may be sold free and clear of successor liability claims relating to the Debtors' withdrawal from the Funds' pension plans.  As demonstrated below, as a matter of law, the answer to that question is absolutely *yes*.  There is ample authority in the Seventh Circuit and beyond to approve the Sale Transaction free and clear of successor liability claims.  Indeed, this Court itself has entered orders authorizing asset sales free and clear of successor liability claims.[8]  Courts in this Circuit also have enforced sale orders entered by Bankruptcy Courts in other jurisdictions authorizing sales free and clear of successor liability claims pursuant to section 363(f) of the Bankruptcy

---

[8]  *See infra*, ¶¶ 11-15

WEIL:\96185801\5\76248.0004

Code and, in so doing, expressly rejected the authority relied on by the Funds in their Objections.[9]  Indeed, all of the cases cited by the Funds are easily distinguishable because they either did not involve a sale pursuant to section 363(f) of the Bankruptcy Code or turned on other issues such as lack of due process or inadequate notice.  That is not the case here.  The Funds are here; they have asserted their rights; they are actively litigating the issues; but their interpretation of the applicable law and policy of the Bankruptcy Code is simply wrong.

4.    If the Funds' Objections are not overruled and the Revised Sale Order is not entered with a determination that the Sale Transaction is free and clear of successor liability claims, which, as to the Funds alone, are alleged to be in excess of the $100 million purchase price for the Stalking Horse Package, the impact on the Debtors' estates and their employees would be devastating.  Absent that certainty, the Stalking Horse Bidder will not proceed with the proposed transaction and, based on the Debtors' experience and negotiations with potential bidders for the Debtors' other assets, such as their valuable and nearly 1,000,000 square foot distribution center, no prospective purchaser is willing to proceed with a sale without successor liability claims being barred (at least not without a massive discount to the proposed purchase price).  No rational economic actor would proceed otherwise.  In view of the fact that this Court clearly has the authority to enter the Revised Sale Order, it should not permit the parochial objectives and hold-up tactics of the Funds to sacrifice in excess of 2,000 jobs at stake and the other benefits of the Sale Transaction that the Debtors and their stakeholders would realize.

5.    The motivation of the Funds in filing their Objections is quite transparent: either to (i) extract a payment at the expense of all other parties in interest in these chapter 11 cases, or (ii) seek the ability for themselves to pursue their prepetition claims against the Stalking

---

[9] *See, infra* ¶¶ 11-15

Horse Bidder in complete derogation of the Bankruptcy Code's priority scheme.  The Debtors respectfully submit that the Court should neither condone these tactics nor allow this scenario to unfold.

## The Debtors' Reply

6.       Attached hereto as **Exhibit A** is a chart (the "**Objection Summary Chart**") summarizing the Objections that were filed in response to the Motion and the Debtors' responses thereto.  The Debtors also have made certain changes to the original proposed Sale Order approving the Sale Transaction with the Stalking Horse Bidder.  Attached hereto as **Exhibit B** and **Exhibit C**, respectively, are a revised Sale Order (the "**Revised Sale Orde**r") and a redline comparison of the original proposed Sale Order and the Revised Sale Order.[10]

**A.     The Funds' Objections Should Be Overruled and the Proposed Sale Transaction Should Be Approved Free and Clear of Successor Liability Claims**

7.       The Debtors' request to sell their assets free and clear of any successor liability claims is expressly authorized by section 363(f) of the Bankruptcy Code as a matter of law, whether or not, as a factual matter, a purchaser of assets may be deemed a successor under applicable non-bankruptcy law. As explained below, section 363(f)(5) of the Bankruptcy Code authorizes a sale of property free and clear of an entity's interest in such property if the entity could be compelled to accept money satisfaction of such interest.  11 U.S.C. § 363(f)(5).  These circumstances clearly exist here.

8.       The Funds raise several arguments in a vain attempt to claw their way out from under the plain language and statutory intent of section 363(f) of the Bankruptcy Code. Specifically, the Funds assert the following:

---

[10] The Debtors have been advised that the Creditors' Committee may have comments to the Revised Sale Order unrelated to successor liability issues.

WEIL:\96185801\5\76248.0004

a.  contrary to the ample authority described herein, the Funds contend that Courts in the Seventh Circuit do not permit asset sales free and clear of successor liability for pension withdrawal liability claims under any circumstance;

b.  the Funds allege that their withdrawal liability claims and any related successor liability claims do not constitute "interests in" the Debtors' assets to be sold within the meaning of section 363(f) of the Bankruptcy Code;

c.  ignoring the broad definition of the term "claim" in section 101(5) of the Bankruptcy Code, the Funds contend that they could not be compelled to accept money satisfaction of their claims under section 363(f)(5) of the Bankruptcy Code because their withdrawal liability claims are not yet due and owing as a matter of non-bankruptcy law; and

d.  a court-created doctrine of successor liability should be permitted to override the express provisions of the Bankruptcy Code, including its priority scheme, Congress's intent in enacting such provisions, the fundamental policies underlying them, and controlling case law in this Circuit.

9.      The Funds do not stop here.  They also argue that the proposed Sale Transaction is not permitted absent the Debtors' compliance with section 1113 of the Bankruptcy Code.  This argument is truly remarkable, given that the labor unions affected by the proposed Sale Transaction, which are actually parties to the collective bargaining agreements with the Debtors and the only parties with standing to assert claims under section 1113 of the Bankruptcy Code, do not oppose the Sale Transaction.  In fact, the Stalking Horse Bidder already has entered into modified labor agreements with the labor unions representing the vast majority of the employees at the Strack Stores in the Stalking Horse Package.[11]

10.     As demonstrated below, the Funds' Objections should be overruled, and the Court should enter the Revised Sale Order authorizing the sale of the Debtors' assets free and clear of any successor liability claims against the Stalking Horse Bidder, including successor

---

[11] The Debtors have been advised that the Stalking Horse Bidder soon will file a declaration in support of the Sale Transaction, which will confirm the agreements reach with the unions.

liability claims that could be asserted by the Funds on account of the Debtors' pension withdrawal liability.

      a.        ***Courts in this Circuit, <u>Including this Court</u>, Have Entered Sale Orders Authorizing Sales of Assets Free and Clear of Successor Liability Claims under Section 363(f) of the Bankruptcy Code***

      11.    Contrary to the sweeping statements in the Funds' Objections, Courts in this Circuit, including this Court, have entered sale orders authorizing the sale of a debtor's assets free and clear of successor liability claims pursuant to section 363(f) of the Bankruptcy Code with provisions substantially similar or nearly identical to those provided for in the Revised Sale Order.  For example, in *In re LDR Indus., L.L.C.*, Case No. 14-32138 (PSH) (Bankr. N.D. Ill. Feb. 26, 2015) [ECF No. 142], the Court entered an order that provided as follows:

> Pursuant to Sections 105(a), 363(b), 363(f), 365(b) and 365(f) . . . The purchase and sale of the Sale Assets . . . constitutes a legal, valid, binding and effective transfer . . . and ***shall be free and clear of all Liens, Claims and Interests except any Assumed Liabilities*** . . . Buyer shall take title to and possession of the Sale Assets ***subject only to any Assumed Liabilities.  Pursuant to Section 363(f) of the Bankruptcy Code***, the transfer and title to the Sale Assets . . . shall be free and clear of (a) any and all Liens, Claims and Interests except for any Assumed Liabilities; and (b) ***any and all claims including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory*** . . . Except as specifically provided by the Purchase Agreement or this Order, all entities holding Liens, Claims and Interests or interests in all or any portion of the Sale Assets (other than any Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Debtor, the Sale Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Sale Assets to Buyer, ***are forever barred, estopped and permanently enjoined from asserting against Buyer or its successors or assigns, their property or the Sale Assets, any such Liens, Claims and Interests in and to the Sale Assets*** . . . ***Except to the extent Buyer assumes the Assumed Liabilities . . . neither the purchase of the Sale Assets by Buyer . . . nor the fact that Buyer and/or its affiliates are using any of the Sale Assets previously operated by the Debtor, will cause Buyer or any of its affiliates to be deemed a successor in any respect to the Debtor's business within the meaning of any . . . pension, ERISA, tax, labor, employment . . . or other law, rule or regulation . . . any employment***

> *or labor agreements . . . any pension, welfare, compensation or*
> *other employee benefit plans, agreements, practices and programs,*
> *including, without limitation, any pension plan of the Debtor, the*
> *Employee Retirement Income Security Act of 1974 . . . .*

*LDR*, *supra* ¶¶ 7, 9, 25 (emphasis added).

Similarly, in *In re Hartford Computer Hardware, Inc.*, Case No. 11-49744 (PSH) (Bankr. N.D.

Ill. Feb. 28, 2012) [ECF No. 208], the Court ordered in connection with a section 363 sale as

follows:

> Except as expressly provided in the Agreement or this Order, the sale
> of the Acquired Assets to the Purchaser is free and clear of all
> Interests under Bankruptcy Code § 363(f).  All Interests are released,
> terminated, and discharged as to the Acquired Assets and the
> Purchaser (and its successors and assigns) . . . *Under no*
> *circumstance may the Purchaser or any of its affiliates be deemed a*
> *successor of any one of the Debtors for any Interest in the Acquired*
> *Assets.*  Any person holding an Interest in any component of the
> Acquired Assets is *permanently enjoined from asserting,*
> *prosecuting, or otherwise pursuing its Interest against the*
> *Purchaser, its property, its affiliates, its successors, its assignees . . .*
> *or against the Acquired Assets with respect to that Interest . . . .*

*Hartford Computer*, *supra* ¶¶ E, H (emphasis added).

A similar order was entered in *In re Bridgeview Aerosol, LLC*, Case No. 09-41021 (PSH) (Bankr.

N.D. Ill. Feb. 3, 2011) [ECF No. 405]:

> The transfer of the Sale Property to the Buyer will not subject the
> Buyer to *any liability whatsoever with respect to the Sale Property* or
> by reason of such transfer under the laws of the United States, any
> state . . . based, in whole or in part, directly or indirectly, *on any*
> *theory of law or equity, including, without limitation, any theory of*
> *equitable law, including, without limitation, any theory of antitrust*
> *or successor or transferee liability* . . . Except as expressly permitted
> by applicable law . . . all persons and entities holding Interests or
> Claims of any kind and nature with respect to the Sale Property, and
> their successors or assigns, *are hereby enjoined from asserting,*
> *prosecuting or otherwise pursuing such Interests and Claims of any*
> *kind and nature against the Buyer . . . or the Sale Property . . .*

> ***Buyer is not a successor to the Debtors or their business and shall
> not incur any liability as a successor***, nor shall Buyer be liable for
> any of the Interests and Claims other than the Assumed Claims and
> Interests . . .***Without limiting the generality of the foregoing, the
> Buyer shall have no successor liabilities of any kind or character,
> including, but not limited to, any theory of antitrust, environmental,
> successor or transferee liability, labor law, de facto merger or
> substantial continuity***, whether known or unknown as of the Closing
> Date . . whether asserted or unasserted, fixed or contingent, liquidated
> or unliquidated with respect to the Debtors or any obligations of the
> Debtors arising prior to the Closing Date . . . .

*Bridgeview Aerosol*, *supra* ¶¶ K, 11, 12 (emphasis added).

Attached hereto is **Exhibit D**, which includes copies of the *LDR*, *Hartford Computer*, and *Bridgeview Aerosol* sale orders entered by this Court.

12.    In addition, other Courts in this Circuit have entered and enforced sale orders authorizing sales of debtors' assets free and clear of successor liability and permanently enjoining third-party claimants from asserting successor liability claims against purchasers of assets pursuant to section 363(f) of the Bankruptcy Code, as requested here. *See, e.g., United States ex rel. Ceas v. Chrysler Grp. LLC*, 78 F.Supp. 3d 869, 877-78 (N.D. Ill. 2015) (holding successor liability claims for violation of the False Claims Act ("**FCA**"), which claims may not be discharged in bankruptcy under section 1141(d)(6)(A) of the Bankruptcy Code, were nevertheless extinguished pursuant to sale order authorizing sale of debtors' assets free and clear of successor liability under section 363(f) of Bankruptcy Code); *In re Vista Mktg. Grp. Ltd.*, 2014 Bankr. LEXIS 1441 *18-19 (Bankr. N.D. Ill. Mar. 28, 2014) (enforcing its own order pursuant to section 363(f) of Bankruptcy Code authorizing sale of assets free and clear of claims and interests to preclude claim of successor liability under the Illinois Retailers Occupation Tax Act and the Income Tax Act); *Faulkner v. Bethlehem Steel/Int'l Steel Grp.*, 2005 U.S. Dist. LEXIS 7501, at *7-*12 (N.D. Ind. Apr. 27, 2005) (enforcing sale order to hold that debtors'

assets were sold free and clear of liens, claims, interests, and encumbrances, including former

employee's successor liability claims for racial discrimination) (relying on *In re Trans World

Airlines, Inc.*, 322 F.3d 283, 292 (3d Cir. 2003)) [hereinafter "**TWA**"].

13.     Particularly compelling is this Court's decision in *Vista*. 2014 Bankr.

LEXIS 1441 (Bankr. N.D. Ill. Mar. 28, 2014).   In *Vista*, the purchaser of a debtor's assets in a

chapter 11 bankruptcy sought to enforce the Court's order authorizing the sale of the debtor's

assets to the purchaser free and clear of successor liability claims pursuant to section 363(f) of

the Bankruptcy Code.   *See id*. at *2-6. Under the Illinois Retailers Occupation Tax Act and

Income Tax Act, the Illinois Department of Revenue ("**IDOR**") may demand payment of taxes

from a seller of assets and, if those taxes are not paid by the seller, assert the same claim

personally against the purchaser of the assets.   *See id*. at *16.   Following entry of the sale order,

IDOR issued a stop order directing the purchaser to withhold from the sale price an amount to

cover the debtor's tax liabilities and also threatened to seek payment from the purchaser directly.

*See id.* at *5-6.

14.     In holding that the debtor's assets were sold free and clear of IDOR's

successor liability claim, the *Vista* Court expressly noted the broad scope of section 363(f) and

the trend to interpret it expansively, consistent with the intent and purpose of the Bankruptcy

Code:

> Although the Bankruptcy Code does not specifically define the
> term "interest" as used in Section 363(f), courts have broadly
> construed the term. "[I]nterest should [not] be understood in a
> special or narrow sense; on the contrary, the use of the term 'any'
> counsels in favor of a broad interpretation." *Precision Indus., Inc.
> v. Qualitech Steel SBQ, LLC*, 327 F.3d.545 (7th Cir. 2003) (citing
> *United States v. Gonzales*, 520 U.S. 1, 5 117 S. Ct. 1032 (1997).
> Indeed, the term "interest" was selected by Congress to avoid
> 'rigid and technical definitions drawn from other areas of the law."
> 327 F.3d at 545 (quoting *Russello v. U.S.*, 464 U.S. 16, 21 (1983)).

In *Qualitech*, for example, the Seventh Circuit determined that the term "interest" as used in section 363(f) is "sufficiently broad" to include a possessory interest as a lessee." 327 F.3d at 545. *See also Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (restrictive covenant running with land is an "interest" for purposes of section 363(f)). While some early cases read the term "interest" narrowly and restricted to a form of ownership or property interest, the majority trend construes it expansively to encompass "other obligations that may flow from ownership of the property." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) . . . The district court similarly recognized in *Faulkner v. Bethlehem Steel/Intern. Steep Group* that section 363 gives the bankruptcy court the authority to order the sale of assets ***free and clear without risk of successor liability to the purchaser***, which in that case involved liability for a presale employment discrimination claim against the debtor . . . 2005 U.S. Dist. LEXIS 7501 (N.D. Ind. Apr. 27, 2005). ***In so doing, the court took note of the "uphill battle" a trustee would otherwise face in liquidating the bankrupt's estate.***

2014 Bankr. LEXIS 1441, at *16-21 (emphasis added).

15.     Moreover, the *Vista* Court, in enforcing its order denying successor liability, also expressly rejected the claimant's reliance on *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) [hereinafter "***Tasemkin***"] and *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994), two cases relied on by the Funds in their Objections, noting that *Tasemkin* "did not involve a Section 363(f) sale" and neither of these cases "construe the pertinent provisions of section 363(f)." *Vista*, 2014 Bankr. LEXIS 1441, at *21-23.

16.     Similarly, in *Chrysler*, the United States District Court for the Northern District of Illinois enforced an order protecting a purchaser from successor liability. In *Chrysler*, a plaintiff filed a *qui tam* False Claims Act suit against the purchaser of substantially all of Chrysler's assets pursuant to a section 363 sale in Chrysler's chapter 11 cases. *See Chrysler*, 78 F.Supp. 3d at 872. The United States Bankruptcy Court for the Southern District of New York had entered a sale order authorizing the sale of Chrysler's assets free and clear of all claims,

interests, and encumbrances, "whether at law or in equity, including all claims or rights based on any ***successor or transferee liability***." *See id*. at 874 (emphasis added). The sale order further provided that, "effective upon closing . . . all persons and entities *are forever prohibited and enjoined* from commencing or continuing in any matter any action or other proceeding . . . against Purchaser . . . or the Purchased Assets, with respect to any (a) Claim . . . or (b) successor liability for any of the Debtors." *Id*.

17.    Notwithstanding the fact that successor liability, does, in fact, apply to FCA cases, the District Court for the Northern District of Illinois held that because the purchaser did not expressly assume any FCA liability under the asset purchase agreement with Chrysler and because the Bankruptcy Court had approved the sale of Chrysler's assets free and clear of all successor claims and interests pursuant to section 363(f) of the Bankruptcy Code, the plaintiff's FCA claim against the purchaser was barred.   *Chrysler*, 78 F. Supp. 3d at 878. Notably, the Illinois District Court acknowledged and discussed *Tasemkin*, but did not conclude that the decision in any way precluded enforcement of the free and clear sale order entered by the *Chrysler* Bankruptcy Court.   *See Chrysler*, 78 F. Supp. 3d at 878.   The Illinois District Court also based its decision to enforce the sale order free and clear of the FCA successor liability claim on the Seventh Circuit's decision in *Precision Indus., Inc., v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544-45 (7th Cir. 2003), and clarified that *Precision* does **not** support the proposition that a debtor may not sell assets free and clear of successor liability claims under section 363(f) of the Bankruptcy Code:

> A recent bankruptcy opinion noted a circuit split on the issue,
> putting the Seventh Circuit among those that have held that §
> 363(f) does not provide a basis for selling property free and clear
> of successor liability claims[12] . . .  But *Precision* does not offer

---

[12] *See In re Gen. Motors Corp.*, 407 B.R. 463, 503 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) *and aff'd sub nom. In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010).

> such a holding, and concludes only that "the term 'any interest' as used in section 363(f) is sufficiently broad to include Precision's possessory interest as a lessee." The *Precision* court also noted that "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation."

*Chrysler*, 78 F. Supp. 3d at 873 n.3. (quoting *Precision*, 327 F.3d at 545). In addition, the District Court also found persuasive the reasoning in *General Motors*, which relied heavily on the rulings in Chrysler's bankruptcy case approving the section 363 sale at issue in that case. *See id.* (citing *General Motors*, 407 B.R. at 504 (citing *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[*I*]*n personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.")))). Finally, it is noteworthy that the District Court for the Northern District of Illinois reached its ruling in *Chrysler* even though FCA claims are not dischargeable in bankruptcy under section 1141(d)(6)(A) of the Bankruptcy Code. *See Chrysler,* 78 F. Supp. 3d at 877.

18.     In *Faulkner*, the District Court for the Northern District of Indiana similarly held that a former employee's successor liability claim against a purchaser of its former debtor-employer's assets constituted an "interest in property" under section 363(f) of the Bankruptcy Code and, therefore, was enjoined by the sale order authorizing the free and clear sale of the debtor's assets. *See Faulkner*, 2005 U.S. Dist. LEXIS 7501 at *8-9. Importantly, in reaching its decision, the District Court expressly adopted the reasoning of the Third Circuit in *TWA* as to the broad interpretation of section 363(f). *See id.* at *10-11. The *Faulkner* Court specifically concurred with the Third Circuit's reasoning in the *TWA* case that allowing a former employee to pursue a successor liability claim against the purchaser of a chapter 11 debtor's

assets would undermine the overall priority scheme of the Bankruptcy Code. *See id*. (quoting *TWA*, 322 F.3d at 292).

19.    Accordingly, based on the foregoing, this Court plainly has the authority to enter the Revised Sale Order and bar all claims against the Stalking Horse Bidder based on theories of successor liability, or otherwise. The Funds have not presented, and cannot present, any persuasive, much less controlling, authority to the contrary in the context of a sale under section 363 of the Bankruptcy Code.

> b.    ***The Cases Cited by the Funds Are Distinguishable and Do Not Bar the Sale of the Debtors' Assets Free and Clear of Pension Withdrawal Liability or Related Successor Liability under Section 363(f) of the Bankruptcy Code***

20.    All of the cases cited by the Funds to support their argument that withdrawal liability claims are entitled to a heightened protection under the Bankruptcy Code and are not subject to section 363(f) are easily distinguishable.

21.    First, as stated by this Court in *Vista*, *Tasemkin* (the foundation of the Funds' Objections) does not stand for the proposition that, under section 363(f) of the Bankruptcy Code, assets may not be sold free and clear of successor liability. *See Vista*, 2014 Bankr. LEXIS 1441, at *22-23. Nor does *Tasemkin* stand for the proposition that successor liability arising from withdrawal liability is excepted from the broad range of "interests in property" from which assets may be sold free and clear under section 363(f). In fact, as appropriately noted by the Court in *Vista*, *Tasemkin* does not involve a free and clear sale of assets under section 363(f) at all. The *Tasemkin* Court even expressly stated that it was not deciding the issue before it on the basis of section 363(f) or any other provision of the Bankruptcy Code. *Tasemkin*, 59 F.3d at 50. n.2 ("We need not decide whether New Tasemkin's acquisition of Old Tasemkin's assets sufficiently approximated a trustee sale, which under § 363(f) can be made free and clear of existing interests . . . As will be made clear, this case does

not directly implicate the Bankruptcy Code . . . *Our resolution of this case turns on the doctrine of successor liability and its appropriate application, not on specific provisions of the Bankruptcy Code*.") (emphasis added).

22.    Moreover, the facts in *Tasemkin* are wholly distinguishable from the circumstances of the Debtors' chapter 11 cases and their proposed Sale Transaction with the Stalking Horse Bidder.  First, *Tasemkin* was decided in a converted chapter 7 case, not in a chapter 11 case.  *See Tasemkin*, 59 F.3d 48.  Second, the transaction at issue in *Tasemkin* was an insider foreclosure action that occurred after the debtor's chapter 11 case had been converted to a chapter 7 liquidation, not a sale to a good-faith, third-party purchaser pursuant to section 363 of the Bankruptcy Code.  *See Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 172 B.R. 877, 878 (N.D. Ill. 1994), *rev'd Tasemkin*, 59 F.3d 48. Third, the "continuity" of operations between the chapter 7 debtor, Tasemkin Furniture Company, Inc., and the successor, Tasemkin, Inc., was incontrovertible.  *See Tasemkin*, 59 F.3d at 49.

23.    The other decisions cited by the Funds in support of their argument that the Court may not authorize the Debtors to sell their assets free and clear of the Funds' successor liability claims also are easily distinguishable. Specifically, the cases do not involve asset sales under section 363 of the Bankruptcy Code at all—to the contrary, they involve sales that took place ***outside of bankruptcy***.  *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990) (holding that foreclosing secured lender ***outside of bankruptcy*** could be liable for seller's withdrawal liability on theory of successor liability); *Central States, Southeast and Southwest Areas Pension Fund v. King Dodge, Inc.*, Case No. 09-CV-07480 (N.D. Ill. July 27, 2010) [ECF No. 23] (holding that a purchaser ***outside of***

*bankruptcy* can become secondarily liable for seller's withdrawal liability where purchaser was

on notice of the liability and there is continuity of operations between purchaser and seller)*;*

*Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841 (7th Cir. 2015) (applying equitable doctrine of

successor liability to purchaser who purchased seller's goods *outside of bankruptcy* and had

notice of ERISA[13] withdrawal liability).  In addition, *Zerand*, 23 F.3d 159, is not relevant.  As

explained below, *Zerand* is a due process case dealing with future, unknown tort claims. *Id.*[14]

> c.   ***The Requirements of Section 363(f) of the Bankruptcy Code Are Satisfied***

>> (1)   **The Funds' Withdrawal Liability Claims Constitute Interests in the Debtors' Assets to Be Sold**

24.     There is a long line of cases in the Seventh Circuit and other Circuits that

broadly interpret the term "interest in property" as used in section 363(f) of the Bankruptcy Code

and hold that "interest in property" encompasses claims and obligations that relate to, arise from,

or are in connection with such property.  *See Qualitech*, 327 F.3d 537, 545 (7th Cir. 2003) ("But

the Code itself does not suggest that 'interest' should be understood in a special or narrow sense;

on the contrary, the use of the term 'any' counsels in favor of a broad interpretation.") (citing

*United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *Chrysler*, 78 F.Supp. 3d at 873 n.3 (concurring

with Seventh Circuit in *Qualitech* and other Courts in broad interpretation of "interest in

property"); *In re Naperville Theater, LLC*, 2016 WL 930659, at *2-3 (N.D. Ill. Mar. 10, 2016)

(noting that Seventh Circuit has made clear that an interest in section 363(f) context is not

---

[13] Employment Retirement Income Security Act of 1974 ("**ERISA**")

[14] Although the Funds do not cite to it in their Objections, this Court entered an order in 2007 in *In re Select Snacks, Inc.*, Case No. 07-18679 (PSH) [ECF No. 961-5] (the "**Select Snacks Order**") approving a sale free and clear of liens, claims, and encumbrances, but noting that the Court was not making a determination as to whether the purchaser was a successor in interest or whether the Select Snacks Order served to limit the rights of a union under applicable non-bankruptcy law. *See Select Snacks* Order ¶¶ O, 6, 14, 32.  It is unclear whether the limitations in the *Select Snacks* Order were consensually agreed to by the parties or were contested rulings of the Court.  In any case, to the extent the Court did make such rulings, since 2007, there is an abundance of authority, including orders of this Court and others in this District, authorizing sales free and clear of successor liability claims pursuant to section 363(f) of the Bankruptcy Code.

limited to secured liens) (citing *Qualitech*, 327 F.3d at 545)); *Vista*, 2014 Bankr. LEXIS 1441 at *18-19 (same); *TWA*, 322 F.3d at 289-90 (finding term "any interest" intended to refer to obligations that relate to, are in connection with, or arise from, property being sold) (citing 3 Collier on Bankruptcy ¶ 363.06[1]; *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000)).   All of the courts addressing the issue found that successor liability claims against a purchaser of assets under section 363(f) of the Bankruptcy Code were barred.

25.    Simply stated, a claim that arises on account of property being sold, such as a successor liability claim, is, in and of itself, an "interest" in such property.  *See Naperville*, 2016 WL 930659, at *2-3 (claim under Illinois Bulk Sales Provisions triggered by sale of debtor's property treated as interest in such property); *In re Elk Grove Village Petroleum*, 510 B.R. 594, 603-04 (Bankr. N.D. Ill. 2014), *vacated on other grounds sub nom. Ill. Dep't. of Revenue v. Elk Grove Village Petroleum, LLC*, 541 B.R. 673 (N.D. Ill. 2015) (same); *Chrysler*, 576 F.3d at 123-26 (2d Cir. 2009) ("We agree with *TWA* and *Leckie* that the term 'any interest in property' encompasses those claims that '***arise from the property being sold***'") (citations omitted) (emphasis added); *TWA*, 322 F.3d at 290 ("[w]hile the interests of the [plaintiffs] in the assets . . . are not interests in property in the sense that they are not *in rem* interests . . . they are interests in property within the meaning of section 363(f) in the sense that they ***arise from the property being sold***.") (emphasis added); *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (employing same reasoning).

26.    Ignoring this established precedent, the Funds contend that the Court should adopt a narrow definition of "interest in property" and limit its meaning to obligations

that "flow from" ownership of the property being sold.  To be clear, as explained above, the successor liability claims the Funds seek to preserve do "flow from" the fact that the Debtors' property is being sold.  The Funds, however, incorrectly focus on whether withdrawal liability (instead of successor liability) constitutes an "interest in property," and allege that withdrawal liability is unrelated to property sold by an employer because such liability exists solely by virtue of the employer's choice to participate in, and then withdraw from, a multi-employer pension fund. *See* ECF No. 148, ¶ 24.

27.     This argument misses the mark.  The Debtors are not arguing that the Funds' ***withdrawal liability claims against the Debtors should be extinguished*** by a free and clear sale of the Debtors' assets pursuant to section 363(f) of the Bankruptcy Code.  With or without a sale of the Debtors' assets, the Funds' withdrawal liability claims will remain against the applicable Debtors and their estates, including any members of the Debtors' "controlled group" within the meaning of section 4001(b) of ERISA and the applicable regulations thereunder. What section 363(f) does permit, however, is a sale free and clear of ***successor liability claims*** against a purchaser, as such claims, by definition, arise by virtue of the purchase of a debtor's assets.  Simply put, but for the sale of the Debtors' assets to the Stalking Horse Bidder, there would be no basis for the Funds to assert a withdrawal liability claim—or any claim—against the Stalking Horse Bidder on any theory of successor or transferee liability or otherwise. Accordingly, the Funds' successor liability claims do "relate to," "arise from," are "in connection with," and "flow from" (to the extent that is different from any of the foregoing) the Debtors' property to be sold to the Stalking Horse Bidder and, therefore, may be barred by section 363(f) of the Bankruptcy Code. The underlying withdrawal liability claims against the Debtors and how they came into being is irrelevant.

28.     Inexplicably, the Funds cite to *Elk Grove* 510, B.R. 594, in support of their position. That case, however, holds directly to the contrary.  In *Elk Grove*, IDOR asserted a claim against the purchaser of the debtors' assets under the Illinois Bulk Sales Act and the Illinois Income Tax Act.  *See Elk Grove*, 510 B.R. at 600.  In determining whether IDOR was entitled to adequate protection under section 363(e) of the Bankruptcy Code, the Court first had to decide whether IDOR held an interest in the debtors' property within the meaning of section 363(f).  *See id.* at 603-04.  The Court held that IDOR's successor liability claim against the purchaser of the debtors' assets did, in fact, constitute an interest in such property that may be extinguished in a sale pursuant to section 363(f) of the Bankruptcy Code and stated as follows:

> Judge Lynch of this court has recently addressed this threshold question.  *In re Vista Marketing Group Ltd.,* Case No. 12-B-83168, 2014 WL 1330112, at *102 (Bankr. N.D. Ill. Mar. 28, 2014).  He was confronted, after the sale of gasoline stations under section 363 of the Bankruptcy Code, with the question of whether IDOR's ability under the Acts to assert liability against a purchaser is an interest.  Judge Lynch analyzed many of the cases cited by the parties here and concluded that the liability of the purchaser for the seller's unpaid taxes is an obligation that "flows from the ownership of property". . . . As such, Judge Lynch concluded that IDOR's attempt to enforce liability against the purchaser was a violation of the court's sale of assets free and clear under section 363(f) . . . **This court agrees**.  IDOR's ability to assert a claim against the purchaser outside of bankruptcy is, at the very least, an inchoate interest in the assets in question, ***as it would not be assertable against the purchaser had the transfer of the assets not occurred.  It is therefore an interest within the meaning of section 363(f).***

*Id*. at 603 (emphasis added).

### (2)      The Funds Can Be Compelled to Accept a Money Satisfaction of their Withdrawal Liability Claims

29.     The Funds seek to limit the expansive definition of "claim" under section 101(5) of the Bankruptcy Code on the basis of when withdrawal liability becomes "due and

owing" under the MPPAA.[15]     Because the Debtors' withdrawal liability is not yet due and

owing, the Funds argue, the Funds' withdrawal liability claims (and successor liability claims, by

extension) are "inchoate and incalculable" and, therefore, the Funds cannot be compelled to

accept a money satisfaction of their claims pursuant to section 363(f)(5) of the Bankruptcy Code.

*See* ECF No. 148, ¶ 38.   The Funds' assertion ignores the express provisions of the Bankruptcy

Code and their own admissions and conduct, and should be summarily rejected.

30.     The applicable test for whether a party has a claim and, thus, a right to

payment in the context of these chapter 11 cases is set forth in section 101(5) of the Bankruptcy

Code—not in ERISA, the MPPAA, or any other non-bankruptcy law.   An "inchoate" and/or

"incalculable" claim is not excluded from the Bankruptcy Code's definition of "claim."   To the

contrary, "claim" is expressly defined as "a right to payment, ***whether or not*** such right is

reduced to judgment, ***liquidated***, ***unliquidated***, ***fixed***, ***contingent***, ***matured***, ***unmatured***,

***disputed, undisputed***, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (emphasis

added).   It is undisputed that the Funds have claims within the meaning of section 101(5) of the

Bankruptcy Code.   The Funds even acknowledge as such in their Objections. *See* ECF No. 142, ¶

2; ECF No.145, ¶ 2; and ECF No. 148, ¶ 7.  It thus follows that, if the Funds have a claim under

section 101(5), then they have a right to payment, even though such right may be *unliquidated,*

*contingent, and unmatured.* Courts in this Circuit and other circuits routinely enter orders

pursuant to section 363(f)(5) of the Bankruptcy Code expressly authorizing asset sales free and

clear of claims, as defined under section 101(5), including inchoate and incalculable successor

liability claims that only would arise upon consummation of a sale.[16]

---

[15] Multiemployer Pension Plan Amendments Act ("**MPPAA**")

[16] *See, supra* ¶¶ 11-15

31.     Even absent this voluminous body of evidence and authority that the requirements of section 363(f)(5) have been satisfied, the Funds' argument could not hold.  As established above, the only conceivable way the Funds could assert successor liability claims against the Stalking Horse Bidder is if the Stalking Horse Bidder *purchased the Debtors' assets*. The Funds' successor liability claims, therefore, constitute "interests in" the Debtors' property to be sold to the Stalking Horse Bidder. The Debtors' property may be sold free and clear of the Funds' interests in such property because the Funds have a claim under section 101(5) of the Bankruptcy Code.  Because the Funds have a claim under section 101(5) of the Bankruptcy Code, they have a right to payment and could be compelled to accept money in satisfaction thereof.

32.     It is puzzling how the Funds could credibly assert that they could not be compelled to accept a money satisfaction of their claims. *See* ECF No. 148, ¶ 38.  Indeed, each of the Funds has repeatedly quantified in dollar amounts its claim. *See* ECF No. 142, ¶ 2 ("Here, the sale will trigger the Debtors' complete withdrawal from the National Fund and the Debtors' [*sic*] will owe the National Fund withdrawal liability in the estimated amount of $21,426,000."); ECF No.145, ¶ 2 ("[T]he sale . . . will trigger Debtors' complete withdrawal from the Funds and Debtors will owe the Funds withdrawal liability in the estimated amounts of $5.35 million for the Chicago Area International Brotherhood of Teamsters Pension Fund, and several hundred thousand dollars for the International Brotherhood of Teamsters Grocery and Food Employees Pension Fund"); and ECF No. 148, ¶ 7 ("The Midwest Fund is a creditor of each of the Debtors with an unsecured claim in an amount not less than $84 million"); *see also Vista Mrktg. Grp Ltd.*, 557 B.R. 630, 635 (Bankr. N.D. Ill. 2016) ("Indeed , one would be hard-pressed to present a clearer example of a situation where the interest-holder could be compelled to accept a money

satisfaction of its interest under [section 363(f)(5) of the Bankruptcy Code] than the calculable monetary obligation asserted by the [interest-holder]"). Incredibly, the Midwest Pension Fund essentially is asking this Court to find that it does not hold a claim, even though it actually sought to become—and did become—a member of the Creditors' Committee.

33.    The Seventh Circuit has adopted a very straightforward test for determining whether a debtor may sell assets free and clear of an entity's interest pursuant to section 363(f)(5) of the Bankruptcy Code. *See Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994).  In short, an entity must be able to be "compelled" to accept money damages in lieu of an equitable remedy or enforcement for section 363(f)(5) to apply.  *Id*.  Here, there is no equitable remedy to satisfy the Funds' withdrawal liability or related successor liability claims.  The only remedy is money damages.

34.    In the context of these chapter 11 cases, not only could the Funds be compelled to accept a money satisfaction of their claims, but they also could be compelled to accept a money satisfaction of their claims for less than the face value of their claims.  *See Scherer v. Fed. Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments)*, 159 B.R. 821, 829 (N.D. Ill. 1993) ("[T]he decisions that require full satisfaction absent a showing of equitable consideration fail to capture the essence of section 363(b)(5) . . . By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt.").  Unquestionably, the Funds could be compelled to accept a money satisfaction of their claims in a "cram down" pursuant to section 1129(b)(2) of the Bankruptcy Code.  *See id*; *see also*, *In re Weyland*, 63 B.R. 854, 859 (Bankr. E.D. Wisc. 1986).  Accordingly, the Debtors are

authorized to sell the Stalking Horse Package free and clear of the Funds' claims pursuant to section 363(f)(5) of the Bankruptcy Code.

      d.     ***The Funds Are Improperly Requesting the Court to Deny the Debtors Authorization to Sell their Assets Free and Clear of Successor Liability Claims under Section 363(f) of the Bankruptcy Code in Contravention of the Fundamental Policies Underlying Chapter 11 and the Priority Scheme Set Forth in the Bankruptcy Code***

      35.     The Funds do not cite to any cases from this Circuit or otherwise that stand for the proposition, or even suggest that, the common law doctrine of successor liability or federal statutes, such as ERISA and the MPPAA, should trump the plain language of section 363 of the Bankruptcy Code, Congress's intent in enacting the statute, or the fundamental principles underlying chapter 11 of the Bankruptcy Code.  *See Faulkner*, 2005 U.S. Dist. LEXIS 7501 at *6 (N.D. Ind. Apr. 27, 2005) (expressly adopting Third Circuit reasoning in *TWA* and denying successor liability claim, noting that plaintiff failed to cite to any cases that stand for proposition that Title VII and § 1981 trump principles of bankruptcy law or 363(f) sale order); *In re Ormet Corp.*, 2014 WL 3542133 *4 (Bankr. D. Del. July 17, 2014) (concluding that the "Congressional policy favoring multi-employer pension plans expressed in ERISA and MPPAA does not trump the express provisions of the Bankruptcy Code permitting the sale of the Debtor's assets free and clear of the Trust's successor liability claim"). Nevertheless, the Funds implore the Court to elevate an equitable doctrine over the Debtors' express statutory right to sell their assets free and clear of the Funds' claims pursuant to section 363(f) of the Bankruptcy Code, and ask the Court to turn a blind eye to the far-reaching, negative consequences that could arise if the Court were to adopt the Funds' position.

      36.     Maximization of value of a debtor's estate for distributions to creditors in accordance with the priority scheme set forth in the Bankruptcy Code is one of the most fundamental tenets of a chapter 11 case. *See Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (finding

general policy of chapter 11 bankruptcy is to maximize the value of the bankruptcy estate); *In re Spanjer Bros., Inc.*, 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) ("[T]he bankruptcy estate . . . serves as a fund from which allowed claims are to be paid in the order and priority established under the Bankruptcy Code."). The Funds plainly are trying to thwart the Debtors' ability to achieve this goal to extract value from the Debtors' sale process for themselves in direct contravention of the priority scheme established by the Bankruptcy Code.  *See Faulkner*, 2005 U.S. Dist. LEXIS 7501 at *6 (quoting *TWA*, 322 F.3d at 292 ("To allow claimants to assert successor liability claims against [the purchaser] while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code priority scheme.")); *Ormet*, 2014 WL 3542133 at *4 ("[A]ccepting the Trust's position would result in the Trust's claim receiving more than other general unsecured claims, in violation of the Code's priority scheme") (citations omitted). Contrary to the reasoning in *Tasemkin*—a chapter 7 case that, as noted, did not address free and clear sales under section 363(f) of the Bankruptcy Code—Courts in this Circuit and other Circuits have agreed that allowing parties to assert successor liability claims against purchasers would chill bankruptcy sales, particularly going-concern sales as here that preserve jobs and mitigate a host of harms that arise from bankruptcy filings. *See, e.g., Faulkner*, 2005 U.S. Dist. LEXIS 7501 at *6 ("[T]he other difficulty with adopting Plaintiff's position is that trustees would face an uphill battle in liquidating the bankrupt's estate. If the trustee cannot transfer title to the bankrupt's assets free of all claims, prospective purchasers will probably not be willing to pay a fair price for the property, reducing the amount available to distribute to creditors"); *TWA*, 322 F.3d at 292 ("[W]e agree with the Bankruptcy Court that a sale of the assets of TWA at the expense of preserving successor liability claims was necessary in order to preserve some 20,000 jobs . . . ."); *Ormet*, 2014 WL 3542133 at *3 ("The very

uncertainty of that potential [successor liability] exposure could result in bids which are discounted substantially . . . .").

37. Indeed, if the Court were to adopt the Funds' position, the Debtors' prospects for consummating the Sale Transaction with the Stalking Horse Bidder (or, for that matter, with other purchasers of the Debtors' assets) and maximizing value for their stakeholders would be dealt a likely fatal blow. The Stalking Horse Bidder has not agreed to acquire the Stalking Horse Package if the Sale Transaction cannot be free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Further, the Stalking Horse Bidder has not agreed to the Sale Transaction if the Stalking Horse Bidder can be held liable for any claims or interests against the Debtors under any theory of successor or transferee liability, *de facto* merger, substantial continuity, or similar theories. *Id*. It is patently obvious that no rational person would purchase the Debtors' assets knowing that nearly $100 million in pension withdrawal liabilities will be asserted against it if the sale is consummated. The choices here are rather binary: (i) the Court's entry of the Revised Sale Order, which the Court undoubtedly has the authority to do, or (ii) promoting the Funds' parochial interests to the detriment and prejudice of all other parties in interest in these chapter 11 cases and, at the same time, needlessly sacrificing over 2,000 jobs.

e. ***The Court Has Jurisdiction to Enter the Sale Order Authorizing the Sale of the Debtors' Assets Free and Clear of Successor Liability Claims***

38. It is undeniable that this Court has jurisdiction to enter an order authorizing a sale of the Debtors' assets pursuant to section 363(f) of the Bankruptcy Code. Consideration of the Motion (and subsequent entry of the Revised Sale Order) is a "core proceeding" within the Court's subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(N); *see also Pusser's (2001) Ltd v. HMX, LLC*, 2012 U.S. Dist. LEXIS 43199 *20 (N.D. Ill. Mar. 28,

2012) (citing *Stern v. Marshall*, 131 S. Ct. 2594, 2613 (2011); *Motors Liquidation*, 428 B.R. at 56-57 (S.D.N.Y. 2010) ("It is well-settled that Bankruptcy Courts have core jurisdiction to approve section 363 sales . . . .")). Courts also have held that a Bankruptcy Court's issuance of injunctions in a sale order to effectuate the purposes of section 363(f) of the Bankruptcy Code also is a "core" proceeding within the Bankruptcy Court's subject matter jurisdiction.  *See Pusser's* 2012 U.S. Dist. LEXIS 43199 at *20 (citing *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144-45 (6th Cir. 1991); *Motors Liquidation*, 428 B.R. at 57; *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 695-96 (Bankr. W.D. Tex. 2011)); *see also In re Dow Corning Corp.*, 198 B.R. 214 (Bankr. E.D. Mich. 1996) ("[M]ore explicit protection is often needed to effectuate this important aspect of a § 363 sale. In other words, an actual injunction barring creditors from suing a purchaser of estate assets is sometimes necessary and appropriate to give the 'free and clear' aspect of § 363(f) meaning . . . Accordingly, the Court has the power to order releases of the tort claimants' alleged interests . . . .").

39.    Further, it is widely accepted that a Bankruptcy Court has jurisdiction to interpret and enforce the terms and provisions of its own orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)). "A bankruptcy court has jurisdiction over challenges to its orders whatever their basis." *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 771 (7th Cir. 2011) (citing *Travelers*, 557 U.S. 137).   As such, both a motion seeking entry of an order approving a section 363 sale and a motion seeking to enforce such order are core proceedings "arising under title 11."  *See In re Vista Mktg. Grp. Ltd.*, 557 B.R. 630, 634 (Bankr. N.D. Ill. 2016).

40.    The Funds challenge this Court's authority to enter the Revised Sale Order in reliance—again—on cases that are easily distinguishable from the circumstances of these

chapter 11 cases.  In *Zerand*, the Seventh Circuit affirmed this Court's dismissal of an adversary proceeding commenced by a purchaser of a debtor's assets seeking to reopen the debtor's bankruptcy case to enjoin a post-confirmation successor liability claim of a third-party tort claimant.  23 F.3d 159 (7th Cir. 1994) (dismissed for lack of subject matter jurisdiction).  Unlike the Funds' claims in these cases, *Zerand* dealt with "future" tort claims that had not arisen and were not known prior to the sale of the debtor's assets, or even prior to the confirmation of the debtor's chapter 11 plan.  *See id.* at 161.  The claimants in *Zerand* did not assert their claims against the purchaser until four years after the debtor's bankruptcy case had been closed. *See id*. at 161-63 (finding remoteness of successor liability claims arising under state law to bankruptcy proceeding a material factor in whether Court had "arising under" jurisdiction to decide dispute). By the Court's logic, given that the claimants' injury did not occur until after the conclusion of the debtor's bankruptcy, the claimants had no claim against the debtor or interest in the debtor's property free from which such property could be sold under section 363(f) of the Bankruptcy Code. *See id*. at 163.

41.    Contrary to what the Funds assert, the Seventh Circuit in *Zerand* did not "unequivocally" hold "that a Bankruptcy Court lacks jurisdiction to enjoin successor-liability actions following a sale under section 363 of the Code." ECF No. 148, ¶ 31.  Rather, *Zerand* stands for the much narrower proposition that a Bankruptcy Court does not have "arising under" jurisdiction to enjoin a successor liability action against a purchaser of assets under section 363 of the Bankruptcy Code where such action arises under state law and is asserted by a claimant that was not a party to, and did not have an opportunity to assert its claim in, the bankruptcy in which the assets were sold.

> It is true that [debtor's] assets were sold to [purchaser] free from all liens and other encumbrances.  ***And such a cleansing of the***

> ***assets in the bankruptcy sale is a valid power of a bankruptcy
> court***, 11 U.S.C. §§ 363(f), 1141(c).  But the [claimants] are not
> attempting to enforce a lien . . . . ***Had the [claimants] been parties
> to the bankruptcy proceeding, they would have had no possible
> basis for a suit against [purchaser]*** . . . because the successorship
> doctrine on which they rely is inapplicable if [claimants] had a
> chance to obtain a legal remedy against the predecessor, even so
> limited a remedy as that afforded by the filing of a claim in
> bankruptcy . . . The [claimants] did not have any such chance,
> since the accident occurred after the bankruptcy proceeding had
> wound up.

*Zerand*, 23 F.3d at 163. (emphasis added).

42.   *Zerand* is factually distinguishable from these chapter 11 cases for a

number of reasons.  First, as explained above, the Funds already hold claims against the Debtors

pursuant to section 101(5) of the Bankruptcy Code.  Second, the Funds are active participants in

the Debtors' chapter 11 cases and have had, and will continue to have, ample opportunity to

assert their withdrawal liability claims against the Debtors, their estates, and any member of their

"controlled group" under section 4001(b) of ERISA.   Third, also as established above, the

Funds' successor liability claims constitute interests in the Debtors' property to be sold to the

Stalking Horse Bidder. Such property may be sold free and clear of the Funds' interests under

section 363(f)(5) of the Bankruptcy Code.  Fourth, the Funds rely on the reasoning in *Zerand* to

argue that the Court does not have jurisdiction to even enter the Revised Sale Order authorizing

the Debtors to sell their assets free and clear of successor liability claims.  *Zerand* does not stand

for this proposition. In fact, the Seventh Circuit stated that "a cleansing of the assets in a

bankruptcy sale" of all liens and other encumbrances "is a valid power of the bankruptcy court."

*See Zerand*, 23 F.3d at 163; *see also  Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) (citing

*Zerand* for the proposition that "an ordinary injunction can be made to run against third parties

who have notice of it, in order to prevent interferences with it. And thus when an asset of the

estate is sold . . . free and clear of any liens, the court can enjoin a creditor from suing to enforce

a preexisting lien in the asset."); *Vista*, 2014 LEXIS 1441 at *22 (noting that the *Zerand* court

did not discuss the term "interest" as used in section 363(f) of the Bankruptcy Code or whether

that term encompasses successor liability claims).

43. This Court has entered and has enforced orders authorizing free and clear

sales pursuant to section 363(f) of the Bankruptcy Code to bar third-party successor liability

claims. *See, e.g., Vista*, 557, B.R. 630 (Bankr. N.D. Ill. 2016) (enforcing sale order authorizing

sale free and clear of interests pursuant to section 363(f) of Bankruptcy Code to bar third-party

successor liability claims against purchaser); *Vista*, 2014 Bankr. LEXIS 1441 (Bankr. N.D. Ill.

Mar. 28, 2014) (same); *Elk Grove*, 510 B.R. 594 (Bankr. N.D. Ill. 2014); *vacated on other*

*grounds sub nom. Elk Grove*, 541 B.R. 673 (N.D. Ill. 2015) (same); *LDR*, Case No. 14-32138

(PSH) (Bankr. N.D. Ill. Feb. 26, 2015) [ECF No. 142] (authorizing sale of debtor's operating

assets to stalking horse bidder free and clear of all liens, claims, encumbrances, and interests,

including all claims pursuant to any successor or successor-in-interest liability theory); *Hartford*

*Computer.*, Case No. 11-49744 (PSH) (Bankr. N.D. Ill. Feb. 28, 2012) [ECF No. 208] (same);

and *Bridgeview*, Case No. 09-41021 (PSH) (Bankr. N.D. Ill. Feb. 3, 2011) [ECF No. 405]

(same).

44. Accordingly, this Court has jurisdiction to enter the Revised Sale Order

authorizing the Debtors to sell their assets free and clear of the Funds' successor liability claims.

f. ***Section 1113 of the Bankruptcy Code Does Not Bar the Proposed Sale***
***Transaction***

45. Finally, the Funds argue that if the Court does not adopt their position with

respect to preserving their successor liability claims, the Court should nevertheless deny

approval of the proposed Sale Transaction until the Debtors have complied with the requirements

of section 1113 of the Bankruptcy Code. *See* ECF No. 142, ¶¶ 35-40; ECF No.145, ¶¶ 11-17.

{6843720:}   29

The Funds' Objections should be summarily overruled. First, the Funds do not have standing to litigate the disposition of the Debtors' collective bargaining agreements under section 1113 of the Bankruptcy Code.   Indeed, the labor unions that are party to the applicable collective bargaining agreements with the Debtors do not object to the Sale Transaction with the Stalking Horse Bidder, and a substantial majority of them have reached agreements with the Stalking Horse Bidder on the terms of modified labor agreements. Second, even if the Funds somehow could assert rights under section 1113 of the Bankruptcy Code, the Objections should nevertheless be overruled because section 1113 is inapplicable to the proposed Sale Transaction.

> (1)    **The Funds Do Not Have Standing to Assert Claims under or Participate in Litigation With Respect to Section 1113 of the Bankruptcy Code**

46.    The Funds do not have standing to assert claims under section 1113 or to participate in litigation regarding the disposition of the Debtors' collective bargaining agreements. *See In re UAL Corp.*, 408 F.3d 847 (7th Cir. 2005).   Section 1113(d)(1) of the Bankruptcy Code provides that "all interested parties may appear and be heard" at a hearing under section 1113.   11 U.S.C. § 1113(d)(1).   The Seventh Circuit, however, has interpreted "interested parties" in that context to mean only parties to the collective bargaining agreement at issue or a guarantor of such agreement. *UAL Corp.* 408 F.3d at 851.   The Funds are not parties to the collective bargaining agreements affected by the proposed Sale Transaction with the Stalking Horse Bidder and, therefore, have no standing to assert objections under section 1113 of the Bankruptcy Code.

47.    The Seventh Circuit's decision in *UAL* is directly on point and dispositive of this issue. In *UAL*, a fiduciary of the debtors' pension plans sought to intervene in a hearing to consider whether the debtors could reject their collective bargaining agreements under section 1113 of the Bankruptcy Code. *See id.* at 849.   The plan fiduciary in *UAL* argued, as the Funds do

here (*see* ECF No. 142, ¶¶ 37-40; ECF No. 145, ¶¶ 13-15), that it was an "interested party" within the meaning of section 1113(d)(1) of the Bankruptcy Code because the debtors' obligations to contribute to pension funds arose from the collective bargaining agreements the debtors had moved to reject. *See id*.  This Court rejected that argument, and both the District Court and the Seventh Circuit affirmed the Court's decision, and held that the pension fund lacked standing to object to the disposition of a collective bargaining agreement or participate in a hearing with respect thereto under section 1113 of the Bankruptcy Code.  *Id*. at 847. Accordingly, the Funds' Objections on the basis of section 1113 of the Bankruptcy Code should be overruled.

> (2)   **The Debtors Are Not Required to Satisfy the Requirements under Section 1113 of the Bankruptcy Code to Exercise the Right to Sell Assets Free and Clear of Interests under Section 363 of the Bankruptcy Code**

48.    Even if the Funds somehow had standing under section 1113 of the Bankruptcy Code, their arguments should be overruled.  The Funds assert that the Court should deny the proposed Sale Transaction because failure to do so would allow the Debtors to "unilaterally terminate or alter" the provisions of collective bargaining agreements affected by the Sale Transaction without first complying with the requirements of section 1113 of the Bankruptcy Code.  This argument is just plain wrong.

49.    First and foremost, as stated, the vast majority of the unions affected by the proposed Sale Transaction already have negotiated and entered into modified labor agreements with the Stalking Horse Bidder. Parties to collective bargaining agreements are free to negotiate and modify the terms of their agreements at any time, outside of the confines of section 1113 of the Bankruptcy Code.  Indeed, what "labor and management may do voluntarily, the court may accomplish in a § 1113 proceeding." *UAL*, 408 F.3d at 851 (holding that

employers and unions are free to modify agreements without any complaint by individual workers and third-party beneficiaries, ***such as pension fiduciaries***) (emphasis added).

50.     Second, the Debtors do not seek to unilaterally modify or reject their labor agreements affected by the proposed Sale Transaction.  A collective bargaining agreement does not terminate by virtue of a debtor's sale of its businesses where the agreement operated.  *See In re Chi. Const. Specialties, Inc.*, 510 B.R. 205, 217 (Bankr. N.D. Ill. 2014) ("The Debtor here has ceased operations and sold substantially all its assets prior to filing for bankruptcy.  Yet, even where such a debtor has sold its assets, that does not result in a termination of the debtor's collective bargaining agreements unless the agreements so provide.") (citing *Tool & Die Makers Local Lodge No. 113 v. Buhrke Indus., Inc.*, 1996 WL 131698 *7 (N.D. Ill. Mar. 20, 1996) ("[T]his court concludes that a CBA need not terminate simply because the division or operation where the CBA operated is sold")).

51.     Finally, there is no provision in the Bankruptcy Code that subjects a debtor's right to sell its assets under section 363 to an obligation of the debtor to first comply with the requirements of section 1113. *See* Hr'g Tr., 42, *In re Flying J Inc.*, Case No. 08-13384 (MFW) (Bankr. D. Del. Mar. 23, 2010)  (overruling union objection and rejecting argument that section 1113 trumped section 363 and debtor had to comply with 1113 procedures prior to sale); *In re Lady H. Coal Co., Inc.*, 193 B.R. 233 (Bankr. S.D. W.Va. 1996) (rejecting argument that section 1113 of Bankruptcy Code applied to sale of substantially all of debtor's assets under section 363 of Bankruptcy Code); *Int'l Union, Etc. v. Morse Tool, Inc.*, 85 B.R. 666, 667 (Bankr. D. Mass. 1988) (authorizing sale of debtor's assets free and clear of obligations under debtor's collective bargaining agreements).

**B.      Vendor Objections**

52.      The Debtors received two Vendor Objections filed by Kellogg Sale Company and Abraham & Sons, Inc. (together, the "**Vendors**"). ECF Nos. 166 and 167.  In sum, the Vendors allege that the proposed Sale Transaction effectively amounts to a "*sub rosa*" plan and argue that this Court's approval of the Sale Transaction must be conditioned on the Debtors' secured lenders' providing a "carve-out" from the proceeds to be realized from the sale process for the payment of administrative claims, such as claims arising under section 503(b)(9) of the Bankruptcy Code, or a recovery for general unsecured creditors.  See ECF No. 166, ¶¶ 3, 18-21; ECF No. 167, ¶¶ 3. The Vendor Objections should be overruled because section 363(b) authorizes the Debtors to sell their assets outside the ordinary course of business and, as set forth in the Motion and below, the Debtors have demonstrated a valid business justification for consummating the Sale Transaction.  Additionally, there is no basis for the Vendors' request that approval of the Sale Transaction be conditioned on the provision of a "carve-out" for the payment of junior priority claims and, as such, this request should be denied.

a.      ***The Debtors Need Only Demonstrate a Valid Business Justification for Approval of the Proposed Sale Transaction***

53.      Pursuant to section 363(b) of the Bankruptcy Code, after notice and a hearing, the Debtors are authorized to sell their assets outside the ordinary course of business.  11 U.S.C. § 363(b).  To balance the competing concerns over efficiency and the safeguards afforded by the chapter 11 process, the standard that has emerged and is used by courts to determine whether a sale under section 363(b) of the Bankruptcy Code is appropriate is whether there is a "good business reason" for such transaction.  *See, e.g., In re Chrysler LLC*, 576 F.3d 108, 114 (2d Cir. 2009) (citing *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *Stephens Indus*. v. McClung, 789 F.2d 386, 389-90 (6th Cir.

1986); *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc., (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re General Motors Corp.*, 407 B.R. 463, 488-89 (Bankr. S.D.N.Y. 2009) (citations omitted).

54.     There is ample justification for consummation of the Sale Transaction with the Stalking Horse Bidder.  First, the Sale Transaction will preserve the going-concern value of the nineteen (19) Strack Stores to be sold.  With each passing day in these chapter 11 cases, the going-concern value of the Debtors' businesses shrinks.  It is therefore critical that the sale of the Debtors' assets be consummated expeditiously so that value is maximized.  The circumstances here represent the classic "melting ice cube" scenario.

55.     Second, time is of the essence. The Debtors have been presented with and, therefore, must seize upon, the most viable option for maximizing the value of the Strack Stores now.  Failure to proceed with the Sale Transaction in accordance with the deadlines set forth in the Stalking Horse Agreement and the Milestones established in the DIP Credit Agreement could collapse the Debtors' chapter 11 strategy, jeopardize the value generated by and maintained through the sale process, eliminate in excess of over 2,000 jobs of the Debtors' employees, and force a fire-sale liquidation of the Debtors' estates. No party in interest in these chapter 11 cases stands to benefit under that scenario.  These are the precise circumstances under which courts have found it abundantly appropriate to authorize the sale of a debtor's assets under section 363(b) of the Bankruptcy Code.  *See e.g., Chrysler*, 576 F.3d at 119 ("With its revenues shrinking, its factories dark, and massive debts growing, Chrysler fit the paradigm of the melting ice cube.  Going concern value was being reduced each passing day that it produced no cars, yet was obligated to pay rents, overhead, and salaries . . . it was no abuse of discretion to determine that the Sale prevented further unnecessary losses); *General Motors*, 407 B.R. at 490 (finding

appropriate to consider when determining whether to approve 363(b) sale whether (i) estate has liquidity to survive until plan confirmation, (ii) sale opportunity will exist at time of plan confirmation, and (iii) if sale opportunity will not exist at time of plan confirmation, whether there will be satisfactory alternative sale opportunity); *In re Cummins Utility, L.P.*, 279 B.R. 195, 198 (Bankr. N.D. Tex. 2002) (approving sale of substantially all of debtor's assets because debtor's business rapidly deteriorating); *In re Condere Corp.*, 228 B.R. 615, 627 (Bankr. S.D. Miss. 1998) (approving sale of substantially all of debtor's assets because debtor otherwise would run out of money).

      b.      ***There Is no "Sub Rosa" Plan and Payment of Junior Priority Claims Is Not Required to Exercise Right to Sell Assets under Section 363(b) of the Bankruptcy Code***

      56.     The proposed Sale Transaction does not come close to resembling a transaction that is consummated for the purposes of circumventing the chapter 11 plan process, or what has come to be known as a "*sub rosa*" plan. Neither the Stalking Horse Agreement nor the Revised Sale Order—or any other document filed in or relating to these chapter 11 cases—attempts to establish the terms of any future plan of reorganization or restructure the rights of the Debtors' creditors. *See In re Weyland*, 63 B.R. 854, 863 (E.D. Wis. 1986) ("What *Braniff* holds is that § 363(b) does not permit the sale of assets which restructure the rights of creditors and dictates the terms of any future reorganization plan."); *In re Tower Auto. Inc.,* 241 F.R.D. 162, 166 (S.D.N.Y. 2006) (finding that a section 363 sale is not a *sub rosa* plan if it does not establish terms of reorganization plan or restrict rights afforded to creditors in chapter 11 process); *In re Naron & Wagner, Chartered*, 88 B.R. 85, 88 (Bankr. D. Md. 1988) (finding that proposed sale not *sub rosa* plan because sale only would liquidate assets and not restructure rights of creditors). Rather, the goal of the Debtors' sale process and the proposed Sale Transaction is to generate the

highest or best value for the Debtors' assets for the benefit and distribution of creditor recoveries in accordance with the priority scheme established by the Bankruptcy Code.

57.    A sale of assets under section 363(b) of the Bankruptcy Code does not amount to a "*sub rosa*" plan simply because the sale proceeds are distributed in the order of priority required under the Bankruptcy Code and a debtor's capital structure. *See In re GSC, Inc.*, 453 B.R. 179, 179-80 (Bankr. S.D.N.Y. 2011) ("[S]o long as the proceeds from the sale are distributed in lien priority, the plan is not one that violates the confirmation process in the *Braniff* sense") (citing *General Motors*, 430 B.R. at 84; *Chrysler*, 405 B.R. at 96).   It is wholly uncontroversial and proper that the claims of the Debtors' prepetition secured lenders and DIP Lenders will be paid from the proceeds generated from the sale process ahead of the claims of the Vendors. *See, e.g., In re Boston Generating, LLC*, 440 B.R. 302, 331 (Bankr. S.D.N.Y. 2010) ("Here, the proposed sale of the Debtors' assets is not a "*sub rosa*" plan . . . The Debtors' assets are simply being sold; the First Lien Lenders will receive most of the proceeds in accordance with their lien priority; and remaining consideration will be subsequently distributed under a plan."); *In re Chrysler LLC*, 405 B.R. 84, 97 (Bankr. S.D.N.Y. 2009) ("Moreover, the sale of assets is not a *sub rosa* plan of reorganization.  The Debtors are receiving fair value for the assets being sold. Not one penny of value of the Debtors' assets is going to anyone other than the First-Lien Lenders.").  In fact, as noted, the Final DIP Order entered by the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") [Case No. 17-10993 Del. Docket No. 368], requires that the Debtors' secured lenders be paid the proceeds of their collateral.

58.    Additionally, there is no basis for the Vendors' request that the Court condition approval of the Sale Transaction on the provision of a "carve-out" from the sale

proceeds for payment of the Vendors' junior priority claims. Section 363(b) is devoid of any language requiring the payment or guarantee of payment of any claims before a Court may authorize a sale pursuant to that provision. Distributions to the Debtors' creditors (other than those secured by the Debtors' assets) will be made at the appropriate time, and in accordance with the priority scheme set forth in the Bankruptcy Code. *See id*. at 98 (finding it appropriate for debtors to consummate going-concern sale under section 363(b) and thereafter seek to confirm plan that would provide for distribution of assets – "[t]hus, the classification of claims is independent of the sale process and the Debtors are not attempting to evade the plan confirmation procedures."). Moreover, the DIP Orders entered by the Delaware Bankruptcy Court [Case No. 17-10993 Docket Nos. 190 and 368] dictate the terms by which the claims of the Debtors' prepetition secured lenders and DIP lenders will be paid in these chapter 11 cases. Further, in approving the DIP Facility, the Delaware Bankruptcy Court stated on the record the following, which further supports the position that the Vendors' Objections should be overruled:

> [T]he evidence is that the [DIP Financing] is necessary for this debtor to be able to operate while it . . . seeks approval of a sale on a process that I have just approved. And I do think that the sale process is the best way to maximize recoveries in this case, and therefore the best way to maximize the possibility that 503(b)(9) claims will, in fact, be paid, whether that is through assumption of certain trade debt, which is contemplated in the sale process, or in another fashion. The [creditors'] committee, has, obviously, considered, in making its deal, the process that it believes will best maximize possibilities for recoveries for unsecured creditors, which necessarily means that the committee hopes that administrative creditors will be paid in full. And it's clear that the lender is not the guarantor of a case, and is not the guarantor that administrative creditors will be paid.

Hr'g Tr. 90, June 2, 2017 (Case No. 17-10993).

59.    Accordingly, the Vendors' Objections should be overruled and the request to condition approval of the Sale Transaction on the provision of a "carve-out" for the payment

of their claims arising under section 503(b)(9) of the Bankruptcy Code or otherwise should be denied.

60.    The Debtors' responses to the remaining Objections are set forth in the Objection Summary Chart.

## **CONCLUSION**

For the reasons set forth herein and on the Objection Summary Chart, the Objections should be overruled to the extent they have not been resolved consensually, the Revised Sale Order should be entered, and the Sale Transaction should be approved.

Dated: June 26, 2017
    Chicago, Illinois

/s/ David A. Agay
David A. Agay (ARDC No. 6244314)
Rion M. Vaughan (ARDC No. 6317715)
MCDONALD HOPKINS LLC
300 North LaSalle Street
Suite 1400
Chicago, IL 60654
Telephone:  (312) 642-2217
Facsimile:   (312) 280-8232

-and-

Ray C. Schrock, P.C.
Stephen Karotkin (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*