UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

```
------------------------------------------------------- x
In re                                    :   Chapter 11
                                         :
CENTRAL GROCERS, INC., et al.,           :   Case No. 17-13886
                                         :   (Jointly Administered)
                                         :
            Debtors.¹                    :   Hon. Pamela S. Hollis
------------------------------------------------------- x
```

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT
AMONG SELLERS AND BUYER, (II) AUTHORIZING THE SALE OF
CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
LEASES IN CONNECTION THEREWITH AND, (IV) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 204] (the "**Sale Motion**")² of Central Grocers, Inc. and its

debtor affiliates, including Strack and Van Til Super Market, Inc., as debtors and debtors in

possession (collectively, the "**Debtors**"), seeking, among other things, the entry of an order (the

"**Sale Order**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the

"**Bankruptcy Code**"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**") (i) authorizing and approving the sale of the Acquired

Assets free and clear of all liens, claims, interests, and encumbrances; (ii) authorizing and

approving the assumption and assignment of certain executory contracts and unexpired leases of

nonresidential real property of the Debtors in connection therewith; and (iii) granting related

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), CGI Joliet LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), Raceway Central Wheaton LLC (2161), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

² Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Purchase Agreement (as hereinafter defined) or, if not defined in the Purchase Agreement, the meanings ascribed to such terms in the Sale Motion.

relief; and the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") having entered its prior order, dated June 2, 2017 [Case No. 17-10993 (LSS) ECF No. 338] (the "**Bidding Procedures Order**"), approving bidding procedures to govern the sale and auction of the Acquired Assets (the "**Bidding Procedures**") and granting certain related relief; and Indiana Grocery Group, LLC (the "**Buyer**") having submitted the highest or best bid for the Acquired Assets, as reflected in that certain Purchase Agreement, dated as of July 14, 2017 by and among Strack and Van Til Super Market, Inc., SVT, LLC, Raceway Central, LLC, Currency Express, Inc., as Sellers, and Indiana Grocery Group, LLC, as Buyer (as may be amended pursuant to the terms thereof and this Sale Order, the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**, pursuant to which the Debtors have agreed, among other things, to sell the Acquired Assets to the Buyer, including the Transferred Contracts that will be assumed and assigned to Buyer, on the terms and conditions set forth in the Purchase Agreement (collectively, the "**Sale Transaction**"); and the Court having conducted a hearing on the Sale Motion (the "**Sale Hearing**") on July 18, 2017, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (a) the Sale Motion and the exhibits thereto; (b) the Purchase Agreement; (c) the Bidding Procedures Order; and (d) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion, the Purchase Agreement, the Bidding Procedures Order, the Auction and the proposed form of this Sale Order (the "**Proposed Sale Order**") having been provided in accordance with the Bidding Procedures Order; and all objections to the Sale Motion with respect to the relief granted by this Sale Order having been withdrawn, resolved, or overruled as provided in this Sale Order; and it appearing that the relief requested in the Sale Motion is in the

best interests of the Debtors, their estates and creditors and all parties in interest in these chapter

11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due

deliberation thereon; and good cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute

the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.  The

Court's findings also shall include any oral findings of fact and conclusions of law made by the

Court during or at the conclusion of the Sale Hearing.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction to decide the Sale Motion,

and jurisdiction over the Sale Transaction and the property of the Debtors' estates, including the

Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334  This matter is a core proceeding

pursuant to 28 U. S.C. § 157.  Venue of these chapter 11 cases and the Sale Motion in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    **Statutory and Rule Predicates**.  The statutory and other legal predicates for the

relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and

Bankruptcy Rules 2002, 4001, 6004, 6006, 9007, and 9014.

D.    **Notice and Opportunity to Object**.  As evidenced by the certificates of service

filed with the Court, due, proper, timely, adequate, and sufficient notice of, and a fair and

reasonable opportunity to object to and to be heard with respect to the Sale Motion, the Bidding

Procedures, the Auction, the Sale Hearing, the Sale Transaction, the sale of the Acquired Assets

free and clear of any Interests or Claims (as hereinafter defined), the Proposed Sale Order, and

the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Buyer pursuant to this Sale Order, has been provided by the Debtors, as required by sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bidding Procedures Order to all Persons entitled to such notice, including, but not limited to, the following: (i) all counterparties to the Transferred Contracts (the "**Counterparties**" and, each, a "**Counterparty**"); (ii) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "**Creditors' Committee**"); (iii) counsel to the Buyer; (iv) all other Sale Notice Parties (as defined in the Bidding Procedures); and (v) all other persons and entities as directed by the Bankruptcy Court. Such notice was good, sufficient, and appropriate under the circumstances, and complied in all respects with the Bidding Procedures Order.  No other or further notice of the foregoing is required.  With respect to Persons in interest whose identities could not be reasonably ascertained by the Debtors, publication of the Sale Notice in the national edition of *USA Today* and in the *Chicago Tribune* on June 8, 2017 (*see* Affidavit of Publication [Case No. 17-10993 (LSS) ECF No. 380]) was sufficient and reasonably calculated to notice such Persons under the circumstances.

E.    **Disclosures**.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, and related notices and documents filed with the Court concerning the Purchase Agreement, the Bidding Procedures Order, the hearing to consider approval of the Sale Motion, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

F.    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rule of Civil Procedure, as

made applicable by Bankruptcy Rule 7054, the Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

G.   **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion, the Purchase Agreement, and the Sale Transaction and entering into the Purchase Agreement and related Bill of Sale and Assignment and Assumption Agreement and any ancillary agreements thereto, including, without limitation, the Transition Services Agreement (collectively, the "**Related Agreements**"). The Debtors' entry into and performance under the Purchase Agreement and Related Agreements (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders; and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (a) the Purchase Agreement constitutes the highest and best offer received for the Acquired Assets; (b) the Purchase Agreement presents the best opportunity to maximize the value of the Acquired Assets on a going-concern basis and avoid decline and devaluation of the Acquired Assets; (c) unless the Sale Transaction and all of the other transactions contemplated by the Purchase Agreement are concluded expeditiously, as provided for pursuant to the Purchase Agreement, recoveries to the Debtors' creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through the sale of the Acquired Assets pursuant to the

Purchase Agreement and (e) the Sale Transaction will ensure the employment of approximately 2,000 employees of the Debtors.

H.    **Compliance with Bidding Procedures**.    The Bidding Procedures were substantively and procedurally fair to all parties.  The Debtors, the Buyer, and their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects.

I.    **Successful Bidder**.  The Debtors determined, in accordance with their business judgment and in consultation with the Consultation Parties (as defined in the Bidding Procedures) that the Purchase Agreement was (a) a Qualified Bid (as defined in the Bidding Procedures) and (b) the highest and best bid for the Acquired Assets at the Auction.  As a result, the Debtors declared Buyer the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in a Notice of Successful Bidder for the Stalking Horse Assets [ECF No. 327] filed with this Court and served on the Sale Notice Parties (as defined in the Bidding Procedures) in accordance with the terms of the Bidding Procedures Order.

J.    **Highest or Best Value**.  The Debtors and their advisors, including Peter J. Solomon Company, engaged in a robust and extensive marketing and sale process over a period of over seven (7) months, both prior to the Commencement Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures.  The Debtors conducted a fair and open sale process.  The sale process, the Bidding Procedures, and the Auction were non-collusive, duly noticed and provided a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Acquired Assets.  The process conducted by the Debtors pursuant to the Bidding Procedures resulted in the highest or best

value for the Acquired Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

K.     **Fair Consideration**.   The consideration to be paid by the Buyer under the Purchase Agreement (i) constitutes fair and reasonable consideration for the Acquired Assets; (ii) is the highest and best offer for the Acquired Assets; (iii) will provide a greater recovery for the Debtors' estates and creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other laws of the United States, any state, territory, or any other applicable jurisdiction with laws substantially similar to the foregoing.

L.     **No Successor or Other Derivative Liability**.   By consummating the Sale Transaction pursuant to the Purchase Agreement (including operating at certain Stores under the Debtors' trade names), Buyer is not a mere continuation of any Seller or any other Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between Buyer and any Debtor.  Buyer is not holding itself out as a continuation of any Debtor. Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtors.  Neither Buyer nor any of its successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate, including any obligation under any collective bargaining agreement or labor practice agreement, except as expressly provided in the Purchase Agreement.  The sale and transfer of the Acquired Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer of the Transferred Contracts, will not subject the Buyer to any liability

(including any successor liability) with respect to the operation of the Debtors' business prior to the Closing or by reason of such transfer, except that, upon Closing, the Buyer shall remain liable for the applicable Assumed Liabilities.

M.     **No Sub Rosa Plan**.  The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  The Sale Transaction does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities.

N.     **Good Faith; No Collusion**.  The Debtors, the Buyer, and their respective counsel and advisors have negotiated, proposed and entered into the Purchase Agreement, Related Agreements, and each of the transactions contemplated therein in good faith, without collusion and from arm's-length bargaining positions.  The Buyer is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Buyer has proceeded in good faith in all respects.  Specifically, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions of the Bidding Procedures Order; (iii) the Buyer's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; (iv) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (v) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the

Debtors in connection with the Sale Transaction have been disclosed and are appropriate. The sale price in respect of the Acquired Assets was not controlled by any agreement among potential bidders, and neither the Debtors nor the Buyer have engaged in collusion or any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the laws of the United States, any state, territory, possession, or the District of Columbia. Except as specified in the Declaration of Stephen D. Hurst (the "**Buyer Declaration**"), the Buyer is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Buyer and the Debtors. Except as specified in the Purchase Agreement, Buyer does not commit to offer employment to any of the Debtors' senior executives.

      O.    **Assumption and Assignment Notice**. As evidenced by the certificates of service filed with the Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Assumption and Assignment Notice and Notice of Auction Results, which provided notice of the Debtors' intent to assume and assign the Transferred Contracts and of the related proposed Cure Costs upon each Counterparty to the Transferred Contracts. The service of the Assumption and Assignment Notice and Notice of Auction Results was good, sufficient, and appropriate under the circumstances, and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Transferred Contracts. All Counterparties have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Assumption and Assignment Notice and to the assumption and assignment of the Transferred Contracts to the Buyer. No defaults exist in the

Debtors' performance under the Transferred Contracts as of the date of this Sale Order other than the failure to pay the Cure Costs or defaults that are not required to be cured.

P.    **Free and Clear Sale**. The Sellers may sell the Acquired Assets free and clear of all Interests or Claims (as hereinafter defined) against any Seller, its estate, or any of the Acquired Assets (unless otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Each of (i) PNC Bank, National Association ("**PNC**"), as administrative agent for itself and other lenders under that certain (a) Revolving Credit Agreement, dated as of June 15, 2011, and (b) Debtor-In-Possession Credit Agreement, dated as of May 19, 2017; and (ii) Bank of the West, as administrative agent for itself and other lenders under that certain Term Loan Agreement, dated as of April 23, 2013 (each, a "**Secured Lender**"), has consented to the sale of the Acquired Assets to the Buyer pursuant to the Purchase Agreement free and clear of any Interests or Claims of each Secured Lender against the Acquired Assets; provided that payment of the Purchase Price (as defined in the Purchase Agreement) is deposited by wire transfer into the master concentration account held by Central Grocers, Inc., ending in 9318 at PNC (the "**Concentration Account**") to be applied to the Obligations (as defined in the final order of the Delaware Bankruptcy Court approving the Debtors' DIP Financing [Case No. 17-10993 (LSS) ECF No. 368] (the "**Final DIP Order**")) in accordance with the terms of the order approving the Debtors' DIP Financing on an interim basis [Case No. 17-10993 (LSS) ECF No. 190] (together with the Final DIP Order, the "**DIP Orders**"); provided further that the Purchase Price is without any setoff or deduction of any kind other than as set forth in the Purchase Agreement and; provided further that nothing contained herein shall constitute a finding or determination regarding the allocation of the Purchase Price to

any particular assets of the Debtors, and all parties' rights with respect to the allocation of the proceeds of the Acquired Assets are hereby reserved. Any other holders of Interests or Claims that have an interest in the Acquired Assets have either consented to the sale of the Acquired Assets to the Buyer or could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest or Claim pursuant to section 363(f)(5), or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests or Claims constituting interests in the Acquired Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which such holders have an interest, in the same order of priority, and with the same validity, force, and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.

Q.    **Buyer's Reliance on Free and Clear Sale**.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets were not free and clear of all Interests or Claims, or if the Buyer would, or in the future could, be liable for any such Interests or Claims, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests or Claims would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Debtors' estates, with less certainty than provided under the Sale Transaction. The total consideration to be provided under the Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired

{6880218-}
DM3\4706083.1
WEIL:\96209075\6\76248.0004

Assets free and clear of all Interests or Claims (including, without limitation, any potential derivative, vicarious, transferee, or successor liability Interests or Claims).

R.    **Withdrawal Liability Agreement**.  Notwithstanding any provision of this Sale Order to the contrary, Buyer has agreed with the United Food and Commercial Workers Unions and Employers Midwest Pension Fund, the United Food and Commercial Workers International Union-Industry Pension Fund, the Chicago Area International Brotherhood of Teamsters Pension Fund and the Local 703, International Brotherhood of Teamsters Grocery and Food Employees' Pension Fund (collectively, the "**Funds**") to compromise any successor or other liability that may exist on the part of Buyer for the Seller's withdrawal liabilities under the Multiemployer Pension Plan Amendments Act or otherwise (the "**Withdrawal Liability**").  This agreement is memorialized in a certain agreement, dated as of July 17, 2017, by and among the Buyer and the Funds hereto (the "**Withdrawal Liability Agreement**").  The Withdrawal Liability Agreement represents the entirety of any obligation that may be imposed upon the Buyer for any successor or other liability for such Withdrawal Liability, and all liabilities to the Funds that may exist on behalf of the Buyer are otherwise encompassed and resolved in accordance with the terms and conditions of the Withdrawal Liability Agreement and Paragraphs 23 and 24 hereof.

S.    **Assumption and Assignment of Transferred Contracts**.  The assumption and assignment of the Transferred Contracts[3] are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Transferred Contracts (i) are necessary to sell the Acquired Assets to the Buyer, (ii) allow the

---

[3] For the avoidance of doubt, "Transferred Contracts" as used in this Sale Order shall include any Designation Rights Contracts that are subsequently designated Transferred Contracts pursuant to the Purchase Agreement and the terms of this Sale Order.

Debtors to sell their businesses to the Buyer as a going concern, (iii) limit the losses suffered by Counterparties, and (iv) maximize the recoveries to other creditors of the Debtors by avoiding claims against the Debtors' estates that would arise from the Debtors' rejection of the Transferred Contracts. Any Counterparty to any Transferred Contract that has not actually filed with the Court an objection to such assumption or to such assignment as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to such assumption and assignment.

T.    **Cure Notices**.  The Debtors filed the Notice of Assumption and Assignment [Case No. 17-10993 (LSS) ECF No. 355] and a Supplemental Notice of Assumption and Assignment [ECF No. 258] (the "**Cure Notices**") pursuant to which the Debtors identified the dollar amount, if any, that the Debtors assert is necessary to be paid to cure all defaults, if any, under their executory contracts and unexpired leases based on the Debtors' books and records (the "**Asserted Cure Amount**").   Counterparties to the Debtors' executory contracts and unexpired leases were required to file objections (each, a "**Cure Objection**"), if any, to the Asserted Cure Amount by no later than the dates specified in the applicable Cure Notice.  The Cure Notices provided that in the absence of timely filed Cure Objection, the cure costs set forth in the Cure Notices (each, a "**Cure Cost**" and, collectively, the "**Cure Costs**") would be controlling and fixed, notwithstanding anything to the contrary in any Transferred Contract, or any other document, and the Counterparty to any Transferred Contract shall be deemed to have consented to the Cure Costs set forth in the applicable Cure Notice.

U.    **Adequate Assurance of Future Performance**.  Counterparties to Transferred Contracts were provided with the Notice of Successful Bidder and provided Adequate Assurance

for the Buyer (*see* Affidavit of Service [ECF No. 349]) and were required to file any objections

to Buyer's ability to provide adequate assurance of future performance as contemplated under

sections 365(b)(l)(C), 365(b)(3) (to the extent applicable) and 365(f)(1) of the Bankruptcy Code

("**Adequate Assurance Objections**"), by no later than July 17, 2017 at 12:00 p.m. (prevailing

Central Time). Counterparties to Transferred Contracts that failed to timely file an Adequate

Assurance Objection are forever barred from objecting to the assumption and assignment of

Transferred Contracts on the grounds of a failure to provide adequate assurance of future

performance. Based on evidence adduced at the hearing and based on the record in these chapter

11 cases, to the extent necessary, the Debtors have satisfied the requirements of section 365 of

the Bankruptcy Code, including sections 365(b)(l)(A), 365(b)(l)(B), 365(b)(l)(C), 365(b)(3) (to

the extent applicable) and 365(f) of the Bankruptcy Code, in connection with the sale and

assumption and assignment of the Transferred Contracts to the extent provided under the

Purchase Agreement and: (i) Sellers will cure, in accordance with the terms set forth in this Sale

Order and the Purchase Agreement, any default existing prior to the date of the assumption the

applicable Transferred Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy

Code; (ii) Sellers have provided compensation or adequate assurance of compensation to any

party for any actual pecuniary loss to such party resulting from a default prior to the date hereof

under any of the Transferred Contracts, within the meaning of section 365(b)(l)(B) of the

Bankruptcy Code; (iii) Buyer has provided adequate assurance of future performance of and

under the Transferred Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the

extent applicable) and 365(f)(2) of the Bankruptcy Code based on the Buyer Declaration and the

other evidence adduced at the Sale Hearing. With respect to each of the Transferred Contracts,

the Debtors have met all requirements under section 365(b) of the Bankruptcy Code.

Accordingly, the Transferred Contracts may be assumed by the Debtors and assigned to the Buyer as provided under the Purchase Agreement. The assumption and assignment of each Transferred Contract is approved notwithstanding any provision in such Transferred Contract or other restrictions prohibiting its assignment or transfer.

V.     **Validity of the Transfer**. As of the Closing and payment of the Purchase Price, the transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests or Claims. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction. The Debtors: (i) have full corporate or limited liability company (as applicable) power and authority to execute the Purchase Agreement and the Related Agreements and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors; (ii) have all of the corporate or limited liability company (as applicable) power and authority necessary to consummate the transactions contemplated by the Purchase Agreement and Related Agreements; and (iii) upon entry of this Sale Order, other than any consents identified in the Purchase Agreement (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Sale Transaction.

W.     **Acquired Assets Are Property of the Estates**. The Acquired Assets constitute property of, and good title is vested in, the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owners of the Acquired Assets

with all right, title, and interest to transfer and convey the Acquired Assets to the Buyer, and no other Person has any ownership right, title, or interests therein.

      X.    **Valid and Binding Contract**.  The Purchase Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms.  The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  Other than claims arising under the Purchase Agreement, the Debtors agree and acknowledge that they have no claims against the Buyer.

      Y.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

      Z.    **Single Integrated Transaction**.  The Purchase Agreement and Sale Transaction must be approved and the Closing must occur to preserve the value of the Debtors' assets.  Entry of this Sale Order approving the Purchase Agreement and all provisions thereof is a necessary condition precedent to Buyer consummating the Sale Transaction.  The transactions

DM3:4706083.1
WEIL:\96209075\6\76248.0004

contemplated by the Purchase Agreement, including the sale and transfer of the Properties, at the Closing Date to Buyer, are inextricably linked technically and economically and collectively constitute a single, integrated transaction.

AA.    **Legal and Factual Bases**.    The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**

1.    **Motion is Granted**.    The Sale Motion and the relief requested therein (to the extent not previously granted by this Court pursuant to the Bidding Procedures Order or otherwise) is granted and approved as set forth herein.

2.    **Objections Overruled**.    All objections (except for Cure Objections, if any, that have been adjourned as identified and reflected on the Objection Status Chart attached as Exhibit A to the Debtors' Supplemental Brief in Support of the Sale [ECF No. 337]), if any, to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

3.    **Notice**.    Notice of the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale Transaction, the sale of the Acquired Assets free and clear of any Interests or Claims, the assumption and assignment of the Transferred Contracts, and the Proposed Sale Order was adequate, reasonable, appropriate, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

DM3\4706083.1
WEIL:\96209075\6\76248.0004

4.    **Fair Purchase Price**.  The consideration provided by Buyer pursuant to the Purchase Agreement: (i) is fair and adequate; (ii) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws); and (iii) will provide an equal or greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

5.    **Payment of Proceeds**. Payment of the Purchase Price shall be deposited by wire transfer into the Concentration Account to be applied to the Obligations in accordance with the terms of the DIP Orders and subject to the rights of parties in interest thereunder; provided that the Purchase Price is without any setoff or deduction of any kind other than as set forth in the Purchase Agreement.

6.    **Payment of Stalking Horse Termination Payment**.   The Purchase Price includes the Termination Payment (as defined in the Bidding Procedures Order) payable from the proceeds of the sale to the Stalking Horse Bidder (as defined in the Bidding Procedures Order) equal to $3,000,000 plus reimbursement of up to $500,000 for reasonable and documented costs and expenses incurred by the Stalking Horse Bidder in connection with the Stalking Horse Agreement and participation in the Auction and the Debtors' sale process.[4]  The Debtors are authorized to pay such amount to the Stalking Horse Bidder from the sales proceeds.

---

[4] The Bidding Procedures Order included a typographical error in paragraph 5 by referring to the Termination Payment as being equal to 3% of the "Base Amount" (as defined in the Stalking Horse Agreement) plus up to $500,000 in expense reimbursement.  The Stalking Horse Agreement provided that the Termination Payment was equal to 3% of the "Base Purchase Price" which results in a payment equal to $3,000,000 plus expense reimbursement of up $500,000.  The parties, including the Buyer, have agreed that the Termination Payment should be properly calculated in accordance with the terms of the Stalking Horse Agreement.

7.     **Approval of the Purchase Agreement**.  The Purchase Agreement, all transactions contemplated therein (including, but not limited to, all Related Agreements contemplated thereby) and all of the terms and conditions thereof are hereby approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Purchase Agreement and all Related Agreements as and when due thereunder without further order of the Court.  The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement (including, but not limited to, all Related Agreements contemplated thereby) be authorized and approved in its entirety.

### Sale and Transfer of Acquired Assets

8.     Pursuant to Sections 105(a), 363(b), and 365 of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized and empowered, without further order of the Court, to take any and all actions necessary or appropriate to: (i) consummate and close the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (ii) transfer and assign all right, title, and interest in and to all Acquired Assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Purchase Agreement; and (iii) execute and deliver, perform under, consummate, and implement the Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale Transaction, including any Related Agreements, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents. Subject to Paragraph 5 of this Sale Order, the Acquired

Assets shall be transferred to the Buyer, and upon the Closing, such transfer shall (a) be valid, legal, binding, and effective; and (b) vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets. Neither Buyer nor Sellers shall have any obligation to proceed with Closing under the Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived. The Debtors shall not have any right to set-off or recoup amounts due to Buyer pursuant to the Purchase Agreement by any amounts which may be owed by Buyer to the Debtors pursuant to any other agreement or order.

9.      All Persons that are currently in possession of any or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer at Closing. To the extent required by the Purchase Agreement, the Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date may be, in possession of any or all of the Acquired Assets will surrender possession of such Acquired Assets to either (i) the Debtors before the Closing Date or (ii) the Buyer on or after the Closing Date.

10.      All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Purchase Agreement and this Sale Order; provided that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

11.      Each and every any federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

12.    To the maximum extent available under applicable law, and to the extent provided for under the Purchase Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, application, and governmental authorization or approval of the Debtors with respect to the Acquired Assets for a reasonable period of time pending Buyer's obtaining of any licenses, permits, registrations, applications and/or governmental authorizations or approvals in its own name. To the maximum extent available under applicable law, and to the extent provided for under the Purchase Agreement, all such licenses, permits, registrations, applications, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date and shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction.

13.    On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Acquired Assets under the Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in and to all of the Acquired Assets to the Buyer.

14.    The sale of the Avoidance Actions and the Causes of Action pursuant to the Purchase Agreement is hereby approved. To the extent any Avoidance Action or Cause of

Action is not assignable to Buyer or any of its designees, assignees, and/or successors, the

Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of the Debtors and their

estates, shall be prohibited from bringing any such Avoidance Actions or Causes of Action

against Buyer, its designees, assignees, and/or successors.

**<u>Transfer of Assets Free and Clear</u>**

15.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy

Code, subject to Paragraph 5 of this Sale Order, upon the Closing Date and pursuant to and

except as otherwise set forth in the Purchase Agreement and the Withdrawal Liability

Agreement, the Acquired Assets shall be transferred to Buyer free and clear of all encumbrances,

claims (as defined in section 101(5) of the Bankruptcy Code), interests, and liens, including the

Excluded Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan

agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of

trust, security interests, possessory interests (including those under section 365(h) of the

Bankruptcy Code), other interests, conditional sale or other title retention agreements, pledges,

and other liens (including mechanics', materialman's, and other consensual and non-consensual

liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets,

contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity,

exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign

or domestic governmental entity, or charges of any kind or nature, if any, including any

restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of

ownership, debts arising in any way in connection with any agreements, acts, or failures to act,

including any pension liabilities, retiree medical benefit liabilities, liabilities related to the

Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), liabilities related to

the Internal Revenue Code, or any other liability relating to Debtors' current and former

employees, including any Withdrawal Liabilities (under any multiemployer pension plans or otherwise) or liabilities under any collective bargaining agreement or labor practice agreement, retiree healthcare or life insurance claims or claims for Taxes of or against the Debtors (except as otherwise provided for in the Purchase Agreement), any claims under, or trusts or liens created by PACA[5] or PASA,[6] and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the Commencement Date, of the Debtors or any of the Debtors' predecessors or Affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Liens) (collectively, the "**Interests or Claims**"), with all such Interests or Claims to attach to the cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, "Interests or Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to (in each case, other than Assumed

---

[5] "PACA" means the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a, *et seq.*) or any similar state laws.

[6] "PASA" means the Packers and Stockyards Act (7 U.S.C. §§ 181 *et seq.*) or any similar state laws.

Liabilities and Permitted Liens) (i) any labor agreements or any of the employee benefit plans, including any Interests or Claims related to unpaid contributions or current or potential withdrawal or termination liability; (ii) any of the Debtors' collective bargaining agreements; (iii) the Worker Adjustment and Retraining Notification Act of 1988, as amended, or other comparable state or local law ("**WARN**"); (iv) any of the Debtors' current and former employees; (v) any of the following:

> (a)    any and all Claims arising through the Closing Date, if any, of any governmental unit for taxes (except as otherwise provided for in the Purchase Agreement);

> (b)    any Claim arising through the Closing Date relating to any executory contract or lease (whether of personal or real property, or otherwise) affecting or in any way related to the Acquired Assets, without limitation, Claims of the Debtors' vendors, suppliers and/or customers arising from Debtors' failure to perform its obligations to said parties whether such failure occurred prior to or on the Closing Date or whether such failure arose as a result of a Buyer's election or before the Closing Date not to accept and/or perform such vendors', suppliers' or customers' account and/or orders subsequent to the Closing Date;

> (c)    any Claim arising through the Closing Date relating to work performed by any contractor or materialman that would give rise to a mechanic's lien, or similar Claim, against any of the Acquired Assets;

> (d)    any Claim arising through the Closing Date for attorney's fees or other costs or expenses claimed by lessors, lessees, licensees or any other non-Debtors parties to executory contracts or any lease;

> (e)    Any Claim arising through the Closing Date based on acts or omissions of the Debtors arising in tort, contract, including collective bargaining agreements, or otherwise, including, without limitation, Claims for successor liability;

> (f)    Any Claim arising through the Closing Date relating to liability arising under federal, state or local revenue, tax, products liability, labor, employment, including without limitation the ADA, FMLA, USERRA, WARN Act, Title 7, FLSA, and 42 U.S.C. § 1981, worker compensation or environmental laws, rules or regulations or with respect to Debtors' liability as distributor or a retailer;

> (g)    Aany claim by any person or entity relating to any health or welfare benefit for the benefit of any current or former employee of Debtors or their dependents or beneficiaries; and

(h)    any claim by an employee of the Debtors relating to their termination by the Debtors as a consequence of this Sale Order or the transactions contemplated by the APA.

Notwithstanding any provision of this Sale Order to the contrary, the Acquired Assets are not being sold free and clear of any lien securing the Real Property Taxes (as defined in the Purchase Agreement) and Personal Property Taxes (as defined in the Purchase Agreement) incurred prior to Closing that comprise the Unpaid Liability Amount (as defined in the Purchase Agreement). For the avoidance of doubt, any lien that secures the Real Property Taxes and Personal Property Taxes incurred prior to Closing that comprise the Unpaid Tax Liability Amount is unimpaired by this Sale Order and shall remain in full force and effect with respect to the corresponding Acquired Assets until paid by the Buyer, and no lien shall attach to the sale proceeds with respect thereto.

16.    Those holders of Interests or Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests or Claims who did object that have an interest in the Acquired Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest or Claim pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Interests or Claims that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.  Nothing herein shall be deemed or construed as a ruling or determination by this Court that the Assumed Liabilities encumber the Acquired Assets.

17.    Except to the extent included in Assumed Liabilities or Permitted Liens, or to enforce the Purchase Agreement, all persons and entities (and their respective successors and assigns), including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, governmental units, lenders, parties to executory contracts and unexpired leases, contract Counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, pension plans, labor unions, trade creditors, and any other creditors holding Interests or Claims against the Debtors or the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the transfer of the Acquired Assets to Buyer, or the Debtors' businesses prior to the Closing Date,  hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims  relating to the Acquired Assets or the transfer of the Acquired Assets against Buyer or its successors, designees, assigns, or property, or the Acquired Assets transferred to Buyer, including, without limitation, taking any of the following actions with respect to or based on any Interest or Claim relating to the Acquired Assets or the transfer of the Acquired Assets to Buyer (other than Assumed Liabilities) (i) commencing or continuing in any manner any action or other proceeding against Buyer or its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer or its successors or assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Interest or Claims against Buyer, its successors or assigns, assets or properties; (iv) asserting an Interest or Claims as a setoff, right

of subrogation or recoupment of any kind against any obligation due Buyer or its successors or assigns; (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; or (vi) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale Transaction. No such persons or entities shall assert or pursue against Buyer or its successors or assigns any such Interest or Claim. Except as otherwise provided for in the Purchase Agreement and the Withdrawal Liability Agreement, Buyer shall not be liable for any Interests or Claims, liabilities, costs, expenses, or requests for reimbursement relating to events that occurred after the Commencement Date but prior to the Closing Date, nor relating to liabilities or obligations that accrued prior to the Closing Date but did not become due and payable until after such Closing Date (including, without limitation, real estate taxes and any other taxes, common area maintenance, insurance, utilities, percentage rent, indemnification obligations, and other charges), with the Debtors retaining responsibility to pay or address all such Interests or Claims. The reconciliation of such amounts owed shall be calculated in accordance with the terms of the Purchase Agreement.

18.    This Sale Order (i) shall be effective as a determination that, as of the Closing, all Interests or Claims have been unconditionally released, discharged, and terminated as to the Buyer and the Acquired Assets, subject to Paragraph 5 of this Sale Order and the Withdrawal Liability Agreement, and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state,

federal, state, county, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Acquired Assets free and clear of all Interests or Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Acquired Assets recorded prior to the date of this Sale Order. A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, and other interests against the Acquired Assets recorded prior to the date of this Sale Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and Related Agreements.

19.     As of and after the Closing, (i) each of the Debtors' creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests or Claims in the Acquired Assets (if any) as such Interests or Claims may have been recorded or may otherwise exist; and (ii) any Acquired Asset that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the proceeds of the Sale Transaction in the same priority they currently enjoy with respect to the Acquired Assets.

20.     Following the Closing, no holder of any Interest or Claim shall interfere with the Buyer's title to or quiet use and enjoyment of the Acquired Assets based on or related to any such Interest or Claim or based on any actions the Debtors may take in these chapter 11 cases.

21.     Except as provided below concerning the Interests or Claims in the Acquired Assets held by PNC, as administrative agent for itself and the other Secured Lenders, if any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims in or against the Acquired Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Interests or Claims against or in the Acquired Assets (collectively, the "**Release Documents**") that the Person holds, then with regard to the Acquired Assets that are purchased by the Buyer pursuant to the Purchase Agreement and this Sale Order, (i) the Debtors are hereby authorized and directed to, and the Buyer is hereby authorized to, execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Acquired Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims against the Acquired Assets; provided that, neither the Debtors nor the Buyer is authorized to file any Release Documents with respect to the Interests or Claims held by PNC, as administrative agent for itself and the other Secured Lenders, in the Acquired Assets without first obtaining the express written consent of PNC and providing drafts of such Release Documents to PNC for its review and approval, which consent and approval shall be in PNC's sole discretion; provided further that, notwithstanding anything in this Sale Order or the Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

22.     The unions affected by the sale of the Acquired Assets have consented to such sale.  Pursuant to this Sale Order, the unions have waived their rights to assert against any of Buyer, the Debtors, the Debtors' estates, or any other party any claims or other rights arising under the successorship provisions of any labor law, labor agreement, collective bargaining agreement or similar agreement in relation to such sale, and no union shall have any such claims or other rights against Buyer, the Debtors, the Debtors' estates, or any other party arising under the successorship provisions of any collective bargaining agreement or similar agreement in relation to such sale.

### No Successor or Other Derivative Liability

23.     Buyer and its successors and assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be deemed or considered to (i) be a legal successor, or otherwise be deemed a successor to any of the Debtors or their estates; (ii) have, *de facto* or otherwise, merged with or into any of the Debtors or their estates; (iii) have a common identity with the Debtors; (iv) have a continuity of enterprise with the Debtors; or (v) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses, or operations, in each case, by any law or equity, and the Buyer has neither assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities. Except as expressly set forth in the Purchase Agreement and the Withdrawal Liability Agreement, the Buyer and its respective successors and assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, shall have no   (a) liability or

{6880218:}
DM3:4706083.1
WEIL\96209075\6\76248.0004

responsibility for any claim against the Debtors or against an insider of the Debtors; (b) liability or responsibility with respect to any Interests or Claims or Excluded Liability and shall not be required to satisfy the same in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (c) liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement; or (d) successor, transferee, or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any Taxes or other Governmental Authority fees, contributions, or surcharges, in each case, arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Acquired Assets prior to the Closing Date or arising based on actions of the Debtors or their Affiliates taken after the Closing Date.

24.    Without limiting the effect or scope of the foregoing, as of the Closing (except as expressly set forth in the Purchase Agreement and the Withdrawal Liability Agreement), the Buyer and its successors and assigns shall have no liability for any Interest or Claim, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature, or character whatsoever, by reason of any theory of law or equity, including, without limitation, Interests or Claims arising under (i) any employment or labor agreements,

{6880218;}
DM3\4706083.1
WEIL\96209075\6\76248.0004

including, without limitation, any Affected Labor Agreement or the termination thereof; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's Affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, the Employee Benefit Plans and any participation or other agreements related to the Employee Benefit Plans, or the termination of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; and (v) any employee, workers' compensation, occupational disease, or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA; (b) the Fair Labor Standards Act; (c) Title VII of the Civil Rights Act of 1964, as amended; (d) the Federal Rehabilitation Act of 1973; (d) the National Labor Relations Act; (e) WARN; (f) the Age Discrimination in Employment Act, as amended; (g) the Americans with Disabilities Act; (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; (i) the Multiemployer Pension Plan Amendments Act of 1980; (j) state and local discrimination laws; (k) state and local unemployment compensation laws or any other similar state and local laws; (l) state workers' compensation laws; (m) any other state, local, or federal employee benefit laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any of the Debtors or their predecessors; (n) any antitrust laws; (o) any product liability or similar laws, whether state, federal, or otherwise; (p) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (q) PACA or PASA; (r) any bulk sales or similar laws; (s) any federal, state, or local tax statutes,

regulations, or ordinances, including, without limitation, the Internal Revenue Code; and (t) any common law doctrine of de facto merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of or related to successor liability, in each case whether known or unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Acquired Assets, the Purchase Agreement or the Transferred Contracts except as otherwise set forth in this Sale Order or the Purchase Agreement.

## Assumption and Assignment of Transferred Contracts

25.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, Sellers' assumption and assignment to Buyer, and Buyer's assumption on the terms set forth in the Purchase Agreement of the Transferred Contracts (including, for the avoidance of doubt, any Designation Rights Contracts that are subsequently designated Transferred Contracts) is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

26.    Subject to and conditioned upon the occurrence of the Closing Date, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign the Transferred Contracts to the Buyer free and clear of all Interests or Claims, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to the Buyer as provided in the Purchase Agreement.

27.     Upon Closing, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and to the Transferred Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Transferred Contracts.   The assumption by the Debtors and assignment to the Buyer of a Transferred Contract shall not be, or result in, a default under any such Transferred Contract (including, for the avoidance of doubt, as a result of any exclusivity agreement with any banking or financial institutions located within the Stores or any conflicting agreements to which Buyer is a party as of the date hereof) or constitute a termination of any such Transferred Contract.

28.     Buyer has provided adequate assurance of future performance for the Transferred Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

29.     All Cure Costs shall be determined in accordance with the Bidding Procedures Order and paid in cash by the Debtors in accordance with the terms of the Purchase Agreement after the Closing.

30.     Payment of the Cure Costs by the Debtors shall (i) be in full satisfaction and cure of any and all defaults under the Transferred Contracts, whether monetary or non-monetary; and (ii) compensate Counterparties for any actual pecuniary loss resulting from such defaults.  Each Counterparty shall be  forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer, their respective Affiliates, successors, or assigns, or the property of any of them, any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Transferred Contracts, existing as of the date that such Transferred Contracts are assumed or arising by reason of the Closing.  Neither the Buyer nor any successor of the Buyer shall be

{6880218;}
DM3:4706083.1
WEIL:\96209075\6\76248.0004

responsible for or have and Interests or Claims or obligations arising out of any of the contracts, agreements, or understandings that are not Transferred Contracts after the Closing Date (except as specifically provided by the Purchase Agreement). Nothing in this Sale Order shall affect the rights of the Buyer, to the extent such rights are provided in the Purchase Agreement, to add or remove any Transferred Contracts to or from the list of Transferred Contracts set forth in Purchase Agreement in accordance with the terms thereof.

31.    The Cure Costs for the Transferred Contracts for which no timely Cure Objection was filed are hereby fixed at the amounts set forth on the Cure Notices, and Counterparties to such Transferred Contracts are forever bound by such Cure Costs. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, Sellers shall pay to the applicable Counterparty the Cure Costs relating to any Transferred Contracts for which no timely Cure Objection was filed on the Closing Date. Upon payment of such Cure Costs as provided for herein, the Counterparties to such Transferred Contracts are hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for cure.

32.    To the extent not resolved prior to entry of this Sale Order, the Debtors shall maintain a cash reserve for any timely Cure Objection (the "**Cure Cost Reserve**") filed with respect to a Transferred Contract equal to either (i) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Transferred Contract, or (ii) such other cash reserve amount as may be ordered by the Court, and the resolution of the Cure Objections for such Transferred Contracts shall be adjourned until the next omnibus hearing in these chapter 11 cases that is no later than thirty (30) days after the entry of this Sale Order (or such other date agreed to by the Debtors and the applicable contract counterparties). Upon resolution of the Cure Objection (whether by Court order or consent of the Seller and the

applicable Counterparty) (a) the cure costs for such Transferred Contract shall be fixed in accordance with this paragraph and shall constitute the "Cure Costs" for all purposes under this Sale Order; (b) pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, Seller shall pay to the applicable Counterparty the Cure Cost, as determined in accordance with this paragraph, within seven (7) business days after the Cure Objection is resolved; and (c) upon payment of such Cure Cost as provided for herein, the applicable Counterparty to such Transferred Contract is hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for Cure Costs.

33.    Pursuant to sections 365(f)(1) and (3), the Transferred Contracts shall be transferred to, and effect for the benefit of, the Buyer in accordance with their respective terms, including all obligations of the Buyer as the assignee of the Transferred Contracts, notwithstanding any provision in any Transferred Contract or under applicable law (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

34.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any defaults, cross-defaults, breach, claim, pecuniary loss, rent accelerations, escalations, rent increase, assignment fees, increases or any other fees charged to the Buyer or the Debtors existing as of the date of assumption of the Transferred Contracts or as a result of the assumption or assignment of the Transferred Contracts on the Closing Date. For the avoidance of doubt, and without limiting the generality of the foregoing, any provision in a Transferred Contract, any other document, or under applicable law that prohibits, restricts or otherwise impairs assignment of the Transferred Contracts or Buyer's ability to operate the

Stores is hereby void and of no force or effect, including any provision that (i) requires any or all

of the proceeds from the assignment of such Transferred Contract be paid to or shared with the

applicable Counterparty or distributed in a manner inconsistent with the terms of the Purchase

Agreement, the applicable Assignment and Assumption Agreement, or the intent of the Debtors

and Buyer with respect to the distribution of such proceeds; (ii) terminates any extension option

rights or any other rights of the Buyer under such Transferred Contract; (iii) cross-defaults to or

from any other lease or executory contract that is not a Transferred Contract; (iv) restricts the

Buyer's operation of the Stores with respect to radius, use, location, and exclusivity (provided

that this clause (iv) shall not apply to the extent that the applicable Transferred Contract is a

lease of real property in a shopping center and such restrictions are within the scope of Section

365(b)(3)); (v) contains operating covenants or "go-dark" provisions that would purport to

terminate or modify any Transferred Contract before assumption and assignment to the Buyer;

(vi) requires a Counterparty's consent prior to assignment of the Transferred Contract to the

Buyer; (vii) requires prior notice from the Buyer before changing the name or banner of a Store

previously operated by one of the Sellers; or (viii) restricts the Buyer's use or assignment of any

beer, wine, spirits, or liquor licenses or similar permits.

35.     Upon the Debtors' assignment of Transferred Contracts to the Buyer under the

provisions of this Sale Order, no default shall exist under any Transferred Contracts, and no

Counterparty to any Transferred Contracts shall be permitted to declare a default by any Debtor

or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial

condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred

Contract. Any provision in a Transferred Contract, other document, or under applicable law that

prohibits or conditions the assignment or sublease of such Transferred Contract (including,

without limitation, the granting of a lien therein) or allows the relevant Counterparty to

terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term

or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment

provision that is void and of no force or effect.   The failure of the Debtors or the Buyer to

enforce at any time one or more terms or conditions of any Transferred Contract shall not be a

waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every

term and condition of the Transferred Contract.   Any party having the right to consent to the

assumption or assignment of any Transferred Contracts that failed to object to such assumption

or assignment is deemed to have consented to such assumption and assignment as required by

section 365(c) of the Bankruptcy Code.

### **Designation Rights Contracts**

36.     During the period from the date of the Purchase Agreement until seven (7)

business days following the Closing Date (the "**Designation Rights Period**"), and subject to the

terms and conditions set forth in the Purchase Agreement, (i) each Designation Rights Contract

(as defined in the Purchase Agreement) shall be held by Sellers and shall not be rejected pursuant

to section 365 of the Bankruptcy Code in accordance with Section 2.12(a) of the Purchase

Agreement; (ii) Sellers shall not terminate, amend, supplement, modify or waive any rights under

any Designation Rights Contract or take any affirmative action not required by the terms thereof

without the prior written consent of Buyer; and (iii) the Debtors shall not seek to convert,

dismiss, or close these chapter 11 cases prior to the expiration of the Designation Rights Period.

37.     As soon as practicable, but in no event later than three (3) business days of

Sellers' receipt of a written request from Buyer to assume one or more Designation Rights

Contracts for which no Cure Objection has been filed, Sellers shall file a notice on the docket in

these chapter 11 cases (each, an "**Uncontested Assumption Notice**").   Upon filing an

Uncontested Assumption Notice, and without further order of the Court, each Designation Rights Contract listed in such Uncontested Assumption Notice (a) shall be treated as a Transferred Contract under this Sale Order, and (b) shall be assumed by the Sellers and assigned to Buyer. With respect to the Designation Rights Contracts listed on an Uncontested Assumption Notice, (i) the applicable Cure Cost for each Designation Rights Contract listed on such Uncontested Assumption Notice shall be fixed at the amount set forth in the Cure Notices, and the applicable Counterparty to such Designation Rights Contract shall be forever bound by such Cure Cost; (ii) pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, Sellers shall pay to the applicable Counterparty the Cure Cost relating to each Designation Rights Contract listed on such Uncontested Assumption Notice within five (5) business days after the filing of the Uncontested Assumption Notice on the Court's docket; and (iii) upon payment of such Cure Costs as provided for herein, the applicable Counterparty is hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for Cure Costs.

38.   As soon as practicable, but in no event later than three (3) business days of Sellers' receipt of a written request from Buyer to assume one or more Designation Rights Contracts listed for which a Cure Objection has been filed and not resolved by the parties, Sellers shall file a notice on the docket in these chapter 11 cases (each, a "**Contested Assumption Notice**"). To the extent not resolved prior to the filing of the applicable Contested Assumption Notice, the resolution of the Cure Objection for any Designation Rights Contract listed on such Contested Assumption Notice shall be determined at a hearing before the Court on a date to be scheduled; provided that the Debtors shall maintain a Cure Cost Reserve equal to either (i) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Designation Rights Contract, or (ii)  such other cash reserve

amount as may be ordered by the Court. Upon resolution of the Cure Objection (whether by Court order or consent of the Sellers and the applicable Counterparty) for each Designation Rights Contract listed on the applicable Contested Assumption Notice, such Designation Rights Contract (a) shall be treated as a Transferred Contract under this Sale Order, and (b) shall be assumed by the Sellers and assigned to Buyer. With respect to the Designation Rights Contracts listed on a Contested Assumption Notice, (1) the applicable Cure Cost for such Designation Rights Contract shall be fixed in accordance with this paragraph and shall constitute the "Cure Cost" for all purposes under this Sale Order, and the Counterparty to such Transferred Contract shall be forever bound by such Cure Cost; (2) pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, Sellers shall pay to the applicable Counterparty the Cure Cost, as determined in accordance with this paragraph, within five (5) business days after the Cure Objection is resolved; and (3) upon payment of such Cure Cost as provided for herein, the applicable Counterparty is hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for Cure Costs.

39.  **Statutory Mootness**. The transactions contemplated by the Purchase Agreement and Related Agreements are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Assets or the assignment of Transferred Contracts to the Buyer, free and clear of Interests or Claims, unless such authorization is duly stayed before the Closing Date pending such appeal. The Buyer is a good faith purchaser of the Acquired Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting

in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

40. **No Avoidance of Purchase Agreement**. Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or Related Agreements to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement, Related Agreements, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement, Related Agreements, or the Sale Transaction.

41. **Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062**. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Illinois, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction, and the Debtors and the Buyer may close the Sale Transaction as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

42. **Binding Effect of Sale Order**. This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests or Claims (whether known or unknown) against any Debtor, any holders of Interests or Claims against or on all or any portion of the Acquired Assets, all counterparties

to any executory contract or unexpired lease of the Debtors (including any collective bargaining agreement or labor agreement), Buyer and all successors and assigns of Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of these chapter 11 cases.    The terms and provisions of the Purchase Agreement and this Sale Order shall inure to the benefit of the Debtors, their estates, and their creditors, Buyer, and its respective Affiliates, successors and assigns, and any other affected third parties, including all persons asserting any Interests or Claims in the Acquired Assets to be sold to Buyer pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

43.    **Conflicts; Precedence**.    In the event that there is a direct conflict between the terms of this Sale Order, the Purchase Agreement, or any documents executed in connection therewith, the provisions contained in this Sale Order, the Purchase Agreement, any documents executed in connection therewith shall govern, in that order.    Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, any order confirming such plan, or in any other order of any type or kind entered in these chapter 11 cases (including, without limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

44.    **Modification of Purchase Agreement**.    The Purchase Agreement, the Related Agreements, and any other documents or other instruments executed in connection therewith,

may be modified, amended, or supplemented by the parties thereto, in a writing signed each

party, and in accordance with the terms thereof, without further order of the Court; provided that

(i) any such modification, amendment, or supplement shall not materially change the terms of the

Purchase Agreement, Related Agreements, or any documents or other instruments executed in

connection therewith; (ii) written notice of any non-material modification or amendment shall be

provided to counsel for the Secured Lenders and the Creditors' Committee within two (2)

business days after entering into such amendment or modification; (iii) advanced written notice

of any material modification or amendment shall be provided to counsel for the Secured Lenders

and the Creditors' Committee, which parties may object to such modification or amendment, in

writing, within three (3) business days (unless such parties consent to a shorter notice period)

from the date of the transmittal of such notice of amendment or modification.

45.    **Bulk Sales; Taxes**.  No bulk sales law, bulk transfer law, or similar law of any

state or other jurisdiction (including those relating to Taxes other than Transfer Taxes) shall

apply in any way to the transactions contemplated by the Purchase Agreement, the Related

Agreements, the Sale Motion, or this Sale Order.  Except as otherwise expressly provided in the

Purchase Agreement, all obligations of the Debtors relating to Taxes, whether arising under any

law, by the Purchase Agreement, or otherwise shall be the obligation of and fulfilled and paid by

the Debtors.

46.    **Cooperation**.  The Sellers and all Counterparties to the Transferred Contracts

shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Buyer,

and shall not charge Buyer for, any instruments, applications, consents, or other documents

which may be required or requested by any public or quasi-public authority or other party or

entity to effectuate the applicable transfers in connection with the Sale Transaction.  From time

to time, as and when requested by any party, each party to the Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Buyer its right, title and interest in and to the Acquired Assets.

47.     **Stay Relief**.  The automatic stay pursuant to section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to (i) allow Buyer to deliver any notice provided for in the Purchase Agreement and any Related Agreements and (ii) allow Buyer to take any and all actions permitted under the Purchase Agreement and any Related Agreements in accordance with the terms and conditions thereof.  Except to the extent specifically provided for in this Sale Order, nothing in this Sale Order shall modify, lift, or in any way effect the automatic stay pursuant to section 362 with respect to the Debtors, their estates or their property.

48.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order, the Purchase Agreement, Related Agreements, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order, the Purchase Agreement, and Related Agreements, and to enforce the injunctions set forth herein.

49.     **Adjournment of Cigna Entities' Objection**.  Notwithstanding anything to the contrary in this Order, or in any Order or Notice filed in connection with the sale of the Acquired Assets to IGG, the *Objection of Cigna Entities to Notice of Cure Costs and Potential Assumption*

*and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale* [Case No. 17-10993 (LSS) ECF No. 384], and the *Supplemental Objection of Cigna Entities to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale* [ECF No. 283] (jointly "**Cigna Objections**") are hereby adjourned to be scheduled by the Debtors on sufficient notice to the Cigna Entities, or such other date as the parties may agree, and all parties' rights with respect to the Cigna Objections are expressly preserved, and none of the Cigna Contracts (as defined in the Cigna Objections) shall be deemed assumed or assigned by this Order.

50.   **Controlled Group Reservation of Rights.**   Nothing herein or in the Purchase Agreement shall affect, impair or limit the claims of any pension plan against the Debtors or any member of the control group or the Debtors' or such control group member's rights to dispute such claims.

Dated: JUL 18 2017
　　　　Chicago, Illinois

　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　THE HONORABLE PAMELA S. HOLLIS
　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY
　　　　　　　　　　　　　　　　　　　　JUDGE