**UNITED STATES BANKRUPTCY COURT**
**NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| CENTRAL GROCERS, INC., *et al.*, | ) | Case No. 17-13886 (PSH) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | |

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT
AMONG SELLER AND BUYER, (II) AUTHORIZING THE SALE OF
CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
LEASES IN CONNECTION THEREWITH AND, (IV) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 204] (the "**Sale Motion**")[2] of Central Grocers, Inc. and its

debtor affiliates, including Strack and Van Til Super Market, Inc., as debtors and debtors in

possession (collectively, the "**Debtors**"), seeking, among other things, the entry of an order (the

"**Sale Order**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the

"**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing and approving the sale of the

Acquired Assets  free and clear of all liens, claims, interests, and encumbrances; (ii) authorizing

and approving the assumption and assignment of certain executory contracts and unexpired

leases of nonresidential real property of the Debtors in connection therewith; and (iii) granting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), Raceway Central Wheaton LLC (2161), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Purchase Agreement (as hereinafter defined) or, if not defined in the Purchase Agreement, the meanings ascribed to such terms in the Sale Motion.

related relief; and the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") having entered its prior order, dated June 2, 2017 [Case No. 17-10993 (LSS) ECF No. 338] (the "**Bidding Procedures Order**"), (a) approving bidding procedures to govern the sale and auction of the Acquired Assets (the "**Bidding Procedures**"), (b) approving procedures for the assumption and assignment of executory contracts and unexpired leases) (the "**Assumption and Assignment Procedures**"), and (c) granting certain related relief; and Supervalu Holdings, Inc. or any one or more of its Affiliates designated as a purchaser of the Acquired Assets at Closing in accordance with the Purchase Agreement (the "**Buyer**") having submitted the highest or best bid for the Acquired Assets, as reflected in that certain Purchase Agreement, dated as of July 25, 2017, by and between CGI Joliet, LLC and Central Grocers, Inc., collectively as Seller, and the Buyer (as may be amended pursuant to the terms thereof and this Sale Order, the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**, pursuant to which the Debtors have agreed, among other things, to sell the Acquired Assets to the Buyer, including the Transferred Contracts (as defined in the Purchase Agreement) that will be assumed and assigned to Buyer, on the terms and conditions set forth in the Purchase Agreement and this Sale Order (collectively, the "**Sale Transaction**"); and the Court having conducted a hearing on the Sale Motion (the "**Sale Hearing**") on July 25, 2017, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (1) the Sale Motion and the exhibits thereto; (2) the Purchase Agreement; (3) the Bidding Procedures Order; and (4) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion, the Purchase Agreement, the Bidding Procedures Order, the Auction and the proposed form of this Sale Order (the "**Proposed Sale Order**") having been

provided in accordance with the Bidding Procedures Order; and all objections to the Sale Motion with respect to the relief granted by this Sale Order having been withdrawn, resolved, or overruled as provided in this Sale Order; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation thereon; and good cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT

A.    **Fed. R. Bankr. P. 7052.** The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

B.    **Jurisdiction and Venue.** This Court has jurisdiction to decide the Sale Motion, and jurisdiction over the Sale Transaction and the property of each of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U. S.C. § 157.  Venue of these chapter 11 cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    **Statutory and Rule Predicates.** The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, 9007, 9008, and 9014.

D.    **Notice and Opportunity to Object**. As evidenced by the certificates of service

filed with the Court and the Delaware Bankruptcy Court, due, proper, timely, adequate, and

sufficient notice of, and a fair and reasonable opportunity to object to and to be heard with

respect to the Sale Motion, the Bidding Procedures, the Assumption and Assignment Procedures,

the Auction, the Sale Hearing, the Sale Transaction, including the sale of the Acquired Assets

free and clear of any Claims (as hereinafter defined), proposed assumption and assignment of

Designation Rights Contracts (as defined in the Purchase Agreement) to Buyer, and the Proposed

Sale Order has been or will be provided by the Debtors, as required by sections 102(1), 363, and

365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and

in compliance with the Bidding Procedures Order to all Persons entitled to such notice,

including, but not limited to, the following: (i) counterparties to Designation Rights Contracts

(the "**Counterparties**" and, each, a "**Counterparty**"); (ii) all other Sale Notice Parties[3] (as

defined in the Bidding Procedures); (iii) counsel for the Official Committee of Unsecured

Creditors appointed in these chapter 11 cases (the "**Creditors' Committee**"); (iv) counsel to the

Buyer; and (v) all other persons and entities as directed by the Court or the Delaware Bankruptcy

Court. Such notice was good, sufficient, and appropriate under the circumstances, and complied

in all respects with the Bidding Procedures Order. No other or further notice of the foregoing is

required. With respect to Persons in interest whose identities could not be reasonably ascertained

by the Debtors, publication of the Sale Notice in the national edition of *USA Today* and in the

*Chicago Tribune* on June 8, 2017 (*see* Affidavit of Publication [Case No. 17-10993 (LSS) ECF

---

[3] Including, but not limited to, Bank of America, N.A. (with respect the mortgage recorded on March 17, 2009 as Document No. R2009031586) and Bank of the West (with respect to mortgages recorded on (i) May 7, 2013 as Document No. R2013054769 and (ii) November 3, 2016 as Document No. R2016089672).

No. 380]) was sufficient and reasonably calculated to notice such Persons under the circumstances.

E.  **Disclosures**.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, and related notices and documents filed with the Court concerning the Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

F.  **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  In the absence of a stay pending appeal, the Buyer, being a good faith purchaser under Bankruptcy Code section 363(m), may close the Sale Transaction contemplated by the Purchase Agreement at any time after entry of this Sale Order shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

G.  **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion, the Purchase Agreement, and the Sale Transaction and entering into the Purchase Agreement, related Bill of Sale, any Assignment and Assumption Agreement, and any ancillary agreements thereto (collectively, the "**Related Agreements**").  The Debtors' entry into and performance under the Purchase Agreement and Related Agreements (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for the Sale Transaction include, but are not limited to, the following: (a) the Purchase Agreement constitutes the highest and best offer received for the Acquired Assets; (b) the Purchase Agreement presents the best opportunity to

maximize the value of the Acquired Assets and avoid decline and devaluation of the Acquired Assets; (c) unless the Sale Transaction and all of the other transactions contemplated by the Purchase Agreement are concluded expeditiously, as provided for pursuant to the Purchase Agreement, recoveries to the Debtors' creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through the sale of the Acquired Assets pursuant to the Purchase Agreement.

H.      **Compliance with Bidding Procedures**.     The Bidding Procedures were substantively and procedurally fair to all parties.  The Debtors, the Buyer, and their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects.

I.      **Successful Bidder**.  The Debtors determined, in accordance with their business judgment and in consultation with the Consultation Parties (as defined in the Bidding Procedures), that the Purchase Agreement was (i) a Qualified Bid (as defined in the Bidding Procedures) and (ii) the highest and best bid for the Acquired Assets at the Auction.  As a result, the Debtors declared Buyer the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in a Notice of Successful Bidder for Distribution Center [ECF No. 372] (the "**Notice of Successful Bidder**") filed with this Court and served on the Sale Notice Parties.

J.      **Highest or Best Value**.  The Debtors and their advisors, including Peter J. Solomon Company, LLC, engaged in a robust and extensive marketing and sale process over a period of over seven (7) months, both prior to the Commencement Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures. The Debtors conducted a fair and open sale process. The Debtors (i) afforded interested purchasers a full, fair and reasonable opportunity to qualify as Qualified Bidders (as defined in

the Bidding Procedures) and submit their highest or otherwise best offer to purchase the Acquired Assets; (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets; and (iii) considered all Qualified Bids (as defined in the Bidding Procedures) submitted on or before the Bid Deadline. The sale process, the Bidding Procedures, and the Auction were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any person or entity to submit an offer to purchase the Acquired Assets. The sale and auction process conducted by the Debtors pursuant to the Bidding Procedures resulted in the highest or best value for the Acquired Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

K.    **Fair Consideration**.    The consideration to be paid by the Buyer under the Purchase Agreement (i) constitutes fair and reasonable consideration for the Acquired Assets; (ii) is the highest and best offer for the Acquired Assets; (iii) will provide a greater recovery for the Debtors' estates and creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other laws of the United States, any state, territory, or any other applicable jurisdiction with laws substantially similar to the foregoing.

L.    **No Successor or Other Derivative Liability**.    The sale and transfer of the Acquired Assets to the Buyer or the Buyer's occupation and use of the Acquired Assets will not subject the Buyer to any liability (including any successor liability) with respect to the operation of any of the Debtors' businesses prior to Closing or by reason of such transfer. The Buyer is not a successor to any of the Debtors or their respective estates by reason of any theory of law or equity, and the Sale Transaction does not constitute a consolidation, merger, or *de facto* merger

of Buyer and any of the Debtors. The Buyer is not a mere continuation of Seller or any other

Debtor or their respective estates, and there is no substantial continuity, common identity, or

continuity of enterprise between the Buyer and any Debtor. Buyer is not holding itself out as a

continuation of any Debtor.

M.    **No Sub Rosa Plan**. The Sale Transaction neither impermissibly restructures the

rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of

reorganization of the Debtors. The Sale Transaction does not constitute a *sub rosa* or *de facto*

plan of reorganization or liquidation, as it does not propose to (i) impair or restructure existing

debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to

any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, such as those set forth

in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or

extend debt maturities.

N.    **Good Faith; No Collusion**. The Debtors, the Buyer, and their respective counsel

and advisors have negotiated, proposed and entered into the Purchase Agreement, Related

Agreements, and each of the transactions contemplated therein in good faith, without collusion

and from arm's-length bargaining positions. The Buyer is a "good faith purchaser" and is acting

in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is

entitled to all the protections afforded thereby. The Buyer has proceeded in good faith in all

respects. Specifically, (i) the Buyer recognized that the Debtors were free to deal with any other

party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions of

the Bidding Procedures Order; (iii) the Buyer's bid was subjected to competitive Bidding

Procedures as set forth in the Bidding Procedures Order; (iv) the Buyer has not violated section

363(n) of the Bankruptcy Code by any action or inaction; and (v) all payments to be made by the

Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate. The sale price in respect of the Acquired Assets was not controlled by any agreement among potential bidders, and neither the Debtors nor the Buyer have engaged in collusion or any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the laws of the United States, any state, territory, possession, or the District of Columbia. The Buyer is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Buyer and the Debtors.

O.    **Satisfaction of Section 363(f) Standards**. The Debtors may sell the Acquired Assets free and clear of all encumbrances, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), interests, and liens, including the Excluded Liabilities, rights, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, possessory interests (including those under Bankruptcy Code section 365(h), other interests, leases, licenses, options, deeds of trust, security interests, condition sale or other title retention agreements, pledges, other liens (including, without limitation, mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), judgments, demands, rights of first refusal, offsets, set-offs, recoupment, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, tax liabilities, and other interests of any kind or nature whatsoever against any of the Debtors or the Acquired Assets, including, without limitation, any debts

arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for Taxes of or against any of the Debtors, any claims under, or trusts or liens created by PACA[4] or PASA,[5] and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the Commencement Date, whether known or unknown, contingent or matured, liquidated or unliquidated, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to any of the Debtors, any of the Debtors' interests in the Acquired Assets, the operation of any of the Debtors' businesses before the effective time of Closing pursuant to the Purchase Agreement, or the transfer of any of the Debtors' interests in the Acquired Assets to the Buyer (collectively, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Without limiting the generality of the foregoing, "**Claims**" shall include any and all rights to payment, liabilities, contingent or otherwise, or obligations whatsoever arising under or out of, in connection with, or in any way relating to, (i) any employee benefit plan or pension plans contributed to or maintained by any of the Debtors, or multi-employer plan participated in by any of the Debtors prior to or subsequent to the Commencement Date, including, without limitation, any employee

---

[4] "PACA" means the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a, et seq.) or any similar state laws.

[5] "PASA" means the Packers and Stockyards Act (7 U.S.C. §§ 181 et seq.) or any similar state laws.

benefit plan and any Claims related to unpaid contributions or current or potential partial or complete withdrawal or termination liability with respect to the foregoing; (ii) any of the Debtors' collective bargaining agreements; (iii) the Worker Adjustment and Retraining Notification Act of 1988 ("**WARN**"); or (iv) any of the Debtors' current and former employees. Any holder of a Claim who did not object (or who ultimately withdrew its objection, if any) to the Sale Transaction or the Sale Motion shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the Acquired Assets to Buyer free and clear of all Claims in accordance with the terms of the Purchase Agreement, and any and all other relief granted by this Sale Order.

P.      **Free and Clear Sale.** Each of (i) PNC Bank, National Association ("**PNC**"), as administrative agent for itself and other lenders under that certain (a) Revolving Credit Agreement, dated as of June 15, 2011, and (b) Debtor-In-Possession Credit Agreement, dated as of May 19, 2017; and (ii) Bank of the West, as administrative agent for itself and other lenders under that certain Term Loan Agreement, dated as of April 23, 2013 (each, a "**Secured Lender**"), has consented to the sale of the Acquired Assets to the Buyer, pursuant to the Purchase Agreement free and clear of any Claims of each Secured Lender against the Acquired Assets; provided that payment of the Purchase Price (as defined in the Purchase Agreement) shall be used first to repay the Term Obligations (as defined in the DIP Orders (as defined below)), until such Term Obligations are indefeasibly paid and satisfied in full in cash, with the remainder deposited by wire transfer into the master concentration account held by Central Grocers, Inc., ending in 9318 at PNC (the "**Concentration Account**") to be applied to the Obligations (as defined in the final order of the Delaware Bankruptcy Court approving the Debtors' DIP Financing [Case No. 17-10993 (LSS) ECF No. 368] (the "**Final DIP Order**")) in

accordance with the terms of the order approving the Debtors' DIP Financing on an interim basis
[Case No. 17-10993 (LSS) ECF No. 190] and the Final DIP Order (together with the Final DIP
Order, the "**DIP Orders**"); provided, further, that the Purchase Price is without any setoff or
deduction of any kind other than as set forth in the Purchase Agreement and; provided further
that nothing contained herein shall constitute a finding or determination regarding the allocation
of the Purchase Price to any particular assets of the Debtors, and all parties' rights with respect to
the allocation of the proceeds of the Acquired Assets are hereby reserved. Any other holders of
Claims that have an interest in the Acquired Assets either have consented to the sale of the
Acquired Assets to the Buyer or could be compelled in a legal or equitable proceeding to accept
money in satisfaction of such Claim pursuant to section 363(f)(5), or fall within one or more of
the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately
protected by having their Claims constituting interests in the Acquired Assets, if any, attach
solely to the proceeds of the Sale Transaction ultimately attributable to the property in which
such holders have an interest, in the same order of priority, and with the same validity, force, and
effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.

Q.    **Buyer's Reliance on Free and Clear Sale**. The Buyer would not have entered
into the Purchase Agreement and would not consummate the transactions contemplated thereby
if the sale of the Acquired Assets were not free and clear of all Claims, or if the Buyer would, or
in the future could, be liable for any such Claims, including, as applicable, certain liabilities
related to the Business that will not be assumed by the Buyer, as described in the Purchase
Agreement. A sale of the Acquired Assets other than one free and clear of all Claims would
adversely impact the Debtors, their estates, and their creditors, and would yield substantially less
value for the Debtors' estates, with less certainty than provided under the Sale Transaction. The

total consideration to be provided under the Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets free and clear of all Claims (including, without limitation, any potential derivative, vicarious, transferee, or successor liability Claims).

R.     **Assumption and Assignment of Transferred Contracts**. The assumption and assignment of Transferred Contracts (as defined in the Purchase Agreement) pursuant to and in accordance with the procedures for designating for assumption and assignment to Buyer Designation Rights Contracts (as defined in the Purchase Agreement) set forth in Paragraphs 20 through 23 of this Sale Order (the "**Designation Procedures**"), is integral to the Purchase Agreement and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

S.     **Validity of the Transfer**. As of the Closing and payment of the Purchase Price, the transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims.   The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction. The Debtors (i) have full corporate or limited liability company (as applicable) power and authority to execute the Purchase Agreement, Related Agreements, and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors; (ii) have all of the corporate or limited liability

company (as applicable) power and authority necessary to consummate the transactions contemplated by the Purchase Agreement and Related Agreements; and (iii) upon entry of this Sale Order, other than any consents identified in the Purchase Agreement, need no consent or approval from any other Person to consummate the Sale Transaction.

T.    **Acquired Assets Are Property of the Estates**. The Acquired Assets constitute property of, and good title is vested in, the Seller's estate within the meaning of section 541(a) of the Bankruptcy Code. Seller is the sole and rightful owner of the Acquired Assets with all right, title, and interest to transfer and convey the Acquired Assets to the Buyer, and no other Person has any ownership right, title, or interests therein.

U.    **Valid and Binding Contract**. The Purchase Agreement is a valid and binding contract between the Seller and the Buyer and shall be enforceable pursuant to its terms. The Purchase Agreement, Related Agreements, Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

V.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Acquired Assets and the assumption and assignment of Transferred Contracts in accordance with the Designation Procedures must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement.

Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

W.     **Legal and Factual Bases**.   The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**

1.     **Motion Is Granted**.   The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) is granted and approved as set forth herein.

2.     **Objections Overruled**.   All objections (except for Cure Objections (as defined in the Bidding Procedures Order)), if any, that have been adjourned), if any, to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

3.     **Notice**.   Notice of the Sale Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Bidding Procedures Order, the Auction, the Sale Transaction, the Sale Hearing, and the Proposed Sale Order was adequate, reasonable, appropriate, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4.     **Fair Purchase Price**.   The consideration provided by the Buyer pursuant to the Purchase Agreement (i) is fair and adequate; (ii) constitutes reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent

Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws); and (iii) will provide an equal or greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

5.     **Payment of Proceeds**. The Buyer shall submit the Purchase Price as set forth in the Purchase Agreement. The Debtors shall use the Purchase Price proceeds to first repay the Term Obligations (as defined in the DIP Orders), until such Term Obligations are paid and satisfied in full in cash, *provided* that such payment shall be subject to the parties in interests rights under the DIP Orders, with the remainder deposited by the Debtors by wire transfer into the Concentration Account to be applied to the Obligations in accordance with the terms of the DIP Orders and subject to the rights of the parties in interest thereunder; provided that, the Purchase Price is without any setoff or deduction of any kind other than as set forth in the Purchase Agreement.

6.     **Approval of the Purchase Agreement**.   The Purchase Agreement, all transactions contemplated therein (including, but not limited to, all Related Agreements contemplated thereby) and all of the terms and conditions thereof are hereby approved. The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement (including, but not limited to, all Related Agreements contemplated thereby) be authorized and approved in its entirety.

## Sale and Transfer of Acquired Assets

7.     Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered, without further order of the Court, to take any and all actions necessary or

appropriate to (i) consummate and close the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (ii) transfer and assign all right, title, and interest in and to all Acquired Assets, property, licenses, and rights to be conveyed pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (iii) execute and deliver, perform under, consummate, and implement the Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale Transaction, including any Related Agreements, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and Related Agreements; and (iv) take all further action as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying, or conferring to the Buyer, or reducing to the Buyer's possession, the Acquired Assets and the Transferred Contracts. All Persons that are currently in possession of any or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer as of Closing. To the extent required by the Purchase Agreement, the Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date may be, in possession of any or all of the Acquired Assets will surrender possession of such Acquired Assets to either (i) the Debtors before the Closing Date or (ii) the Buyer on or after the Closing Date.

8.      All Persons are prohibited from taking any action to adversely affect or interfere with the ability of any of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Purchase Agreement and this Sale Order; provided that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

9.     Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

10.     **Transfer of Assets Free and Clear**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement.  The Acquired Assets shall be transferred to the Buyer and, upon Closing, such transfer shall (i) be valid, legal, binding, and effective; (ii) vest the Buyer with all right, title, and interest of any of the Debtors in and to the Acquired Assets; and (iii) upon payment of the Purchase Price consistent with Paragraph 5 above, be free and clear of all Claims (including Claims of any Governmental Authority) in accordance with section 363(f) of the Bankruptcy Code, with all Claims that represent interests in property to attach to the net proceeds of the Sale Transaction, in the same order of their priority and with the same validity, force, and effect that they now have against the Acquired Assets, subject to any claims and defenses any of the Debtors may possess with respect thereto.

11.     Except as otherwise expressly provided in the Purchase Agreement, all Persons (and their respective successors and assigns) including, without limitation, any of the Debtors, any of the Debtors' estates, all debt security holders, equity security holders, governmental, tax and regulatory authorities, governmental units, lenders, current and former employees, pension plans, labor unions, trade creditors, and any other creditors holding Claims against any of the Debtors, the Acquired Assets, or any of the Debtors' businesses (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to, any of the Debtors, the Acquired Assets, or any of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to the Buyer, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Buyer, its Affiliates, successors, or assigns, its property or the Acquired Assets, including, without limitation, taking any of the following actions with respect to or based on a Claim: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its Affiliates, or their respective successors or assigns, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its Affiliates, or their respective successors or assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Claims against the Buyer, its Affiliates, or their respective successors or assigns, assets, or properties; (iv) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer, its Affiliates, or their respective successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof, including the Purchase Agreement.  No such Persons shall assert or pursue against the Buyer or its Affiliates, successors, or assigns any such Claim.

12.    This Sale Order (i) shall be effective as a determination that, as of Closing, all Claims have been unconditionally released, discharged, and terminated as to the Buyer and the Acquired Assets and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state,

county, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Acquired Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Acquired Assets recorded prior to the date of this Sale Order. A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, and other interests against the Acquired Assets recorded prior to the date of this Sale Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and Related Agreements.

13.     As of and after the Closing, (i) each of the Debtors' creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims in the Acquired Assets (if any) as such Claims may have been recorded or may otherwise exist; and (ii) any Acquired Asset that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the proceeds of the Sale Transaction in the same priority they currently enjoy with respect to the Acquired Assets.

14.     Following the Closing, no holder of any Claim shall interfere with the Buyer's title to or quiet use and enjoyment of the Acquired Assets based on or related to any such Claim or based on any actions any of the Debtors may take in these chapter 11 cases.

15.    Except as provided below concerning the Claims in the Acquired Assets held by the Secured Lenders, if any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims in or against the Acquired Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Claims against or in the Acquired Assets (collectively, the **"Release Documents"**) that the Person holds, then with regard to the Acquired Assets that are purchased by the Buyer pursuant to the Purchase Agreement and this Sale Order, (i) the Debtors are hereby authorized and directed to, and the Buyer is hereby authorized to, execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Acquired Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets; provided that, neither the Debtors nor the Buyer is authorized to file any Release Documents with respect to the Claims held by a Secured Lender, in the Acquired Assets without first obtaining the express written consent of such Secured Lender and providing drafts of such Release Documents to the Secured Lender for its review and approval, which consent and approval shall be in the Secured Lender's sole discretion; provided further that, notwithstanding anything in this Sale Order or the Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  This Sale Order is

deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

16.     Without limiting the effect or scope of the foregoing, as of the Closing (except as expressly set forth in the Purchase Agreement), the Buyer, its Affiliates and their respective successors and assigns shall have no liability for any Claim, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature, or character whatsoever, by reason of any theory of law or equity, including, without limitation, Claims arising under (i) any employment or labor agreements or the termination thereof; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or any of the Debtor's Affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, employee benefit plans and any participation or other agreements related to the employee benefit plans, or the termination of any of the foregoing; (iii) any of the Debtors' business operations or the cessation thereof or termination of employees; (iv) any litigation involving any of the Debtors; and (v) any labor, employee, workers' compensation, occupational disease, or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974 ("**ERISA**"), as amended; (b) the Fair Labor Standards Act; (c) Title VII of the Civil Rights Act of 1964; (d) the Federal Rehabilitation Act of 1973; (d) the National Labor Relations Act; or the Labor Management Relations Act; (e) WARN; (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (g) the Americans with Disabilities Act of 1990; (h) the

Consolidated Omnibus Budget Reconciliation Act of 1985; (i) the Multiemployer Pension Plan Amendments Act of 1980 ("**MPPAA**"); (j) state and local discrimination laws; (k) state and local unemployment compensation laws or any other similar state and local laws; (l) state workers' compensation laws; (m) any other state, local, or federal employee benefit laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any of the Debtors or any of their predecessors; (n) any antitrust laws; (o) any product liability or similar laws, whether state, federal, or otherwise; (p) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (q) PACA or PASA; (r) any bulk sales or similar laws; (s) any federal, state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (t) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of or related to successor liability.

17.     On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Acquired Assets under the Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in and to all of the Acquired Assets to the Buyer.

18.     To the maximum extent available under applicable law, and to the extent provided for under the Purchase Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of any of the Debtors with respect to the Acquired Assets and, to the maximum extent available under applicable law, subject to compliance with the Designation Procedures set forth in

Paragraphs 20 through 23 of this Sale Order, as applicable, and to the extent provided for under the Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date. All existing licenses or permits applicable to the Acquired Assets shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

19.    **No Successor or Other Derivative Liability**. Except as expressly set forth in the Purchase Agreement, as a result of the Sale Transaction, or subsequent use or occupation of the Acquired Assets, the Buyer and its Affiliates and their respective successors and assigns shall not be deemed a successor to any of the Debtors and shall not have any successor, transferee, or vicarious liability of any kind or character, including, without limitation, within the meanings of or under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, the MPPAA, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to any of the Debtors or any obligations of any of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any Taxes or other Governmental Authority fees, contributions, or surcharges, in each case, arising, accruing, or payable under, out of, in connection with, or in any way relating to, the Acquired Assets prior to the Closing Date or arising based on actions of any of the Debtors taken after the Closing Date.

### Designation Procedures

20.     During the period from the Execution Date through and including July 31, 2017 (the "**Designation Rights Period**"), and subject to the terms and conditions set forth in the Purchase Agreement, until any Designation Rights Contract becomes a Transferred Contract pursuant to the Designation Procedures, or if at the expiration of the Designation Rights Period, the Buyer does not designate such Designation Rights Contract to be a Transferred Contract, (i) each Designation Rights Contract shall be held by the Debtors and shall not be rejected pursuant to section 365 of the Bankruptcy Code in accordance with Section 2.2 of the Purchase Agreement; (ii) Debtors shall not terminate, amend, supplement, modify, or waive any rights under any Designation Rights Contract or take any affirmative action not required by the terms thereof without the prior written consent of Buyer; and (iii) the Debtors shall not seek to convert, dismiss, or close these chapter 11 cases.  If any Designation Rights Contract does not become a Transferred Contract as set forth in Section 2.3 in the Purchase Agreement, it shall be deemed an Excluded Asset (as define din the Purchase Agreement).

21.     As soon as practicable, but in no event later than three (3) business days of the Debtors' receipt of a written request from Buyer to assume and assign to Buyer one or more Designation Rights Contracts, the Debtors shall (i) file with the Court and serve by overnight delivery on the Counterparties to the applicable Designation Rights Contracts a notice of proposed assumption and assignment (a "**Notice of Designation**"), which shall (a) set forth the Debtors' good-faith calculation of the amounts, costs, or expenses that must be paid to cure any default under each Designation Rights Contract listed on the Notice of Designation (each, a "**Cure Cost**" and, collectively, the "**Cure Costs**"); and (b) prominently display the deadline to file objections to the assumption and/or assignment of the Designation Rights Contracts

identified on the Notice of Designation (including any Cure Objection or Adequate Assurance Objection (each as defined in the Bidding Procedures Order)); and (ii) provide or cause to be provided to the Counterparties to the Designation Rights Contracts listed on the Notice of Designation the Buyer's Adequate Assurance Information (as defined in the Bidding Procedures Order).

22.     With respect to the assumption and assignment of a Designation Rights Contract to which no timely objection has been filed, the Debtors shall file with the Court and serve on the Counterparties to the applicable Designation Rights Contracts notice of uncontested assumption and assignment (each, an "**Uncontested Assumption Notice**").  Upon filing an Uncontested Assumption Notice, and without further order of the Court, (i) each Designation Rights Contract listed in such Uncontested Assumption Notice shall be treated as a Transferred Contract under the Purchase Agreement and this Sale Order; (ii) each such Transferred Contract shall be deemed assumed by the Debtors and assigned to Buyer; and (iii) Paragraphs 24 through 30 of this Sale Order shall become effective and binding with respect to such Transferred Contract.  With respect to the Designation Rights Contracts listed on an Uncontested Assumption Notice, (a) the Cure Cost for each Designation Rights Contract shall be fixed at the amount set forth in the applicable Notice of Designation, and the applicable Counterparty to such Designation Rights Contract shall be forever bound by such Cure Cost; (b) pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, the Debtors shall pay to the applicable Counterparty such Cure Cost at Closing or as soon thereafter as is practicable; and (c) upon payment of such Cure Cost as provided for herein, the applicable Counterparty is hereby enjoined from taking any action against Buyer, its Affiliates, or the Acquired Assets with respect to any claim for Cure Costs relating to the applicable Transferred Contract.

23.    With respect to the assumption and assignment of a Designation Rights Contract to which a timely objection has been filed and not resolved by the parties, the Debtors shall file with the Court and serve on the Counterparties to the applicable Designation Rights Contracts a notice of contested assumption and assignment (each, a "**Contested Assumption Notice**"). To the extent not resolved prior thereto, the resolution of an objection to the assumption and/or assignment of a Designation Rights Contract listed on a Contested Assumption Notice shall be determined at a hearing before the Court on a date to be scheduled. With respect to Cure Objections, the Debtors shall maintain a cash reserve equal to either (i) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Designation Rights Contract, or (ii) such other cash reserve amount as may be ordered by the Court. Upon resolution of the objections with respect to the assumption and/or assignment of a Designation Rights Contract (whether by Court order or consent of the Debtors and the applicable Counterparty) listed in a Contested Assumption Notice, (a) such Designation Rights Contract shall be treated as a Transferred Contract under the Purchase Agreement and this Sale Order; (b) such Transferred Contract shall be deemed assumed by the Debtors and assigned to Buyer; and (c) Paragraphs 24 through 30 of this Sale Order shall become effective and binding with respect to such Transferred Contract. With respect to the assumption of a Designation Rights Contract to which a timely Cure Objection has been filed, (1) the Cure Cost for such Designation Rights Contract shall be determined by the Court (unless otherwise determined by mutual consent of the Debtors and the objecting Counterparty), and the Counterparty to such Transferred Contract shall be forever bound by such Cure Cost; (2) pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Debtors shall pay to the applicable Counterparty the Cure Cost, as determined in accordance with this paragraph, within five (5)

business days after the Cure Objection is resolved; and (3) upon payment of such Cure Cost as provided for herein, the applicable Counterparty is hereby enjoined from taking any action against Buyer, its Affiliates, or the Acquired Assets with respect to any claim for Cure Costs relating to the applicable Transferred Contract.

## Assumption and Assignment of Transferred Contracts

24.     Subject to compliance with the Designation Procedures, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and assignment to Buyer, and Buyer's assumption on the terms set forth in the Purchase Agreement of the Transferred Contracts and pursuant to the terms and provisions of this Sale Order shall be approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto shall be deemed satisfied.

25.     Subject to compliance with the Designation Procedures, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign any Transferred Contracts to the Buyer free and clear of all Claims, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to the Buyer as provided in the Purchase Agreement.

26.     Subject to compliance with the Designation Procedures, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and to the Transferred Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Transferred Contracts.  The assumption by the Debtors and assignment to the Buyer of a Transferred Contract shall not be, or result in, a default

under any such Transferred Contract or constitute a termination of any such Transferred Contract.

27.     Payment of the Cure Costs by the Debtors shall (i) be in full satisfaction and cure of any and all defaults under the Transferred Contracts, whether monetary or non-monetary; and (ii) compensate Counterparties for any actual pecuniary loss resulting from such defaults. Each Counterparty shall be forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer, their respective Affiliates, successors, or assigns, or the property of any of them, any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Transferred Contracts, existing as of the date that such Transferred Contracts are assumed or arising by reason of the Closing. Neither the Buyer nor any successor of the Buyer shall be responsible for Claims or obligations arising out of any of the contracts, agreements, or understandings that are not Transferred Contracts after the Closing Date (except as specifically provided by the Purchase Agreement).

28.     Subject to compliance with the Designation Procedures, pursuant to sections 365(f)(1) and (3) of the Bankruptcy Code, the Transferred Contracts shall be transferred to, and for the benefit of, the Buyer in accordance with their respective terms, including all obligations of the Buyer as the assignee of the Transferred Contracts, notwithstanding any provision in any Transferred Contract or under applicable law (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

29.     Subject to compliance with the Designation Procedures, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all Counterparties are forever barred and

permanently enjoined from raising or asserting against the Debtors or the Buyer or any of its

Affiliates any defaults, cross-defaults, breach, claim, pecuniary loss, rent accelerations,

escalations, rent increase, assignment fees, increases or any other fees charged to the Buyer or

the Debtors existing as of the date of assumption of the Transferred Contracts or as a result of the

assumption or assignment of the Transferred Contracts on the Closing Date.  For the avoidance

of doubt, and without limiting the generality of the foregoing, any provision in a Transferred

Contract, any other document, or under applicable law that prohibits, restricts or otherwise

impairs assignment of the Transferred Contracts or Buyer's ability to operate the Acquired

Assets is hereby void and of no force or effect, including any provision that (i) requires any or all

of the proceeds from the assignment of such Transferred Contract be paid to or shared with the

applicable Counterparty or distributed in a manner inconsistent with the terms of the Purchase

Agreement, the applicable Assignment and Assumption Agreement, or the intent of the Debtors

and Buyer with respect to the distribution of such proceeds; (ii) terminates or adversely impacts

any extension option rights or any other rights of the Buyer under such Transferred Contract; (iii)

cross-defaults to or from any other lease or executory contract that is not a Transferred Contract;

(iv) restricts the Buyer's operation of the Acquired Assets with respect to radius, use, location,

and exclusivity; (v) contains operating covenants or "go-dark" provisions that would purport to

terminate or modify any Transferred Contract before assumption and assignment to the Buyer; or

(vi) requires a Counterparty's consent prior to assignment of the Transferred Contract to the

Buyer.

30.     Upon the Debtors' assignment of Transferred Contracts to the Buyer under the

provisions of this Sale Order or any supplemental assignment order of the Court, no default shall

exist under any Transferred Contracts, and no Counterparty to any Transferred Contracts shall be

permitted to declare a default by any Debtor or the Buyer or any of its Affiliates or otherwise take action against the Buyer or any of its Affiliates as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract. Any provision in a Transferred Contract, other document, or under applicable law that prohibits or conditions the assignment or sublease of such Transferred Contract (including, without limitation, the granting of a lien therein) or allows the relevant Counterparty to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force or effect. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyer's rights to enforce every term and condition of the Transferred Contract. Any party having the right to consent to the assumption or assignment of any Transferred Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

31.     **Statutory Mootness**. The transactions contemplated by the Purchase Agreement and Related Agreements are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Assets or the assignment of Transferred Contracts to the Buyer free and clear of Claims, unless such authorization is duly stayed before the Closing Date pending such appeal. The Buyer is a good faith purchaser of the Acquired Assets and is granted and entitled to all of the benefits and

protections afforded to a good faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Transferred Contracts as part of the Sale Transaction pursuant to section 365 of the Bankruptcy Code and this Order. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

32.    **No Avoidance of Purchase Agreement**. Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or Related Agreements to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement, Related Agreements, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement, Related Agreements, or the Sale Transaction.

33.    **Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062**. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the Northern District of Illinois, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction, and the Debtors and the Buyer may close the Sale Transaction as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

34.    **Binding Effect of Sale Order**.    The terms and provisions of the Purchase
Agreement and this Sale Order shall be binding in all respects upon each of the Debtors, their
estates and their creditors, any affected third parties, all holders of equity interests in any of the
Debtors, all holders of any Claims, whether known or unknown, against any of the Debtors, any
holders of Claims against or on all or any portion of the Acquired Assets, including, but not
limited to, all contract counterparties, holders of leasehold interests, governmental units, and any
trustees, examiners, administrators, responsible officers, estate representatives, or similar entities
for any of the Debtors, if any, subsequently appointed in any of the Debtors' chapter 11 cases or
upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' chapter 7
cases, and each of their respective Affiliates, successors, and assigns.  The Purchase Agreement
and this Sale Order shall inure to the benefit of the Debtors, their estates and creditors, the Buyer
and its Affiliates, and each of their respective successors and assigns.  The Purchase Agreement,
the Sale Transaction, and this Sale Order shall not be subject to rejection or avoidance by the
Debtors, their estates, their creditors, or any trustee, examiner, or receiver.

35.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the
terms of this Sale Order, the Purchase Agreement, or any documents executed in connection
therewith, the provisions contained in this Sale Order, the Purchase Agreement, any documents
executed in connection therewith, shall govern, in that order. Nothing contained in any chapter
11 plan hereinafter confirmed in these chapter 11 cases, any order confirming such plan, or in
any other order of any type or kind entered in these chapter 11 cases (including, without
limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases
under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or
derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

36.    **Modification of Purchase Agreement**.  The Purchase Agreement, the Related Agreements, and any other documents or other instruments executed in connection therewith, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that (i) any such modification, amendment, or supplement shall not materially change the terms of the Purchase Agreement, Related Agreements, or any documents or other instruments executed in connection therewith; (ii) written notice of any non-material modification or amendment shall be provided to counsel for the Secured Lenders and the Creditors' Committee within two (2) business days after entering into such amendment or modification; (iii) advanced written notice of any material modification or amendment shall be provided to counsel for the Secured Lenders and the Creditors' Committee, which parties may object to such modification or amendment, in writing, within three (3) business days (unless such parties consent to a shorter notice period) from the date of the transmittal of such notice of amendment or modification.

37.    **Bulk Sales; Taxes**.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction (including those relating to Taxes other than Transfer Taxes) shall apply in any way to the transactions contemplated by the Purchase Agreement, the Sale Motion, or this Sale Order.  Except as otherwise expressly provided in the Purchase Agreement, all obligations of the Debtors relating to Taxes, whether arising under any law, by the Purchase Agreement, or otherwise shall be the obligation of and fulfilled and paid by the Debtors.

38.    **Controlled Group Reservation of Rights**.  Nothing herein or in the Purchase Agreement shall affect, impair or limit the claims of any pension plan against the Debtors or any member of the control group of the Debtors' or such control group member's rights to dispute such claims.

39.  **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order, the Purchase Agreement, Related Agreements, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order, the Purchase Agreement, Related Agreements, the assumption and assignment of any Transferred Contracts, and to enforce the injunctions set forth herein.

Dated:  JUL 2 5 2017
_____, 2017
Chicago, Illinois

_____
THE HONORABLE PAMELA S. HOLLIS
UNITED STATES BANKRUPTCY JUDGE