or oral) by or between the Parties to the extent they relate in any way to the subject matter hereof.

Section 9.4    Incorporation of Exhibits.    The Exhibits to this Agreement are incorporated herein by reference and made a part hereof.

Section 9.5    Amendments and Waivers.    No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each Party except as expressly provided herein.    No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement.    No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant.    No conditions, course of dealing or performance, understanding or agreement purporting to modify, vary, explain, or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the first sentence of this Section 9.5 except as expressly provided herein.    Except where a specific period for action or inaction is provided herein, no delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

Section 9.6    Succession and Assignment.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. No Party may assign (other than to permitted assigns) either this Agreement or any of its rights, interests, or obligations hereunder without the prior written consent of the other Parties.

Section 9.7    Notices.    All notices, requests, demands, claims and other communications hereunder shall be in writing except as expressly provided herein.    Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (a) when delivered personally to the recipient; (b) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); (c) upon receipt of confirmation of receipt if sent by facsimile transmission; (d) on the day such communication was sent by e-mail; provided, that the transmission of the email is properly confirmed; or (e) three (3) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Seller:                c/o Central Grocers, Inc.
                            2600 West Haven Avenue
                            Joliet, IL 60433
                            Attention: Ken Nemeth
                            E-mail: knemeth@central-grocers.com

                            With a copy (which shall not constitute notice to Seller) to:

                            Weil, Gotshal & Manges LLP
                            767 Fifth Avenue

New York, New York 10153
Attention: Stephen Karotkin, Sunny Singh and Gavin Westerman
Facsimile: (212) 310-8007
E-mail:    stephen.karotkin@weil.com
           sunny.singh@weil.com
           gavin.westerman@weil.com

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, 12th Floor
Miami, Florida 33131
Attention: Beatriz Azcuy-Diaz, Esq.
Facsimile: (305) 374-7159
E-mail:    beatriz.azcuy@weil.com

If to Buyer:          SUPERVALU INC.
                      11840 Valley View Road
                      Eden Prairie, MN 55344
                      Attention: Legal Department
                      Facsimile: 952-828-4403
                      E-mail: Karla.C.Robertson@supervalu.com

With a copy (which shall not constitute notice to Buyer) to:
                      Landis Rath & Cobb LLP
                      919 N. Market Street, Suite 1800
                      Wilmington, DE 19801
                      Attention: Richard S. Cobb, Esq.
                      Facsimile: 302-467-4450
                      E-mail: cobb@lrclaw.com

                      Faegre Baker Daniels LLP
                      2200 Wells Fargo Center
                      90 S. Seventh Street
                      Minneapolis, MN 55402
                      Telephone:  (612) 766-7000
                      Facsimile:  (612) 766-1600
                      Email: mike.stanchfield@FaegreBD.com
                             kate.sherburne@FaegreBD.com
                      Attn:  Michael A. Stanchfield
                             Kate Sherburne

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth in this Section 9.7.

        Section 9.8    Governing Law.    This Agreement shall be governed by and construed in accordance with the internal Laws of the State of Illinois (without giving effect to

the principles of conflict of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

Section 9.9    <u>Submission to Jurisdiction; Service of Process</u>. Each of the Parties irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court in any Litigation arising out of or relating to this Agreement or the transactions contemplated hereby or thereby and agrees that all claims in respect of such Litigation may be heard and determined in any such court. Each Party also agrees not to (a) attempt to deny or defeat such exclusive jurisdiction by motion or other request for leave from the Bankruptcy Court or (b) bring any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby or thereby in any other court. Each of the Parties irrevocably and unconditionally waives any objection to the laying of venue in, and any defense of inconvenient forum to the maintenance of, any Litigation so brought and waives any bond, surety or other security that might be required of any other Party with respect thereto. Any Party may make service on any other Party by sending or delivering a copy of the process to the Party to be served at the address and in the manner provided for the giving of notices in <u>Section 9.7</u>; <u>provided</u>, <u>however</u>, that nothing in this <u>Section 9.9</u> shall affect the right of any Party to serve legal process in any other manner permitted by law or in equity. Each Party agrees that a final judgment in any Litigation so brought shall be conclusive and may be enforced by Litigation or in any other manner provided by law or in equity. The Parties intend that all foreign jurisdictions will enforce any Decree of the Bankruptcy Court in any Litigation arising out of or relating to this Agreement or the transactions contemplated hereby or thereby.

Section 9.10    <u>Waiver of Jury Trial</u>. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

Section 9.11    <u>Casualty and Condemnation</u>.

(a)    In the event that after the Effective Date, but prior to the Closing Date, either any portion of the Owned Real Property is taken or threatened to be taken pursuant to eminent domain proceedings or any of the improvements, structures, facilities or fixtures on the Owned Real Property are damaged or destroyed by any casualty such that, as applicable, (a) more than five percent (5%) of the Owned Real Property (including any improvements, structures, facilities or fixtures) is taken or threatened to be taken or (b) cost of repair of damage to such Owned Real Property (including any improvements, structures, facilities or fixtures) on account of any such casualty shall exceed ten percent (10%) of the Purchase Price, as reasonably determined by Buyer's contractor or architect (in each case, a "<u>Casualty / Condemnation Event</u>") then Seller shall as soon as reasonably possible following the occurrence of a Casualty / Condemnation Event deliver a written notice to Buyer describing in reasonable detail such event. Within ten (10) business days of its receipt from Seller of such written notice, Buyer may in its sole discretion terminate this Agreement. If Buyer does not elect to terminate this Agreement within ten (10) business days after Seller sends Buyer such written notice, then Buyer shall be deemed to

have elected to proceed with Closing, in which event Seller shall assign to Buyer, without representation, warranty or recourse to Seller, all of Seller's right, title and interest in and to any claims and proceeds Seller may have with respect to any insurance policies or condemnation or similar awards or amounts relating to the premises in question, after deduction of Seller's reasonable, actual out-of-pocket expenses of collection and amounts expended by Seller in Buyer's reasonable discretion to prevent further damage to the Owned Real Property or to alleviate unsafe conditions at the Owned Real Property caused by casualty or condemnation. If Seller has assigned a casualty claim to Buyer in accordance with this Section, the Purchase Price shall be reduced by an amount equal to the deductible or similar amount under Seller's insurance policy. In the event this Agreement is terminated pursuant to this Section, the Escrow Amount (minus any Escrow or Title Company cancellation charges) shall be returned to Buyer and neither party hereto shall have any further obligation in connection herewith, except under those provisions that expressly survive a termination of this Agreement.

(b)    Seller will use commercially reasonable efforts to pursue and attempt to recover all insurance proceeds under each applicable insurance policy of Seller that would cover any condemnation, casualty or destruction under Section 9.11(a).

Section 9.12    Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated only to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.

Section 9.13    No Third Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any Person other than Buyer, Seller, and their respective successors and permitted assigns.

Section 9.14    Non-Recourse. All claims or causes of action (whether in contract or in tort, in law or in equity, or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or related in any manner to this Agreement may be made only against (and are expressly limited to) the Persons that are expressly identified as parties hereto or thereto (the "Contracting Parties"). In no event shall any Contracting Party have any shared or vicarious Liability for the actions or omissions of any other Person. No Person who is not a Contracting Party, including any director, officer, employee, incorporator, member, partner, manager, stockholder, Affiliate, agent, attorney or representative of, and any financial advisor or lender to, any of the foregoing ("Non-Party Affiliates"), shall have any Liability (whether in contract or in tort, in law or in equity, or granted by statute or based upon any theory that seeks to impose Liability of an entity party against its owners or affiliates) for any claims, causes of action, obligations or Liabilities arising under, out of, in connection with or related in any manner to this Agreement or the Related Agreements or based on, in respect of, or by reason of this Agreement or the Related Agreements or their negotiation, execution, performance or breach; and, to the maximum extent permitted by Law, each Contracting Party waives and releases all such Liabilities, claims and obligations against any such Non-Party Affiliates. Without limiting the foregoing, to the maximum extent permitted by Law, (a) each

34

Contracting Party hereby waives and releases any and all rights, claims, demands, or causes of action that may otherwise be available at law or in equity, or granted by statute, to avoid or disregard the entity form of a Contracting Party or otherwise impose Liability of a Contracting Party on any Non-Party Affiliate, whether granted by statute or based on theories of equity, agency, control, instrumentality, alter ego, domination, sham, single business enterprise, piercing the veil, unfairness, undercapitalization, or otherwise; and (b) each Contracting Party disclaims any reliance upon any Non-Party Affiliates with respect to the performance of this Agreement or the Deed or any representation or warranty made in, in connection with, or as an inducement to this Agreement or the Related Agreements The Parties acknowledge and agree that the Non-Party Affiliates are intended third-party beneficiaries of this Section 9.14.

Section 9.15   Mutual Drafting.   The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

Section 9.16   Headings; Table of Contents.   The section headings and the table of contents contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 9.17   Counterparts; Facsimile and Electronic Signatures.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

Section 9.18   Limitations Under Applicable Law.   Notwithstanding anything to the contrary contained in this Agreement, Seller' obligations hereunder shall be subject to limitations under applicable Law, including, without limitation, Sections 1113 and 1114 of the Bankruptcy Code; provided, however, that nothing in this Section 9.18 shall affect any Conditions to Buyer's Obligations in Section 7.1.

Section 9.19   Multiple Sellers.   In the event that there is more than one "seller" under this Agreement, the term "Seller" shall refer to each seller individually and/or all sellers collectively, as the context so requires; provided, that no Person shall be deemed to make any representations or warranties with respect to any other Person or any other Person's property. Payments to and liabilities under the Agreement shall be apportioned among the sellers in accordance with the percentage of the Purchase Price allocated to such seller under the allocation provisions hereunder.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

SELLER:

CGI JOLIET LLC,
a Delaware limited liability company

By: Central Grocers, Inc., the sole member

        By:_____
        Printed Name: Donald E. Harer
        Title: Chief Restructuring Officer


CENTRAL GROCERS, INC.


By:_____
Printed Name: Donald E. Harer
Title: Chief Restructuring Officer

[Signature Page to Asset Purchase Agreement]

BUYER:

SUPERVALU HOLDINGS, INC.


By:_____
Name:
Title:

EXHIBIT A

Owned Real Property

PARCEL 1:

THE EAST 912.00 FEET (AS MEASURED PERPENDICULAR) OF LOT 2 IN CHERRY HILL BUSINESS PARK WEST UNIT 2, BEING A SUBDIVISION OF LOT 3 CHERRY HILL BUSINESS PARK WEST UNIT 1 OF THE NORTHWEST 1/4 OF SECTION 19, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 9, 2008 AS DOCUMENT R2008-086953, IN WILL COUNTY, ILLINOIS.

PARCEL 2: (ACCESS EASEMENT NORTH END-LOT 1)

A NON-EXCLUSIVE EASEMENT FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE INGRESS, EGRESS AND ACCESS EASEMENT AGREEMENT RECORDED MARCH 17, 2009 AS DOCUMENT R2009-031582 FOR THE PURPOSE OF INGRESS AND EGRESS OVER THE FOLLOWING DESCRIBED LAND:

THAT PART OF LOT 1 IN CHERRY HILL BUSINESS PARK WEST UNIT 2, BEING A SUBDIVISION OF THE NORTHWEST 1/4 OF SECTION 19, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 9, 2008 AS DOCUMENT R2008-086953, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 1; THENCE NORTHEASTERLY 21.77 FEET ALONG THE NORTH LINE OF SAID LOT 1, BEING THE ARC OF A CIRCLE TO THE RIGHT, HAVING A RADIUS OF 742.00 FEET AND WHOSE CHORD BEARS NORTH 81 DEGREES 25 MINUTES 02 SECONDS EAST 21.77 FEET, TO THE POINT OF BEGINNING; THENCE NORTHEASTERLY 77.67 FEET CONTINUING ALONG SAID CIRCLE TO THE RIGHT, HAVING A RADIUS OF 742.00 FEET AND WHOSE CHORD BEARS NORTH 85 DEGREES 15 MINUTES 24 SECONDS EAST 77.64 FEET TO A POINT OF TANGENCY; THENCE NORTH 88 DEGREES 15 MINUTES 20 SECONDS EAST 8.84 FEET TO THE NORTHEAST CORNER OF LOT 1; THENCE SOUTH 01 DEGREES 53 MINUTES 00 SECONDS EAST ALONG THE EAST LINE OF SAID LOT 1, A DISTANCE OF 267.73 FEET; THENCE SOUTH 88 DEGREES 07 MINUTES 00 SECONDS WEST PERPENDICULAR TO THE LAST COURSE, 62.00 FEET; THENCE NORTH 01 DEGREES 53 MINUTES 00 SECONDS WEST PARALLEL TO THE EAST LINE OF LOT 1, 182.61 FEET; THENCE NORTH 18 DEGREES 34 MINUTES 54 SECONDS WEST 84.84 FEET TO THE POINT OF BEGINNING, IN WILL COUNTY, ILLINOIS.

PARCEL 3:(ACCESS EASEMENT SOUTH END-LOT 2)

A NON-EXCLUSIVE EASEMENT FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE INGRESS, EGRESS AND ACCESS EASEMENT AGREEMENT RECORDED MARCH

17, 2009 AS DOCUMENT R2009-031583 FOR THE PURPOSE OF INGRESS AND EGRESS OVER THE FOLLOWING DESCRIBED LAND:

THAT PART OF LOT 2 IN CHERRY HILL BUSINESS PARK WEST UNIT 2, BEING A SUBDIVISION OF THE NORTHWEST 1/4 OF SECTION 19, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 9, 2008 AS DOCUMENT R2008-086953, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 2; THENCE SOUTH 88 DEGREES 09 MINUTES 50 SECONDS WEST 888.51 FEET ALONG THE SOUTH LINE OF SAID LOT 2 TO THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 88 DEGREES 09 MINUTES 50 SECONDS WEST ALONG SAID SOUTH LINE 79.61 FEET; THENCE NORTH 22 DEGREES 26 MINUTES 08 SECONDS EAST 33.06 FEET; THENCE NORTH 01 DEGREES 53 MINUTES 00 SECONDS WEST 98.83 FEET; THENCE NORTH 88 DEGREES 07 MINUTES 00 SECONDS EAST PERPENDICULAR TO THE LAST COURSE, 66.00 FEET; THENCE SOUTH 01 DEGREES 53 MINUTES 00 SECONDS EAST 129.00 FEET TO THE POINT OF BEGINNING, IN WILL COUNTY, ILLINOIS.

EXHIBIT B

Form of Sale Order

[Attached]

EXHIBIT C

<u>Intentionally Omitted</u>

EXHIBIT D

Form of Deed

LIMITED WARRANTY DEED

Parcel No(s). _____

    ***THIS INDENTURE WITNESSETH***, That _____ ("Grantor"), ***Conveys and Specially Warrants*** to _____ ("Grantee"), for the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the following described real estate in _____ County, State of _____:

**SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN**

**Property Address:** _____

    **It is understood and agreed by the parties hereto that the title to the real estate herein conveyed is warranted only insofar as it might be affected by any act of the Grantor during its ownership thereof and not otherwise.**

    ***Subject*** to current taxes not delinquent, and all easements, agreements and restrictions of record and all public rights of way.

    The undersigned person(s) executing this deed on behalf of Grantor represent and certify that he/she/they is/are duly elected officer(s) of Grantor and has/have been fully empowered to execute and deliver this deed; that Grantor has full capacity to convey the real estate described herein; and that all necessary corporate action for the making of such conveyance has been taken and done.

[SIGNATURE ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Grantor has executed this deed this _____ day of _____, 2017.

**GRANTOR**

By: _____

Printed: _____

Title: _____

## ACKNOWLEDGMENT

STATE OF _____        )
                                                )SS:
COUNTY OF _____        )

Before me, a Notary Public in and for said County and State, personally appeared _____, as _____ of _____, who acknowledged the execution of the foregoing Deed for and on behalf of said Grantor, and who, having been duly sworn, stated that the representations therein contained are true.

Witness my hand and Notarial Seal this _____ day of _____, 2017.

My Commission expires:                    Signature _____

_____                    Printed _____

                                                     Resident of _____ County

                                                     State of _____

This instrument was prepared by:_____

Upon recording, return to: _____

Send Tax Statements to: _____

I affirm under the penalties of perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law.

Signature: _____        Printed Name:_____

EXHIBIT A

EXHIBIT E

Form Bill of Sale

## QUITCLAIM BILL OF SALE

THIS **QUITCLAIM BILL OF SALE** (this "Bill of Sale") is entered into and effective as of [ _____ ], 2017, by and among [ _____ ], a [ _____ ], [ _____ ], a [ _____ ] (collectively, "Sellers") and [ _____ ], a [ _____ ] ("Buyer"). Sellers and Buyer are referred to collectively herein as the "Parties."

WHEREAS, the Parties are parties to that certain Purchase Agreement, dated [ _____ ], 2017 (the "Purchase Agreement") (capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Purchase Agreement); and

WHEREAS, the execution and delivery of this Bill of Sale is contemplated by the Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Purchase Agreement, the Parties hereby agree as follows:

1.    Sale and Acceptance of Acquired Assets. For true and lawful consideration paid by Buyer, the sufficiency of which is hereby acknowledged, effective as of the date hereof, (a) each Seller hereby sells, assigns, transfers, conveys, grants and delivers to Buyer all of its right, title and interest in and to the Acquired Assets, and (b) Buyer hereby accepts the foregoing sale and assignment.

2.    Conflict. In the event of a conflict between the terms and conditions of this Bill of Sale and the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall govern, supersede, and prevail.

3.    No Representation. This Bill of Sale is made without any covenant, warranty or representation by or recourse against, Sellers or any of Sellers' Affiliates of any kind whatsoever, other than those made in the Purchase Agreement.

4.    Severability. Whenever possible, each provision of this Bill of Sale shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Bill of Sale is held to be prohibited by or invalid under applicable Law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Bill of Sale.

5.    Amendments. This Bill of Sale may not be amended or modified except by an instrument in writing signed by, or on behalf of, Buyer and Sellers.

6.    Counterparts; Facsimile and Electronic Signatures. This Bill of Sale may

be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Bill of Sale or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

7.    Governing Law. This Bill of Sale shall be governed by and construed in accordance with the internal Laws of the State of Illinois (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

8.    Third Party Beneficiaries and Obligations. This Bill of Sale shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Bill of Sale, express or implied, is intended to or shall confer upon any Person other than the Parties or their respective successors and permitted assigns, any rights, remedies, or liabilities under or by reason of this Bill of Sale.

9.    Entire Agreement. This Bill of Sale, together with the Purchase Agreement and the exhibits and the documents referred to in the Purchase Agreement, contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which such prior agreements, understandings, representations and statements, oral or written, shall be of no further force or effect.

* * * * *

IN WITNESS WHEREOF, the Parties have executed this Bill of Sale as of the date first above written.

[SELLERS]

By: _____
Name:
Title:

By: _____
Name:
Title:

[Seller Signature Page to Bill of Sale]

{6891272.}

WEIL:\96222162\6\76248.0004

[BUYER]


By: _____
Name:
Title:



[Buyer Signature Page to Bill of Sale]

EXHIBIT F

Assignment and Assumption Agreement

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered into and effective as of _____, by and among _____ and _____ (collectively, "Sellers"), and (b) _____ ("Buyer"). Sellers and Buyer are referred to collectively herein as the "Parties."

WHEREAS, the Parties are parties to that certain Asset Purchase Agreement, dated _____ (the "Purchase Agreement") (capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Purchase Agreement);

WHEREAS, the execution and delivery of this Agreement is contemplated by the Purchase Agreement; and

WHEREAS, Sellers desire to assign, transfer, convey and deliver to Buyer the Acquired Assets listed on Schedule I attached hereto (collectively, the "Assigned Assets"), and Buyer desires to accept such Assigned Assets.

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Purchase Agreement, the Parties hereby agree as follows:

1) Assignment and Assumption of Assigned Assets. Effective as of the Closing related to the Assigned Assets, each Seller hereby assigns, transfers, conveys, and delivers to Buyer all of such Sellers' right, title and interest in, to and under each of the Assigned Assets, and Buyer hereby accepts the assignment, transfer, conveyance and delivery of each Seller's rights, title and interest in, to and under the Assigned Assets.

2) Assumption of Assumed Liabilities. Effective as of the Closing related to the Assigned Assets, Sellers hereby assign, and Buyer hereby assumes and agrees to pay, discharge, or perform when due, on or after the Closing Date related to the Assigned Assets, the Assumed Liabilities related to the Assigned Assets to the extent provided in the Purchase Agreement. For the avoidance of doubt, and without limiting the foregoing, Buyer does not assume, and hereby disclaims all Liabilities of each Seller or of any predecessor or Affiliate of each Seller other than such Assumed Liabilities with respect to the Assigned Assets.

3) Conflict. The assignment and assumption of the Assigned Assets (and the Assumed Liabilities related thereto) made hereunder are made in accordance with and subject to the Purchase Agreement (including, without limitation, the representations, warranties, covenants, and agreements contained therein), which is incorporated herein by reference. In the event of a conflict between the terms and conditions of this Agreement and the terms and conditions of the Purchase Agreement, the terms and conditions of the

Purchase Agreement shall govern, supersede, and prevail. Notwithstanding anything to the contrary in this Agreement, nothing herein is intended to, nor shall it, extend, amplify, or otherwise alter the representations, warranties, covenants, and obligations of the Parties contained in the Purchase Agreement or the survival thereof.

4)   <u>Notices</u>. Any notice, request, or other document to be given hereunder to any Party shall be given in the manner specified in the Purchase Agreement. Any Party may change its address for receiving notices, requests, and other documents by giving written notice of such change to the other Parties in the manner specified in the Purchase Agreement.

5)   <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable Law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

6)   <u>Enforceability</u>. If any provision of this Agreement or the application of any such provision to any Person or circumstance shall be held invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision hereof.

7)   <u>Amendments</u>. This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, Buyer and Sellers.

8)   <u>Further Assurances</u>. Each of the Parties, without additional consideration, shall execute and deliver all such further documents and do such other things as the other Party may reasonably request to give full effect to this Agreement.

9)   <u>Counterparts; Facsimile and Electronic Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

10)   <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal Laws of the State of Illinois (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

11)   <u>Third Party Beneficiaries and Obligations</u>. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person other than the Parties or their respective successors and permitted assigns, any rights, remedies, or liabilities under or by reason of this Agreement.

12)    <u>Entire Agreement</u>. This Agreement, together with the Schedule attached hereto and the Purchase Agreement and the exhibits and the documents referred to in the Purchase Agreement, contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which such prior agreements, understandings, representations and statements, oral or written, shall be of no further force or effect.

* * * * *

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above

written.


SELLERS:



BUYER:

**SCHEDULE I**

EXHIBIT G

<u>Furnishings and Equipment</u>

1. Records related to the operation and maintenance of the Acquired Assets.
2. See additional attached list.

| MODEL | YEAR | QUANITY | DESCRIPTION | CONDITION | OWNED | MODEL |
|---|---|---|---|---|---|---|
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| YALE NE | 2012 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | YALE NE |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| RAYMOND | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR | OWNED | RAYMOND |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| CROWN WP | 2013 | 1 | ELECTRIC WALKIE DRIVERS JACK | POOR/FAIR | OWNED | CROWN WP |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE NE | 2014/2015 | 1 | ELECTRIC WALKIE DRIVERS JACK | AVERAGE | OWNED | YALE NE |
| YALE MPE | 2010 | 1 | ELECTRIC END RIDER | FAIR | OWNED | YALE MPE |
| YALE MPE | 2010 | 1 | ELECTRIC END RIDER | FAIR | OWNED | YALE MPE |
| YALE MPE | 2010 | 1 | ELECTRIC END RIDER | FAIR | OWNED | YALE MPE |
| RAYMOND 840 | 2011 | 1 | ELECTRIC END RIDER | FAIR | OWNED | RAYMOND 840 |
| RAYMOND 840 | 2011 | 1 | ELECTRIC END RIDER | FAIR | OWNED | RAYMOND 840 |
| RAYMOND 840 | 2011 | 1 | ELECTRIC END RIDER | FAIR | OWNED | RAYMOND 840 |
| TENNANT 6650 | 2006 | 1 | LP SWEEPER | POOR | OWNED | TENNANT 6650XP |
| TENNANT S30 | 2009 | 1 | LP SWEEPER | POOR | OWNED | TENNANT S30 |
| TENNANT S30 | 2011 | 1 | LP SWEEPER | POOR | OWNED | TENNANT S30 |
| TENNANT 7400 | 1997 | 1 | LP SCRUBBER | POOR | OWNED | TENNANT 7401 |
| TENNANT T20 | 2009 | 1 | LP SCRUBBER | POOR | OWNED | TENNANT T20 |
| TENNANT T 20 | 2011 | 1 | LP SCRUBBER | POOR | OWNED | TENNANT T 20 |
| SJ8243 | 2006 | 1 | LP SISSOR LIFT 4X4 PROPANE/GAS | POOR | OWNED | SJ8244 |
| MEC 2633ES | 2004 | 1 | ELECTRIC SISSOR LIFT | FAIR | OWNED | MEC 2633ES |

| MPC080VG | 2014 | 10 | YALE DOUBLE PALLET END RIDER JANITORIAL NO LB | GOOD | SEE NOTES | MPC080VG |

EXHIBIT H

<u>Excluded FF&E Assets</u>

**Records:**

All business records other than those records related to the operation and maintenance of the
Acquired Assets.

**Furniture:**

| Count | Description |
|-------|-------------|
| 88 | Tall filing cabinets |
| 10 | Short filing cabinets |
| 3 | Desks |
| 3 | Credenzas |
| 1 | 6 station cube space |
| 1 | 2 station cube space |

**Vehicles/Rolling Stock:**

All trailers owned by Seller
2010 Ford Edge
2017 Ford Explorer
2016 Audi A7
2015 Mercedes Benz

**IT Equipment:**

| Count | Description(*) |
|-------|----------------|
| 2 | AS 400 (Operating and Backup) |
| 8 | Laptops |
| 4 | Printers |
| 10 | Desktop Computers |
| 2 | Cisco Core Units |
| 4 | Switches |
| 1 | Email Server |
| 15 | Phones |
| 1 | Cisco UCS Server for Phone System |
| 6 | APC - UPS Units |
| 10 | Windows Servers |
| 1 | Large Copier (Canon) |

{6891272.}   4

| | |
|---|---|
| 2 | IBM Storewiz v3700 |
| 1 | IBM Storewiz v7000 |
| 1 | Shredder |

(*) Equipment includes associated cabling and fiber

**Critical Software:**

Description

Infor M3 & Supporting Modules (accounting / general ledger)

Kronos (payroll)

BNA (fixed asset tracking)

Sage (consolidation)

Exchange On-Line (cloud based email exchange)

TSM (back-up)

Data Protector (back-up)

Baracuda (spam filter)

Trend Micro (antivirus)

Mimix (AS400 synch)

Double Take (Windows synch)

Websense (web filter)