## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTRAL GROCERS, INC., *et al.*,[1] | ) Case No. 17-13886 (PSH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

**NOTICE OF DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE PURCHASE AGREEMENT BETWEEN DEBTOR RACEWAY CENTRAL, LLC AND BUYER; (II) AUTHORIZING THE SALE OF CERTAIN OF THE ASSETS OF DEBTOR RACEWAY CENTRAL, LLC TO BUYER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

  **PLEASE TAKE NOTICE** that on September 15, 2017, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Motion for an Order (i) Approving the Purchase Agreement between Debtor Raceway Central, LLC and Buyer; (ii) Authorizing the Sale of Certain of the Assets of Debtor Raceway Central, LLC to Duyer Free and Clear of All Liens, Claims, Encumbrances, and Interests; (iii) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property in Connection Therewith; and (iv) Granting Related Relief* (the "**Motion**").

  **PLEASE TAKE FURTHER NOTICE** that the Debtors have requested that the Motion be heard at a hearing on **October 12, 2017, at 11:00 a.m. (Central Time)** before the Honorable Judge Pamela S. Hollis or any other judge who may be sitting in her place and stead, in Courtroom 644 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, at which time you may appear if you deem fit.

  **PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be filed on the docket of the above captioned case and served on the Debtors by no later than **October 6, 2017, at 4:00 p.m. (Central Time)** and that any such objection shall be heard at the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), Raceway Central Wheaton LLC (2161), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

hearing on **October 12, 2017, at 11:00 a.m. (Central Time)** before the Honorable Judge Pamela S. Hollis or any other judge who may be sitting in her place and stead, in Courtroom 644 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois.

       **PLEASE TAKE FURTHER NOTICE** that copies of all documents are available free of charge by visiting the case website maintained by Prime Clerk LLC, notice and claims agent for these chapter 11 cases, available at https://cases.primeclerk.com/centralgrocers or by calling (866) 727-8489. You may also obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 15, 2017  
     Chicago, Illinois

/s/ David A. Agay _____  
David A. Agay (ARDC No. 6244314)  
Joshua A. Gadharf (ARDC No. 6296543).  
Rion M. Vaughan (ARDC No. 6317715)  
McDONALD HOPKINS LLC  
300 North LaSalle Street, Suite 1400  
Chicago, Illinois 60654  
Telephone: (312) 280-0111  
Facsimile: (312) 280-8232  
E-mail: dagay@mcdonaldhopkins.com  
       jgadharf@mcdonaldhopkins.com  
       rvaughan@mcdonaldhopkins.com

*Co-counsel for Debtors*  
*and Debtors in Possession*

-and-

Ray C. Schrock, P.C.  
Stephen Karotkin (admitted *pro hac vice*)  
Sunny Singh (admitted *pro hac vice*)  
WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, New York 10153  
Telephone: (212) 310-8000  
Facsimile: (212) 310-8007

*Attorneys for Debtors*  
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTRAL GROCERS, INC., *et al.*,[2] | ) Case No. 17-13886 (PSH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

**MOTION FOR AN ORDER (I) APPROVING THE PURCHASE AGREEMENT BETWEEN DEBTOR RACEWAY CENTRAL, LLC AND BUYER; (II) AUTHORIZING THE SALE OF CERTAIN OF THE ASSETS OF DEBTOR RACEWAY CENTRAL, LLC TO BUYER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

Central Grocers, Inc. ("**CGI**") and its debtor affiliates, including Strack and Van Til Super Market, Inc., as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively with CGI, the "**Debtors**"), hereby move the Court pursuant to sections 105 and 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the entry of an order (the "**Sale Order**"): (i) approving that certain Purchase Agreement (as may be amended pursuant to the terms thereof and this Sale Order, (the "**Purchase Agreement**"), dated as of September 14, 2017, by and between Debtor Raceway

---

[2] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), Raceway Central Wheaton LLC (2161), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

Central, LLC ("**Raceway Central**"), as Seller, and Steve Navarro (the "**Buyer**"), a copy of which is attached hereto as **Exhibit A**,[3] (ii) authorizing and approving the sale of certain real property located in Hammond, Indiana (the "**Owned Real Property**") owned by Raceway Central free and clear of all liens, claims, interests, and encumbrances; (iii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases of nonresidential real property (the "**Assumed Contracts**," and together with the Owned Real Property, the "**Acquired Assets**"); and (iv) granting related relief.

In support of this Motion, the Debtors state as follows:

**General Background**

1.      On May 2, 2017, certain of CGI's creditors commenced an involuntary case against CGI under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Illinois (the "**Court**").

2.      On May 4, 2017, each of the Debtors, including CGI, commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**").

3.      On June 13, 2017, the Chapter 11 Cases were transferred to this Court, including the Chapter 11 Case of CGI which was consolidated into the involuntary chapter 7 case pending before the Court.  All of the Chapter 11 Cases are proceeding under chapter 11 of the Bankruptcy Code before this Court. CGI's chapter 11 commencement date is May 2, 2017 and the remaining Debtors' commencement date is May 4, 2017 (as applicable, the "**Commencement Date**").  All orders entered in the Chapter 11 Cases by the Delaware Court remain in full force and effect and are deemed to be entered in the Chapter 11 Cases pending before this Court.

---

[3] Capitalized but undefined terms shall have the meanings ascribed to them in the APA.

4.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On May 15, 2017, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these Chapter 11 Cases.

6.      The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Donald E. Harer in Support of the Debtors' Chapter 11 Petitions and First Day Relief* sworn to and filed on the Commencement Date. (Del. Court, Case No. 17-10993, ECF No. 3, the "**Harer Declaration**").

## Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Sale Process

9.      After an extensive pre- and post-petition marketing process, Buyer is the only party submitting a viable proposal to purchase the Acquired Assets. Specifically, after lengthy, arms' length negotiations, Buyer has agreed to purchase the Acquired Assets for a purchase price of $1,850,000 and assume all cure costs related to the Assumed Contracts (the "**Cure Costs**").

The Debtors submit that, given the status and timing of their wind-down, it is imperative that the Debtors close on this sale as soon as possible in order to maximize value for their estates. The Debtors and their advisors, after consultation with the Creditors' Committee and Prepetition Secured Lenders (as defined in the Harer Declaration), have determined that Buyer's offer to purchase the Acquired Assets is the highest and best offer for the Acquired Assets. The Debtors believe that the Creditors' Committee and the Prepetition Secured Lenders support the sale transaction in principal.

A. **Marketing and Sale Process for the Acquired Assets**

10. The Debtors' assets, including the Acquired Assets, have been marketed for sale since December 2016, when the Debtors initiated a comprehensive marketing process to sell their assets as a going concern or to consummate another strategic, value-maximizing transaction that would resolve their operational and financial challenges. Despite a thorough and extensive pre-petition marketing process, no viable purchasers for the Debtors' assets were identified. Informed by that process, the Debtors concluded that it was in the best interests of the Debtors and their creditors to attempt to sell their assets through a chapter 11 process.

11. Accordingly, on May 13, 2017, the Debtors filed the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Authorizing Designation of Additional Stalking Horse Bidders, (D) Scheduling Auction for and Hearings to Approve Sale of Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearings, (F) Approving Assumption and Assignment Procedures, and (G) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief.* (Del. Court, Case No. 17-10993, ECF No. 135, the "**Bidding Procedures and**

Sale Motion").[4]   On June 2, 2017, the Delaware Court entered an order granting the Bidding

Procedures and Sale Motion as it related to the proposed marketing and auction process.  (Del.

Court, Case No. 17-10993, ECF No. 338, the "**Bidding Procedures Order**").   The Acquired

Assets were among the assets included as part of the Bidding Procedures Order.

12.     Pursuant to the Bidding Procedures Order, the Court, among other things,

(a) authorized the Debtors to sell substantially all of their assets, including the Acquired Assets,

at public auction and (b) approved, among other things, the Debtors' proposed bid procedures

(the "**Bidding Procedures**"), which provided a mechanism for interested parties to make

qualified bids for the Debtors' assets.  The Bidding Procedures Order set June 26, 2017, at 4:00

p.m. (prevailing Eastern Time) (the "**Bid Deadline**") as the deadline for submitting qualified

bids, and approved a public auction of the Debtors' assets (the "**Auction**").

13.     In accordance with the Bidding Procedures, on June 28, 2017, the Debtors served

BP Products North America Inc. ("**BP**"), which leases a portion of the Owned Real Property,

with that certain *Supplemental Notice of Cure Costs and Potential Assumption and Assignment*

*of Executory Contracts and Unexpired Leases in Connection With Sale*, ECF No. 258 (the "**BP**

**Cure Notice**"), attached hereto as **Exhibit B**.  The BP Cure Notice listed BP's cure amount as $0

(the "**BP Cure Amount**").  Pursuant to the BP Cure Notice, BP had until July 7, 2017, to object

to the BP Cure Amount.  BP did not object to the BP Cure Amount.

---

[4] The Debtors incorporate the Bidding Procedures and Sale Motion herein by reference.  The Debtors further
incorporate by reference the *Declaration of Scott Moses in Support of Motion of Debtors for Entry of Orders
(I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections,
(C) Authorizing Designation of Additional Stalking Horse Bidders, (D) Scheduling Auction for and Hearings to
Approve Sale of Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearings,
(F) Approving Assumption and Assignment Procedures, and (G) Granting Related Relief; and (II)(A) Approving
Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the
Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief.*  (Del. Court, Case No.
17-10993, ECF No. 222).

14. Despite their best efforts, during the post-petition marketing process, the Debtors only received one qualified bid to purchase the Acquired Assets, which Buyer made for $1,100,000 and which contemplated the Debtors would retain any cure costs. However, the Debtors did not believe that Buyer's proposed purchase price to be a sufficient purchase price for the Acquired Assets. Accordingly, on July 5, 2017, the Debtors filed a notice, ECF No. 276, that the Auction for the Acquired Assets had been adjourned without date.

15. Contemporaneously with adjourning the Auction for the Acquired Assets, the Debtors sought to negotiate a higher and better purchase price with Buyer while simultaneously continuing to market the Acquired Assets for sale in an effort to maximize value for all stakeholders. As a result of that process, Buyer agreed to increase its proposed purchase price for the Acquired Assets to $1,850,000, and agreed to assume all Cure Costs.

**B.   Buyer's Offer to Purchase the Acquired Assets**

16. The Purchase Agreement contemplates that the Acquired Assets will be bifurcated for sale to allow the Debtors to resolve a property tax issue at 6603 Columbia Avenue, Hammond, Indiana ("**6603 Columbia**"), one of the two parcels of Owned Real Property. First, on the Closing Date, Raceway Central will transfer the Acquired Assets located at 6529 Columbia Avenue, Hammond, Indiana ("**6529 Columbia**"), together with any Assumed Contracts relating to 6529 Columbia, to Buyer for a purchase price of $1,450,000. Second, on or after the Closing Date, subsequent to satisfactory resolution of the property tax issue, Raceway Central will transfer the Acquired Assets located at 6603 Columbia, together with any Assumed Contracts associated with 6603 Columbia, to Buyer for a purchase price of for $400,000.

17.     After arm's length, good faith negotiations, Raceway Central and Buyer executed the Purchase Agreement, which includes the below material terms:[5]

a.   <u>Purchase Price</u>.  $1,850,000.

b.   <u>Deposit</u>.   $110,000, which is fully refundable unless Raceway Central terminates the Purchase Agreement because of Buyer's breach of any representation, warranty, covenant, or agreement in the Purchase Agreement and Buyer either does not or cannot cure such breach.

c.   <u>Brokers' Fees</u>.  2.10% of the purchase price, plus an amount equal to the Cure Costs, if any.[6]

d.   <u>Acquired Assets</u>.  All of Raceway Central's right, title, and interest in and to all of the following: (a) the Owned Real Property and (b) the Assumed Contracts designated by Buyer in the Purchase Agreement other than those leases that expire or that are terminated prior to Closing.

e.   <u>Assumed Liabilities</u>.   The Cure Costs and all liabilities of Raceway Central relating to or arising out of the ownership or operation of the Acquired Assets listed above from and after the Closing Date, but in all cases excluding the excluded liabilities listed below.

f.   <u>Excluded Liabilities</u>.  Buyer will not assume: (a) any liability not relating to or arising out of the operation of the Acquired Assets; (b) any liability of Raceway Central for Taxes (except as provided for in the Purchase Agreement); (c) any mechanics liens; or (d) any of Raceway Central's liabilities for personal property damage from any Assumed Contract.

## I.      RELIEF REQUESTED

18.     The Debtors respectfully requests that the Court enter an order: (a) authorizing the sale of the Acquired Assets to Buyer free and clear of all liens, claims, encumbrances, or other interests, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, with such interests to attach to the sale proceeds with the same validity, priority, extent, and perfection as existed

---

[5] This following is intended to provide a summary of certain key terms of the APA.  To the extent there is any conflict between the contents of this Motion and the APA, the APA shall control.

[6] Brokers' fees will only be payable to Peter J. Solomon Company, as the Debtors did not retain Marcus & Millichap Real Estate Investment Services of Chicago and Marcus & Millichap Real Estate Investment Services as brokers for this transaction.

immediately prior to the sale; and (b) granting such other relief as may be necessary or appropriate.

## II.     BASIS FOR RELIEF

19.     In the exercise of their sound business judgment, the Debtors have determined that the sale of the Acquired Assets to Buyer provides the highest and best opportunity for the Debtors to maximize value for their estates and stakeholders.

### A.     The Sale Was Negotiated in Good Faith and Made for Sound Business Reasons; the Proposed Purchase Price Is Fair and Reasonable

20.     Section 363(b) of the Bankruptcy Code specifically authorizes asset sales outside the ordinary course of business.  See 11 U.S.C. § 363(b)(1) ("[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate").  To approve the use, sale, or lease of property outside of the ordinary course of business, the Court must find some articulated business justification for the proposed action.  *See in re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (requiring "articulated business justification" for sale, adequate notice, and the availability of a hearing to approve sale under § 363(b)); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir 1996) (citing *In re Schipper*); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147,1 53 (D. Del. 1999); *In re Zeigler*, 320 B.R. 362, 381 (Bankr. N.D. Ill. 2005).

21.     Generally, courts examine four factors when determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice

is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071.

22.    Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers to administer a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of section 105(a) power is appropriate. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a) of the Bankruptcy Code, a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

23.     The Debtors submit that ample business justification exists to sell the Acquired Assets to Buyer without further marketing or bidding with respect to the Acquired Assets.  The sale is designed to maximize the value of the Acquired Assets and provides a greater benefit to the Debtors' estates than any of the alternatives, including a liquidation of Acquired Assets, or the conversion of these Chapter 11 Cases to cases under chapter 7.

24.     Further, the Purchase Agreement is the product of good faith and arms' length negotiations and is on commercially reasonable terms.   The Debtors and Buyer, with the assistance of their advisors, negotiated the terms of the Purchase Agreement at arm's length, and the Debtors kept the Prepetition Secured Lenders (as defined in the Harer Declaration) and the Creditors' Committee apprised of their discussions with Buyer.  In addition, as evidenced by the lengthy marketing efforts, including the Court-approved sale process authorized pursuant to the Bidding Procedures Order, the Purchase Agreement is the highest and best offer for the Acquired Assets.

25.     The Debtors submit that the Court should approve the sale contemplated by this Motion and the Purchase Agreement.   The Court previously approved the inclusion of the Acquired Assets at the Auction, but the Debtors subsequently adjourned the Auction as to the Acquire Assets because they had not received what they believed was a viable offer for the Acquired Assets.   Accordingly, because of the extensive marketing effort for the Acquired Assets, lasting more than ten months, a private sale to Buyer is appropriate under the circumstances.

26.     Moreover, no prejudice will result to any parties in interest because: (a) notice of the Auction, which included the auction of the Acquired Assets has previously been afforded to all creditors and parties in interest with adequate and reasonable notice of the Sale under the

circumstances, and (b) such notice provided sufficient information regarding the sale of the assets and the time for filing objections to the sale.  Further, as detailed below, the Debtors propose to provide all parties with an interest in the Acquired Assets and the Master Service List (as defined in the *Revised Proposed Order Authorizing Motion of Debtors for Approval of Case Management Procedures*, ECF No. 226) with notice and an opportunity to object to the proposed sale to Buyer.

27.     Thus, ample business justification for the approval of the Purchase Agreement and the sale of the Acquired Assets to Buyer in accordance with the Purchase Agreement.  The Debtors submit that the sale will inure to the benefit of the Debtors' estates and creditors, as it will further the Debtors' efforts to successfully prosecute these Chapter 11 Cases and, therefore, represents the exercise of the Debtors' sound business judgment.  Accordingly, the proposed sale of the Acquired Assets to Buyer comports with the requirements of a section 363(b) sale as enunciated by the Seventh Circuit in *In re Schipper*.  933 F.2d at 515.

**B.     The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, and Interests**

28.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim, or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); *see In re Zeigler*, 320 B.R. at 387 (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and

clear" provided at least one of the subsections is met).  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056(PJW), 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

29.     The Debtors submit that each affected interest satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or attaching to the proceeds of the sale, subject to any claims and defenses Raceway Central may possess with respect thereto.  The Debtors accordingly request authority to convey the Acquired Assets to Buyer, free and clear of all interests under the express terms of the Purchase Agreement, with such interests to attach to the proceeds from the sale of the Acquired Assets, with the same validity, extent, priority, and perfection as existed immediately prior to the sale, subject to the terms of the relevant purchase agreement, as applicable, and the proposed Sale Order.

30.     The Debtors further submit that the sale should not expose Buyer to any liability as a successor of Raceway Central or its estate.  Courts have also consistently held that a buyer of a debtor's assets pursuant to a Bankruptcy Code section 363 sale takes free and clear from successor liability relating to the debtor's business.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D.

Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern

that a creditor will file suit based on a successor liability theory); *see also In re Chrysler LLC*,

405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state

successor or transferee liability claims against New Chrysler, as well as in rem interests, are

encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.").

31.     Notably, previously in these Chapter 11 Cases, the Court has granted similar

relief, including authorizing the sale free and clear of all liens, claims, and encumbrances,

including pension and retiree liabilities, of certain of the Debtors' other assets.  (*See Order*

*(I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale*

*of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in*

*Connection Therewith and, (IV) Granting Related Relief*, ECF No. 374; *Order (I) Approving the*

*Asset Purchase Agreement Among Seller and Buyer, (II) Authorizing the Sale of Certain of the*

*Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing*

*the Assumption and Assignment of Certain Executory Contracts and Leases in Connection*

*Therewith and (IV) Granting Related Relief*, ECF No. 439.)

32.     Accordingly, the Court should approve the sale of the Acquired Assets to Buyer,

free and clear of all liens, claims, encumbrances, or other interests under section 363(f) of the

Bankruptcy Code, and all potential claimants should be compelled to look exclusively to the

proceeds of the sale for satisfaction of their claims.

**C.**     **The Proposed Sale Is in Good Faith Under Section 363(m) of the Bankruptcy Code**

33.     The Debtors request that the Court find that Buyer is entitled to the benefits and

protections of section 363(m) of the Bankruptcy Code in connection with the sale of the

Acquired Assets.

34.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

35.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal. By its terms, section

363(m) of the Bankruptcy Code applies to sales of interests in tangible assets. However, many

courts have applied the protections of 363(m) to assignments of executory contracts as well. *See*

*In re Kmart Corp.*, No. 03 C 698, 2003 WL 1956149, at *3 (Bankr. N.D. Ill. April 23, 2003)

(collecting cases).

36.    To constitute lack of good faith, a party's conduct in connection with the sale

must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee

or an attempt to take grossly unfair advantage of other bidders." *In re Wieboldt Stores, Inc.*, 92

B.R. 309, 312 n.3 (Bankr. N.D. Ill. 1988) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d

1195, 1198 (7th Cir. 1978)); *see also Abbotts Dairies*, 788 F.2d at 147; *In re Perona Bros., Inc.*,

186 B.R. 833, 839 (D.N.J. 1995); *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr.

W.D. Pa. 1989). Due to the absence of a bright line test for good faith, the determination is

based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the

sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re

Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

37.     As described above, the Purchase Agreement is the product of good faith and free from self-dealing.  If necessary, the Debtors intend to establish at hearing on this Motion (the "**Sale Hearing**") that the Purchase Agreement was a negotiated, arms' length transaction, in which Buyer has acted in good faith, without collusion or fraud of any kind.  The Debtors would further establish that neither the Debtors nor Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code with respect to the consummation of the sale transaction with Buyer or the transfer of the Acquired Assets to Buyer. In addition, all parties in interest will receive notice of the sale proposed herein and will be provided with an opportunity to be heard.  All counterparties to Assumed Contracts also will be provided notice of assumption, assignment and/or transfer and an opportunity to be heard.  The Debtors submit that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under sections 363(b) and 365 of the Bankruptcy Code

38.     Accordingly, the Debtors request that the Court find that Buyer has purchased the assets described in its respective purchase agreement in good faith within the meaning of section 363(m) and is entitled to the protections described therein.

**D.     <u>Assumption and Assignment of Assumed Contracts Should be Approved</u>**

39.     To facilitate and effectuate the sale of the Acquired Assets, the Debtors seek authority to assume, assign and/or transfer one or more Assumed Contracts to Buyer to the extent required by Buyer.  Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign their executory contracts and unexpired leases, subject to the approval of the Court; provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *Group of*

*Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankr. Act section 77 subsection (b), predecessor to Bankruptcy Code Section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985).

40.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtor has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid").

41.     Buyer likely will want an assignment of the Assumed Contracts. To the extent Assumed Contracts are identified for assumption, assignment, and/or transfer, the Debtors believe that they can and will demonstrate that all requirements for assumption, assignment, and/or transfer of the Assumed Contracts will be satisfied at the Sale Hearing. For the reasons stated throughout this Motion, the Debtors, in exercising their sound business judgment, believe that selling the Acquired Assets, including assuming, assigning, and/or transferring to Buyer the Assumed Contracts, would be in the best interests of their estates. Moreover, the Debtors will provide all parties to the Assumed Contracts an opportunity to be heard.

42.     Furthermore, the Debtors submit that there are no cure costs associated with the Assumed Contracts that Buyer has indicated it may want to assume.  Specifically, as discussed above, in accordance with the Bidding Procedures, on June 28, 2017, the Debtors served BP with the BP Cure Notice, which listed the BP Cure Amount as $0.  Because BP did not object to the BP Cure Notice within the timeframe set forth in the BP Cure Notice, the Debtors respectfully submit that BP should be precluded from objecting to the BP Cure Amount.  The second Assumed Contract that Buyer may want to assume is an ATM lease with Centier Bank (the "**Centier Lease**").  The Debtors submit that the Cure Cost associated with the Centier Lease is also $0.

43.      To the extent a counterparty to an Assumed Contract objects to the proposed assumption and assignment, the Debtors submit that Buyer will demonstrate sufficient adequate assurance for whatever Cure Cost may be necessary, as well as adequate assurance of future performance under the Assumed Contracts.  Such adequate assurance information will be provided upon request and will be introduced at the hearing on this Motion to the extent required.

44.     Accordingly, given the notices that have previously been provided regarding the proposed sale of the Debtors' assets, and the notices that the Debtors will serve on all counterparties to Assumed Contracts, and given the Debtors' business judgment that assigning the Assumed Contracts to Buyer will maximize value for their estates, the Debtors request that the assumption, assignment, and/or transfer of the Assumed Contracts be approved.

**E.     Relief from the 14-Day Waiting Periods Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

45.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).  Similarly, Bankruptcy

Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or

unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the

court orders otherwise." FED. R. BANKR. P. 6006(d).  The purpose of Bankruptcy Rules 6004(h)

and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be

implemented.  *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h) and 6006(d).

Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent

as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period,

Collier on Bankruptcy suggests that the 14-day stay period should be eliminated to allow a sale

or other transaction to close immediately "where there has been no objection to the procedure."

10 COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2012).  Furthermore, if an objection is filed

and overruled, and the objecting party informs the court of their intent to appeal, the stay may be

reduced to the amount of time actually necessary to file such appeal. *Id.*

46.     Notwithstanding the possible applicability of Bankruptcy Rules 6004 and/or 6006

or otherwise, in order to allow the immediate realization of value for the Acquired Assets, the

Debtors request that any order granting this Motion be effective immediately and not subject to

the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## III.   <u>NOTICE</u>

47.     Notice of this Motion has been provided to the parties listed on the Master Service

List (as defined in the *Revised Proposed Order Authorizing Motion of Debtors for Approval of

Case Management Procedures*, ECF No. 226), as well as all parties with an interest in the

Acquired Assets, including any counterparty to a potentially Assumed Contract.  Because the

Debtors' creditors have previously received all relevant notices in these Chapter 11 Cases

regarding the sale process for the Acquired Assets, the Debtors submit that notice of this Motion

on any party other than those listed above is unnecessary and would create an unnecessary burden for the Debtors' estates.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

### IV.    NO PRIOR REQUEST

48.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request that the Court enter an order: (a) approving the Purchase Agreement (b) authorizing the sale of the Acquired Assets to Buyer, free and clear of all liens, claims, encumbrances, or other interests; (c) authorizing and approving the assumption and assignment of the Assumed Contracts; and (d) granting such other relief as may be necessary or appropriate.

Dated: September 15, 2017   /s/ David A. Agay
   Chicago, Illinois    David A. Agay (ARDC No. 6244314)
           Joshua A. Gadharf (ARDC No. 6296543)
           Rion M. Vaughan (ARDC No. 6317715)
           McDONALD HOPKINS LLC
           300 North LaSalle Street, Suite 1400
           Chicago, Illinois 60654
           Telephone:  (312) 280-0111
           Facsimile:  (312) 280-8232
           E-mail: dagay@mcdonaldhopkins.com
              rvaughan@mcdonaldhopkins.com
           -and-

           Ray C. Schrock, P.C.
           Stephen Karotkin (admitted *pro hac vice*)
           Sunny Singh (admitted *pro hac vice*)
           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           *Attorneys for Debtors*
           *and Debtors in Possession*